UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NEW HEIGHTS FARM I, LLC, a Michigan
limited liability company, STACY BOERSEN,
NEW HEIGHTS FARM II, LLC, a Michigan
limited liability company, and NICHOLAS                 Case No. 1:23-cv-663
BOERSEN,

       Plaintiffs,                                 Hon.: Hala Y. Jarbour

v

GREAT AMERICAN INSURANCE COMPANY,
FEDERAL CROP INSURANCE CORPORATION, AND
UNITED STATES DEPARTMENT OF AGRICULTURE,

       Defendants.

| | |
|---|---|
| Ronald J. VanderVeen (P33067) | Thomas C. James, Jr., Esq. (OH0073531) |
| John D. Fitzpatrick (P85554) | Sanders & Associates, LPA |
| Carl Thorwall (P86746) | Attorneys for Defendant Great American |
| Cunningham Dalman, PC | 8040 Hosbrook Road, Suite 202 |
| Attorneys for Plaintiffs | Cincinnati, OH 45236 |
| 321 Sellers Road | (513) 229-8080 |
| Holland, MI 49422-1767 | tomjames@sanderslpa.com |
| (616) 392-1821 | |
| rjvv@cunninghamdalman.com | |
| jfitzpatrick@cunninghamdalman.com | |
| carlt@cunninghamdalman.com | |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES New Heights Farm I, LLC, Stacy Boersen, New Heights Farm II, LLC,

and Nicholas Boersen (collectively "Plaintiffs") state the following second amended complaint

against Great American Insurance Company, The Federal Crop Insurance Corporation and the

United States Department of Agriculture (collectively at times in this Complaint as

"Defendants"), as follows:

## THE PARTIES

1.      Plaintiff New Heights Farm I, LLC ("NHF-I"), is a limited liability company registered in the State of Michigan with a principal place of business at 6241 Ransom St., Zeeland, Michigan.

2.      Plaintiff Stacy Boersen, is an individual residing at 4678 72nd St, Zeeland, Michigan ("Stacy").

3.      Plaintiff New Heights Farm II, LLC ("NHF-II") is a limited liability company registered in the State of Michigan with a principal place of business at 6241 Ransom St., Zeeland, Michigan.

4.      Plaintiff Nicholas Boersen, is an individual who resides at 4678 72nd St, Zeeland, Michigan ("Nicholas").

5.      Defendant Great American Insurance Company ("GAIC") is a corporation registered to do business in the State of Ohio with a principal place of business at the Great American Insurance Group Tower, 301 E. Fourth St., Cincinnati, Ohio 45202 ("GAIC") and licensed to do business as an insurer in Michigan with a local address of 28175 Haggerty Road, Novi, MI 48377.

6.      The Federal Crop Insurance Corporation (the "FCIC"), is a federal corporation created pursuant to 7 U.S.C. § 1503 that resides in the District of Columbia.

7.      The United States Department of Agriculture (the "USDA") is a department of the federal government of the United States of America located in the District of Columbia and includes the Risk Management Agency ("RMA") that was created to manage and operate the FCIC.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction pursuant to 7 USC 1506 (d) which

requires suits against the FCIC to be brought in the United States District Courts.

9.      This Court has subject matter jurisdiction pursuant to 28 USC 1332 for the reason

that:

a.   The plaintiffs are Michigan residents, and the Defendants are residents of other

states as outlined above and

b.   The amount in controversy exceeds $75,000.

10.     This Court has personal jurisdiction over the FCIC and USDA pursuant to 28

USC 1506 (d) and 28 USC 1346 (b)(1)

11.     This Court has personal jurisdiction over GAIC for the reason that it does

substantial business in Michigan, including the Western District of Michigan.

12.     This Court is the proper venue (a) pursuant to 7 USC 1506 (d) in that Plaintiffs

reside within the Western District of Michigan and (b) pursuant to 28 USC 1391 for the reason

that GAIC does business in the Western District of Michigan and a substantial amount of the

events giving rise to this claim occurred in the Western District of Michigan.

**FACTS COMMON TO ALL COUNTS**

13.     Stacy is the sole owner and sole manager of NHF-I.

14.     Stacy created NHF-I in March 2019 to engage in farming.

15.     Nicholas is the sole owner and sole manager of NHF-I.

16.     Nicholas created NHF-I in March 2019 to engage in farming.

17. The FCIC was set up to provide for the national welfare by establishing a system of crop insurance, including but not limited to entering into reinsurance or similar agreements with approved insurance providers (each, an "AIP").

18. GAIC is an AIP.

19. The intent of the crop insurance program is to provide insurance coverage for farmers through an AIP in light of the risk associated with farming and provide a quick resolution of claims so farmers can continue farming the next crop year.

20. Towards that end, AIPs issue crop insurance for a crop year and, if there are claims, adjusts, and determines the claims over the next few months so that the farmer can then move on to the next crop year.

21. FCIC reinsures GAIC and other AIPs like GAIC.

22. The USDA, through its Risk Management Agency (the "RMA") manages the FCIC.

23. The FCIC (and thus, its manager, the USDA and RMA) are authorized to adjust and approve claims.

### *NHF-I's 2019 crop insurance*

24. During March 2019, Stacy, through her insurance agent, applied for crop insurance for her NHF-I through GAIC for the 2019 crop year. **Exhibit 01**.

25. Stacy's crop insurance application for her NHF-I was approved by GAIC in April 2019.

26. GAIC issued crop insurance policy number MP-2019-MI-084-1139524 to Stacy's NHF-I. **Exhibit 02**.

27. GAIC issued a schedule of insurance to NHF-I.  **Exhibit 03**.

28.     In reliance on the crop insurance policy:

     a.     NHF-I borrowed funds from Ag Resource Management ("ARM") and ARM advanced funds on a line of credit to NHF-I for the 2019 crop year;

     b.     Logan's Agri-Service, Inc. ("Logan's") sold inputs to NHF-I on credit for the 2019 crop year;

     c.     Stacy caused NHF-I to lease approximately 9,000 acres for the 2019 crop year;

     d.     Stacy caused NHF-I to pay rent for the leased acres;

     e.     Stacy engaged in farming through NHF-I for the 2019 crop year by renting equipment, purchasing supplies and inputs, planting and attempting to plant, tending to, and harvesting and attempting to harvest approximately 9,037.78 acres of corn and soybeans; and

     f.     ARM and Logan took a security interest in NHF-I's crops and crop insurance and their proceeds.

29.     During the late spring or summer of 2019, Stacy, for her NHF-I, contacted her crop insurance agent who then contacted GAIC to revise the acreage that NHF-I reported as planted for certain fields.

30.     GAIC indicated that it would make corrections to reported fields at year end.

31.     During the summer of 2019, NHF-I gave notice of a potential claim due to planting conditions. **Exhibit 04.**

32.     On or about December 9, 2019, NHF-I gave notice of a potential claim due to harvesting conditions and it harvest of corn and soybeans. **Exhibit 05.**

33.     GAIC sent an adjuster to NHF-I to inspect corn or soybeans on hand and obtain records for the sale of corn or soybeans in about December 2019.

34.     The adjuster failed to properly measure the corn in the storage bins and submitted falsified storage bin summary records to GAIC's office, over-reporting the volume of corn in storage.

35.     NHF-I provided the records requested by the adjuster during December 2019 and/or January 2020 and provided access for inspection in December 2019.

36.     GAIC requested additional records in February 2020 that were promptly provided.

37.     GAIC requested additional records in March 2020 that were promptly provided.

38.     At all times, Stacy and her NHF-I cooperated with GAIC in providing information that GAIC requested.

39.     The crop insurance premium for the 2019 crop year was due by March 15, 2020.

40.     The premium is usually paid from the harvest proceeds or, if the farmer suffers a loss, from the insurance proceeds.

41.     In the course of GAIC's drawn-out adjustment process, in reliance on the policy and with the expectation that the claims would be paid in the near-term, Stacy caused NHF-I to enter into an agreement with GAIC to pay and did pay the crop insurance premiums to GAIC in installment payments totaling approximately $125,000 during 2020. **Exhibit 06**.

42.     GAIC accepted payment of the 2019 premium in installments from March 2020 through November 2020.

43.     GAIC continues to retain the insurance premiums that NHF-1 paid in the midst of the unreasonably delayed adjustment process.

44. Stacy, acting on behalf of NHF-I, performed all conditions that GAIC required of NHF-I to maintain a claim under the policy.

45. The normal process for handling crop insurance claims is for the insurer to:

   a. request information from the insured,

   b. review and confirm the information,

   c. request additional information as needed,

   d. prepare a claim based on what the insurer believes is owed on the claim,

   e. submit the claim to the insured for signature and approval, and

   f. pay the claim, as warranted.

46. GAIC failed and refused to complete its investigation of NHF-I's claim and has refused to submit a claim to NHF-I for signature and approval.

47. GAIC informed NHF-I in August 2020 that FCIC assumed control of the investigation and adjustment of the outstanding claim tendered to GAIC. **Exhibit 07**.

48. Once the FCIC assumes adjustment of a claim, it is obligated to expeditiously process the claim.

49. Despite Stacy's and NHF-I's cooperation and GAIC's continued acceptance and retention of premiums, GAIC and the FCIC have failed and refused to adjust their claim for the 2019 crop year.

50. Instead of adjusting and paying NHF-I's claim, GAIC and FCIC have spent almost 3 years delaying the adjustment process to avoid satisfaction of the coverage to which NHF-I is entitled by making unfounded accusations that Stacy and NHF-I have: (i) committed or attempted to commit crop insurance fraud; and (ii) other alleged crimes.

51.     Despite spending more than 3 years purportedly investigating the background of the claim, GAIC, FCIC, USDA and RMA have failed to find facts upon which they would have a valid basis to deny NHF-I's claim.

52.     By failing to promptly adjust the 2019 drop insurance claim, GAIC and FCIC have unduly interfered with NHF-I's ability to recover its crop insurance claims for 2020 and subsequent years.

53.     NHF-I estimates that GAIC owes it no less than $1,229,779 for coverage it should have paid had the adjustment process been timely and properly conducted.

*NHF-II's 2019 crop insurance*

54.     During March 2019, Nicholas, through his insurance agent, applied for crop insurance for his NHF-II through GAIC for the 2019 crop year. **Exhibit 08 and 09**.

55.     Nicholas's crop insurance application for his NHF-II was approved by GAIC in April 2019.

56.     GAIC issued crop insurance policy numbers MP-2019-MI-084-1139526 and MP-2019-MI-084-1139527 to Nicholas's NHF-II. **Exhibit 10 and 11**.

57.     GAIC issued schedules of insurance to NHF-II.  **Exhibits 12 and 13**.

58.     In reliance on the crop insurance policy:

   a.   NHF-II borrowed funds from ARM and ARM advanced funds on a line of credit to NHF-II for the 2019 crop year,

   b.   Logan's sold inputs to NHF-II on credit for the 2019 crop year,

   c.   Nicholas caused NHF-II to lease approximately 8,600 acres for the 2019 crop year,

   d.   Nicholas caused NHF-II to pay rent for the leased acres,

e.   Nicholas engaged in farming through NHF-II for the 2019 crop year by renting equipment, purchasing supplies and inputs, planting and attempting to plant, tending to and harvesting and attempting to harvest approximately 8,682.20 acres of corn and soybeans, and

f.   ARM and Logan's took a security interest in NHF-II's crops and crop insurance and their proceeds.

59.   During the late spring or summer of 2019, Nicholas, for his NHF-II, contacted her crop insurance agent who then contacted GAIC to revise the acreage that NHF-I reported as planted for certain fields.

60.   GAIC indicated that it would make corrections to reported fields at year end.

61.   During the summer of 2019, NHF-II gave notice of a potential claim due to planting conditions. **Exhibit 14.**

62.   On or about December 9, 2019, NHF-II gave notice of a potential claim due to harvesting conditions and it harvest of corn and soybeans.  **Exhibit 15 and 16.**

63.   GAIC sent an adjuster to NHF-II to inspect corn or soybeans on hand and obtain records for the sale of corn or soybeans in about December 2019.

64.   The adjuster failed to properly measure the corn in the storage bins and submitted falsified storage bin summary records to GAIC's office, over-reporting the volume of corn in storage.

65.   NHF-II provided the records requested by the adjuster during December 2019 and/or January 2020 and provided access for inspection in December 2019.

66.   GAIC asked for additional records in February 2020 that NHF-II promptly provided.

67.     GAIC asked for additional records in March 2020 that NHF-II promptly provided.

68.     At all times, Nicholas and his NHF-II cooperated with GAIC in providing information as requested by GAIC.

69.     The crop insurance premium for the 2019 crop year was due by March 15, 2020.

70.     The premium is usually paid from harvest proceeds or, if the farmer suffers a loss, from the insurance proceeds.

71.     Because GAIC's process took so long, in reliance on the policy and with the expectation that the claims would soon be paid, Nicholas caused NHF-I to enter into an agreement with GAIC to pay and did pay the crop insurance premiums to GAIC in installment payments totaling approximately $100,000 during 2020. **Exhibits 17.**

72.     GAIC accepted payment of the premium in installments from March 2020 through November 2020.

73.     GAIC continues to retain the insurance premiums paid by NHF-II.

74.     Nicholas, for his NHF-II, performed all conditions required of NHF-II for a claim under the policy.

75.     GAIC failed to complete its investigation of NHF-II claim and has refused to submit a claim to NHF-II for signature and approval.

76.     NHF-II was informed by GAIC in August 2020 that FCIC took over the investigation and adjustment of the claim based on information provided to them by GAIC. **Exhibit 18.**

77.     Once the FCIC assumes adjustment of a claim, it is obligated to expeditiously process the claim.

78.     Despite Nicholas' and NHF-II's cooperation and payment of premiums, GAIC and the FCIC have failed and refused to adjust their claim for 2019 as GAIC continued to accept premium payments.

79.     Instead of adjusting and paying NHF-II's claim, GAIC and FCIC have spent almost 3 years attempting to delay and avoid payment by making false accusations that Nicholas and NHF-II have committed or attempted to commit crop insurance fraud and other crimes without basis for such allegations.

80.     Despite over 3 years of investigation, GAIC, FCIC, USDA and RMA have failed to articulate to Plaintiff any finding that might afford a basis to deny NHF-II's claim.

81.     By the GAIC and FCIC failing to promptly adjust the 2019 drop insurance claim, they have interfered with NHF-I's ability to recover its crop insurance claims for 2020 and subsequent years.

82.     NHF-II estimates that GAIC owes it approximately $1,104,045 on its claim.

## COUNT I
## BREACH OF CONTRACT WITH NHF-I

83.     Plaintiff incorporates the above allegations by reference.

84.     GAIC and NHF-I are parties to a valid multi-peril insurance policy contract. **Exhibit 3.**

85.     GAIC has a statutory and contractual duty to promptly investigate notices of loss, adjust and pay claims under the insurance policies.

86.     The FCIC and RMA have a statutory duty, once involved, to promptly investigate, adjust allow the AIP to pay under the insurance policies.

87.    NHF-I had a duty to provide GAIC, FCIC, USDA and its RMA with crop information and to pay GAIC the premium for Crop Year 2019.

88.    NHF-I provided all requested information and paid the total premium owed for 2019, fulfilling its obligation under the contract.

89.    Despite their duty and despite the information and cooperation from Stacy and NHF-I, GAIC, FCIC, USDA and its RMA have not adjusted or made a determination on NHF-I's claim and refuses to do so despite over 3 years of investigation.

90.    GAIC, FCIC, USDA and its RMA have not made any indemnity payments for crop year 2019.

91.    GAI, FCIC, USDA and its RMA have breached the contract by failing to perform their obligations in a timely manner.

92.    NHF-I has suffered and is suffering the following damages as a direct and proximate result of GAI, FCIC, USDA and its RMA's breach of contract:

    a.  GAI's, FCIC's, USDA's and its RMA's inaction prevents adjustment and payment of crop insurance claims for 2019 and subsequent years,

    b.  Nonpayment of GAIC 2019 insurance claims,

    c.  Loss of goodwill with their creditors,

    d.  Loss of goodwill with their landlords,

    e.  Loss of ability to lease acreage for farming,

    f.  Inability to secure favorable financing,

    g.  Loss of profits and income, and

    h.  Damage to standing and reputation in the community.

WHEREFORE, Plaintiff NHF-I requests that this Court enter judgment in its favor and against GAI, FCIC, USDA and its RMA (a) ordering GAIC and/or FCIC, USDA and its RMA to immediately complete adjustment of, and pay, NHF-I's claim and (b) award NHF-I judgment for its damages, including all actual, incidental and consequential other damages, plus all allowable costs, interest and attorney fees.

## COUNT II

## BREACH OF CONTRACT WITH NHF-II

93.     Plaintiff incorporates the above allegations by reference.

94.     GAIC and NHF-II are both parties to a valid multi-peril insurance policy contract. **Exhibit 11 and 12.**

95.     GAIC has a statutory and contractual duty to promptly investigate notices of loss, adjust and pay claims under the insurance policies.

96.     The FCIC and RMA have a statutory duty, once involved, to promptly investigate, adjust and allow the AIP to pay under the insurance policies.

97.     NHF-II provided all requested information and paid the total premium owed for 2019, fulfilling its obligation under the contract.

98.     Despite their duty and despite the information and cooperation from Stacy and NHF-I, GAIC, FCIC, USDA and its RMA have neither adjusted nor made a determination on NHF-II's claim and refuse to do so.

99.     GAIC, FCIC, USDA and its RMA have not made any indemnity payments for crop year 2019.

100.     GAI, FCIC, USDA and its RMA have breached the contract by failing to perform their obligations in a timely manner.

101.    NHF-II has suffered the following damages as a direct and proximate result of GAI, FCIC, USDA and its RMA's breach of contract:

    a.   GAIC's, FCIC's, USDA's and its RMA's inaction prevents adjustment and payment of crop insurance claims for 2019 and subsequent years,

    b.   Nonpayment of GAIC 2019 insurance claims,

    c.   Loss of goodwill with their creditors,

    d.   Loss of goodwill with their landlords,

    e.   Loss of ability to lease acreage for farming,

    f.   Inability to secure favorable financing,

    g.   Loss of profits and income, and

    h.   Damage to standing and reputation in the community.

WHEREFORE, Plaintiff NHF-II requests that this Court enter judgment in its favor and against GAIC: (a) ordering GAIC to immediately complete adjustment of, and pay, NHF-II's claim; and (b) award NHF-II judgment for its damages, including all actual, incidental and consequential other damages, plus all allowable costs, interest and attorney fees to which they may be entitled.

## COUNT III

## FAILURE TO PROMPTLY ADJUST, DETERMINE AND PAY CLAIMS IN VIOLATION OF 7 USC § 1508 AND MCL 500.2006(1)

102.    Plaintiff incorporates the above allegations by reference.

103.    Under Federal law, 7 USC §1508 (j) requires that the FCIC "establish standards to ensure that all claims for losses are adjusted, to the extent practicable, *in a uniform and timely manner*." (Emphasis added).

104.     Under Michigan law, the Insurance Code of 1956 codified as MCL 500.2006(1) requires that and insurer such as GAIC "must pay on a timely basis to its insured … or, in the alternative, the person must pay to its insured … 12% interest, as provided in subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute."

105.     NHF-I and NHF-II gave notice of a potential claim due to planting conditions in the summer and fall of 2019.

106.     NHF-I and NHF-II gave notice of a potential claim due to harvest conditions and results in late 2019.

107.     GAIC, FCIC, USDA, and RMA have requested and were supplied with all requested documents and information.

108.     Instead of dialogue and an understanding of the dispute and a path forward towards resolution, GAIC, FCIC, USDA, and RMA have spent over three years delaying the claims.

109.     GAIC, FCIC, USDA and its RMA have not requested a proof of loss from either NHF-I or NHF-II.

110.     After more than three years later, GAIC, FCIC, USDA and its RMA have not adjusted or determined the claim and have not tendered any indemnity payments to NHF-I and NHF-II.

111.     GAIC, FCIC, USDA and its RMA have not denied the claim.

112.     Failure to adjust, determine and pay the claims under the insurance policies for over three years is untimely.

113.    NHF-I and NHF-II have suffered the following damages as a direct and proximate result of GAIC, FCIC, USDA and its RMA's breach of their statutory duty to adjust, determine and pay claims:

     a.  GAIC's, FCIC's, USDA's and its RMA's inaction prevents adjustment and payment of crop insurance claims for 2019 and subsequent years,

     b.  Nonpayment of GAIC 2019 insurance claims,

     c.  Loss of goodwill with their creditors,

     d.  Loss of goodwill with their landlords,

     e.  Loss of ability to lease acreage for farming,

     f.  Inability to secure favorable financing,

     g.  Loss of profits and income, and

     h.  Damage to standing and reputation in the community.

WHEREFORE, Plaintiff NHF-I and NHF-II request that this Court enter judgment in their favor and against GAIC, FCIC, USDA and its RMA (a) ordering GAIC and/or FCIC, USDA and its RMA to immediately complete adjustment of NHF-I's and NHF-II's claim and (b) award NHF-I and NHF-II judgment for its damages, including all actual, incidental and consequential other damages, plus all allowable costs, interest and attorney fees to which they may be entitled, pursuant to 28 U.S.C. § 2412 and otherwise.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTION DISTRESS
## TO STACY BOERSEN AND NICHOLAS BOERSEN

114.    Plaintiff incorporates the above allegations by reference.

115.    Upon information and belief, FCIC, USDA and its RMA have made false statements to persons about Plaintiffs while investigating NHF-I's and NHF-II's claims.

116.    Upon information and belief, FCIC, USDA and its RMA have made false statements about Plaintiff's to the public while investigating NHF-I's and NHF-II's claims.

117.    Upon information and belief, FCIC, USDA and its RMA intentionally and deliberately misinformed Plaintiff's business affiliates that Plaintiff engaged in criminal behavior.

118.    GAIC, FCIC, USDA and RMA refuse to end the investigation and adjust, determine and pay the NHF-I and NHF-II claims under the guise that they are perpetually investigating the NHF-I and NHF-II.

119.    GAIC, FCIC, USDA and RMA's actions have inflicted injury upon Stacey Boersen & NHF-I and Nicholas Boersen & NHF-II, that is serious, withholding an estimated $2,333,824.00 in insurance benefits and causing severe mental disturbance or distress.

120.    GAIC's failure to properly adjust the claims at best was reckless and given the steps taken by GAIC during the adjustment process to manipulate the test weights among other conduct is demonstrable of intent.

121.    GAIC's referral to the FCIC, the USDA and RMA for investigation is a further showing of the intent to cause emotional harm to Stacey Boersen, NHF-I, Nicholas Boersen, and NHF-II.

122.    FCIC, USDA, and RMA's failure to reasonably adjust the claim over a period of three years is at best reckless and at worst intentional.

123.    GAIC, FCIC, USDA and RMA's conduct in the preceding paragraphs is extreme and outrageous, calculated to put Plaintiffs out of business and to undermine their credibility and trustworthiness.

124.    FCIC, USDA, and RMA caused Federal Investigators to raid NHF-I, NHF-II and threaten them with criminal prosecution.

125. These were intentional tactics designed to instill fear and intimidate Stacy, NHF-I, Nicholas, and NHF-II away from pursuing their rightfully due and bona-fide crop insurance claim.

126. GAIC, FCIC, USDA, and RMA's intentional and reckless conduct in not adjusting this insurance claim is the direct cause of the emotional harm done to Stacy, NHF-I, Nicholas, and NHF-I.

127. Stacey, NHF-I, Nicholas, and NHF-II have suffered the following injuries each resulting in severe mental stress and directly caused by GAIC, FCIC, USDA, and RMA:

    a. GAIC's, FCIC's, USDA's and its RMA's inaction prevents adjustment and payment of crop insurance claims for 2019 and subsequent years,

    b. Nonpayment of GAIC 2019 insurance claims,

    c. Loss of goodwill with their creditors,

    d. Loss of goodwill with their landlords,

    e. Loss of ability to lease acreage for farming,

    f. Inability to secure favorable financing,

    g. Loss of profits and income, and

    h. Damage to standing and reputation in the community.

128. GAIC, FCIC, USDA and RMA's improper withholding of funds and failure to pay out a bona fide claim has meant that Stacy, NHF-I, Nicholas and NHF-II has been unable to make payments on debts to creditors and suffered extreme trauma and stress due to these extreme hardships for three long years.

WHEREFORE, Plaintiff Stacy Boersen and Nicholas Boersen request that this Court enter judgment in their favor and against Defendants for Plaintiffs' actual, incidental, and consequential economic, non-economic and emotional distress and anxiety damages plus all allowable costs,

interest, and attorney fees to which they may be entitled, pursuant to 28 U.S.C. § 2412 and otherwise.

## COUNT V

## BAD FAITH ADJUSTMENT OF NHF-I AND NHF-II'S INSURANCE CLAIMS

129.    Plaintiff incorporates the above allegations by reference.

130.    GAIC, FCIC, USDA and RMA owe a duty of good faith and fair dealing to NHF-I and NHF-II as insureds with regards to claim handling.

131.    GAIC, FCIC, USDA and RMA have not adjusted the claim in over three years.

132.    GAIC, FCIC, USDA and RMA do not have a reasonable basis for denying benefits under the policy.

133.    GAIC, FCIC, USDA and RMA have been indifferent to the effect that refusal has had on NHF-I and NHF-II.

134.     GAIC, FCIC, USDA and RMA know or are recklessly disregarding the lack of a reasonable basis to deny the claim or pay the claim, mercilessly leaving the claimants, NHF-I and NHF-II in a state of uncertainty.

135.    GAIC failed to follow RMA-approved procedures when performing grain bin measurements to appraise the 2019 harvest and, in doing so, deprived NHF-I and NHF-II of an accurate appraisal of their 2019 crop and losses at no fault of NHF-I and NHF-II.

136.    GAIC failed to follow RMA approved procedures when adjusting the claim and in doing so deprived NHF-I and NHF-II of an accurate appraisal of their 2019 crop and losses at no fault of NHF-I and NHF-II.

137.    NHF-I and NHF-II have suffered the following damages as a direct and proximate result of GAIC, FCIC, USDA and its RMA's breach of their statutory duty to adjust, determine and pay claims:

a. GAIC's, FCIC's, USDA's and its RMA's inaction prevents adjustment and payment of crop insurance claims for 2019 and subsequent years,

b. Nonpayment of GAIC 2019 insurance claims,

c. Loss of goodwill with their creditors,

d. Loss of goodwill with their landlords,

e. Loss of ability to lease acreage for farming,

f. Inability to secure favorable financing,

g. Loss of profits and income, and

h. Damage to standing and reputation in the community.

WHEREFORE, Plaintiff NHF-I and NHF-II request that this Court enter judgment in their favor and against Defendants for Plaintiffs' NHF-I and NHF-II actual, incidental, and consequential economic, non-economic and emotional distress and anxiety damages plus all allowable costs, interest and attorney fees to which they may be entitled, pursuant to 28 U.S.C. § 2412 and otherwise.

## COUNT VI

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

138.    Plaintiff incorporates the above allegations by reference.

139.    GAIC, FCIC, USDA and its RMA knew that NHF-I and NHF-II had contracts with its landlords, ARM and various vendors.

140.    Upon information and belief, the conduct of GAIC, FCIC, USDA and its RMA intentionally and improperly interfered with these contracts by:

a. delayed adjusting the insurance claims,

b. contacting the landlords, ARM and vendors and making disparaging statements.

141.    Upon information and belief, the conduct by GAIC, FCIC, USDA and its RMA was undertaken and pursued with the intent to put NHF-I and NHF-II out of business and to deny it insurance claims.

142.    The conduct of GAIC, FCIC, USDA and its RMA caused harm to NHF-I and NHF-II by:

    a.    Causing certain of NHF-I's and NHF-II's landlords, ARM and vendors to cease doing business with them, and

    b.    Interfering with adjustment of their 2019 and subsequent crop insurance claims.

    c.    Starving NHF-I and NHF-II for cash.

WHEREFORE, Plaintiff NHF-I and NHF-II request that this Court enter judgment in their favor and against Defendants for Plaintiffs' NHF-I and NHF-II actual, incidental, and consequential economic, non-economic and emotional distress and anxiety damages plus all allowable costs, interest and attorney fees to which they may be entitled, pursuant to 28 U.S.C. § 2412 and otherwise.

## COUNT VII

### INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS OR EXPECTANCIES

143.    Plaintiff incorporates the above allegations by reference.

144.    NHF-I and NHF-II had business relationships with its landlords, ARM and other vendors and the expectancy that the relationships would continue.

145.    NHF-I and NHF-II had a reasonable expectation that the business relationships and expectancies would continue.

146.    GAIC, FCIC, USDA and its RMA knew that NHF-I and NHF-II had business relationships and with its landlords, ARM and various vendors the expectancy that the relationships would continue.

147.    Upon information and belief, the conduct of GAIC, FCIC, USDA and its RMA intentionally and improperly interfered with these business relationships and expectancies by:

    a.  delayed adjusting the insurance claims,

    b.  contacting the landlords, ARM and vendors and making disparaging statements.

148.    Upon information and belief, the conduct by GAIC, FCIC, USDA and its RMA was undertaken and pursued with the intent to put NHF-I and NHF-II out of business and to deny it insurance claims.

149.    The conduct of GAIC, FCIC, USDA and its RMA caused harm to NHF-I and NHF-II by:

    c.  Causing certain of NHF-I's and NHF-II's landlords, ARM and vendors to cease doing business with them, and

    d.  Interfering with adjustment of their 2019 and subsequent crop insurance claims.

    e.  Starving NHF-I and NHF-II for cash.

WHEREFORE, Plaintiff NHF-I and NHF-II request that this Court enter judgment in their favor and against Defendants for Plaintiffs' NHF-I and NHF-II actual, incidental, and consequential economic, non-economic and emotional distress and anxiety damages plus all allowable costs, interest, and attorney fees to which they may be entitled, pursuant to 28 U.S.C. § 2412 and otherwise.

## COUNT IX

## CONSTITUTIONAL DUE PROCESS VIOLATIONS

150.    Plaintiff incorporates the above allegations by reference.

151.    The 5th Amendment of the Constitution of the United States of America prohibits the Federal Government from depriving "a person of life, liberty, or property, without due process of law".

152.    42 U.S.C. 1983 authorizes civil actions to be brought against state actors for the deprivation of constitutional rights.

153.    FCIC, USDA and its RMA are state actors of the Federal Government.

154.    NHF-I's and NHF-II's insurance benefits are property rights.

155.    FCIC, USDA and its RMA are responsible for withholding payment of NHF-I's and NHF-II's claims in bad faith.

156.    FCIC, USDA and its RMA protracted investigation have deprived NHF-I and NHF-II of their substantive rights by depriving them of their property, their insurance premiums and the benefits owed under the policies, without just compensation.

157.    FCIC, USDA and its RMA protracted investigation have deprived NHF-I and NHF-II of their procedural due process rights by depriving them of their property, their insurance premiums, and the benefits owed under the policies without providing hearing, notice, paying out the claim, or denying the claim on reasonable grounds.

158.    FCIC, USDA and its RMA have abused and continue to abuse their governmental power by purposely delaying adjustment of the insurance claim while not denying it, threatening Plaintiffs with criminal prosecution and offering no reasonable explanation for the three-year delay.

WHEREFORE, NHF-I and NHF-II request that this Court enter judgment in their favor and against Defendants for NHF-I's and NHF-II's actual, incidental, punitive, and consequential economic, non-economic and emotional distress and anxiety damages plus all allowable costs, interest, and attorney fees pursuant to 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

Dated: August 10, 2023                          /s/ Ronald J. VanderVeen
                                                Ronald J. VanderVeen (P33067)
                                                John D. Fitzpatrick (P85554)
                                                Carl Thorwall (P86746)
                                                Cunningham Dalman, PC
                                                321 Sellers Road
                                                Holland, MI 49422-1767
                                                rjvv@cunninghamdalman.com

## PLAINTIFF'S JURY DEMAND

Plaintiffs demand a trial by jury for all issues in this case pursuant to F.R.Civ.P 35.

Dated: August 10, 2023                          /s/ Ronald J. VanderVeen
                                                Ronald J. VanderVeen (P33067)
                                                Cunningham Dalman, PC