## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **NEW HEIGHTS FARM I, LLC, a Michigan limited liability company, STACY BOERSEN, NEW HEIGHTS FARM II, LLC, a Michigan limited liability company, and NICHOLAS BOERSEN,** | **Case No. 1:23-CV-663** |
| | **Honorable Hala Y. Jarbou Magistrate Judge Phillip J. Green** |
| **Plaintiffs,** | **ORAL ARGUMENT REQUESTED** |
| **v.** | |
| **GREAT AMERICAN INSURANCE COMPANY, FEDERAL CROP INSURANCE CORPORATION, AND UNITED STATES DEPARTMENT OF AGRICULTURE,** | |
| **Defendants.** | |

## DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S
## BRIEF IN SUPPORT OF MOTION TO DISMISS

## ORAL ARGUMENT REQUESTED

# Table of Contents

TABLE OF AUTHORITIES ................................................................................ iii

I.  INTRODUCTION ....................................................................................... 1

    A.  ISSUES PRESENTED ........................................................................ 1

II.  STANDARD OF REVIEW ......................................................................... 3

III.  KEY FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT ............................ 3

IV.  THE FEDERAL CROP INSURANCE PROGRAM ........................................... 6

    A.  Plaintiffs' Policy Terms are Federal Law. ........................................... 6

        1.  Federal Crop Insurance Program Background. ................................. 6

        2.  Federally Subsidized Policies Include Strict Requirements. ............ 7

    B.  Only the Federal Government May Interpret the Policy Terms. ............ 7

    C.  Request for Judicial Notice of FCIC Final Agency Determinations. ..... 9

    D.  The Policy Terms Preempt Conflicting State Law. ............................. 10

    E.  No One Has Authority to Waive the Policy Terms. ........................... 11

    F.  Policyholders Are Deemed to Know the Policy Terms. ..................... 11

V.  ARGUMENT ........................................................................................... 12

    A.  Plaintiffs' Claims are Not Ripe. ...................................................... 12

    B.  A Policyholder Must Complete Arbitration Before Filing Suit. .......... 14

        1.  Arbitrable Issues Exist. ............................................................... 14

        2.  Plaintiffs' Claims Are Specifically Preempted by CCIP Basic Provisions ¶20(i)........... 16

    C.  Counts I and II – Breach of Contract Claims are Preempted. ............. 19

        1.  CCIP Basic Provisions §14(f)(3) Expressly Prohibits Claim Payment Here. ................. 19

        2.  CCIP Basic Provisions §14(h) Expressly Permits Adjustment Deferral. ....................... 21

    D.  Count III – Failure to Promptly Adjust, Determine, and Pay Claims in Violation of 7 USC § 1508 and MCL 500.2006(1) is Preempted. ................... 22

        1.  Policy Terms Require Great American to Follow FCIC Procedures............................ 22

        2.  Policy Terms Take Precedence Over Procedures. ......................... 23

        3.  Plaintiffs' State Law Claims Are Preempted. ............................... 23

    E.  Count IV – Intentional Infliction of Emotional Distress – Great American's Conduct is Authorized and Not Outrageous. ........................... 24

    F.  Count V – Michigan Does Not Recognize Bad Faith Adjustment Claims. ....................... 25

    G.  Count VI – Intentional Interference with Contractual Relationships Claim Fails. ............. 25

        1.  Plaintiffs Do Not Allege the Required Resulting Breach. ............... 26

' ........................................................................................................................... 26

' ........................................................................................................................... 26

H.  Count VII – Intentional Interference with Business Relationships or Expectancies Claim
Fails. ..................................................................................................................................... 26

   1.  Plaintiffs Cannot Allege an Intentional Per Se Wrongful or Unjustified Lawful Act with
Malice. ................................................................................................................................... 27

   2.  Great American Investigated for Legitimate Reasons. ..................................................... 28

I.  Count – IX Constitutional Due Process Violations Claim Fails. ........................................ 29

J.  CCIP Basic Provisions §20(j) Prohibits Suit Against Great American............................... 29

VI.  CONCLUSION......................................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613 (6th Cir. 2019) ............................................. 29

*Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150, AFL-CIO*, 3 F.4th 866 (6th Cir. 2021) ................................................................................................................................ 26, 27

*Andrews v. Prudential Sec.*, 160 F.3d 304 (6th Cir. 1998) ......................................................... 24

*Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agriculture Ins. Co.*, 57 F.4th 536 (6th Cir.2023) ......................................................................................................................................... 7

*Barber v. Charter Twp. of Springfield*, 31 F.4th 382 (6th Cir. 2022) ........................................... 13

*Benkert v. Med. Protective Co.*, 842 F.2d 144 (6th Cir. 1988) .................................................... 25

*Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 729 N.W.2d 277 (2006) ......................... 25

*Cates v. Crystal Clear Technologies, LLC*, 874 F.3d 530 (6th Cir. 2017) .................................. 3

*Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053 (6th Cir. 2022) ...................................... 3

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ............. 8

*Courser v. Allard*, 969 F.3d 604 (6th Cir. 2020) ........................................................................ 27

*Crossley v. Allstate Ins. Co.*, 155 Mich. App. 694, 400 N.W.2d 625 (1986) .............................. 24

*Federal Crop Ins. Corp v. Merrill*, 332 U.S. 380 (1947) ............................................................. 7

*First Foliage, L.C. v. Rural Cmty. Ins. Servs. (In re First Foliag, L.C.)*, Nos. 10-27532-BKC-LMI, 10-03591-LMI, 2014 Bankr. LEXIS 2605 (Bankr. S.D. Fla. June 10, 2014) ................ 29

*Health Call v. Atrium Home & Health Care Servs.*, 268 Mich. App. 83, 706 N.W.2d 843 (2005) ........................................................................................................................................... 26

*Heckler v. Cmty. Health Servs. of Crawford County, Inc.,* 104 S.Ct. 2218 (1984) ..................... 11

*Hillsborough County v. Automated Med. Lab., Inc.*, 471 U.S. 707, 713 (1985) .......................... 10

*Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Ath. Equip.*, 535 F. Supp. 3d 638 (E.D. Mich. 2021) ............................................................................................................. 27

*Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 829 N.W.2d 345 (2013) ........................... 26

*Mancini, et al. v. Redland Insurance Co.*, 248 F.3d. 729 (8th Cir. 2001) .................................... 7

*NAU Country Ins. Co. v. Alt's Dairy Farm, LLC*, 6th Cir. No. 21-2792, 2023 U.S. App. LEXIS 867 (Jan. 11, 2023) .................................................................................................................... 7

*New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495 (6th Cir. 2003) ........................................................................................................................................... 3

*Nobles v. Rural Community Ins. Services*, 122 F.Supp.2d 1290, 1294 (M.D. Ala. 2000) ........... 10

*Oaks v. Allstate Ins. Co., No. 05-191-REW, 2006 U.S. Dist. LEXIS 83652 (E.D. Ky. Nov. 14, 2006)* ......................................................................................................................................... 11

*Overdrive Inc. v. Open E-Book Forum*, 986 F.3d 954 (6th Cir. 2021) ........................................ 12

*Parks v. LaFace Records*, 329 F.3d 437 (6th Cir. 2003) ............................................................ 28

*Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190 (6th Cir. 1986) .................................................. 24

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985) ................................ 25

*Roberts v. Federal Crop Ins. Corp.*, 158 F.Supp. 688, 694-695 (E.D. Wash. 1958) ................... 10

*Saab Auto. AB v. GM Co.*, 770 F.3d 436 (6th Cir. 2014) ............................................................ 27

*Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*, 53 F.4th 1014 (6th Cir. 2022) .......... 12

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988). ............................... 3

*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) ................................................. 12
*Walpole v. Great American Insurance Companies*, 914 F.Supp. 1283, 1290-1291 (D. S.C., 1994) ....................................................................................................................... 11
*Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396 (6th Cir. 2003) .............. 27, 28
*Wood v. Herndon & Herndon Investigations, Inc.*, 186 Mich. App. 495, 465 N.W.2d 5 (1990). 28
*Woody v. Tamer*, 158 Mich. App. 764, 405 N.W.2d 213 (1987) ..................................... 26
*Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 761 N.W.2d 151 (2008) ...... 11

## Statutes
7 USC § 1501 ................................................................................................................ 6
7 USC § 1506(l) ....................................................................................................... 9, 25
7 USC § 1506(r) ........................................................................................................... 7
7 USC § 1508(j)(1) ...................................................................................................... 22
7 USC § 6933 ............................................................................................................... 6

## Michigan Compiled Laws
MCL 500.2006(1) ........................................................................................................ 23

## Rules
Fed. R. Civ. P. 12(b)(1) ...................................................................................... 11, 12, 13
Fed. R. Civ. P. 12(b)(6) ................................................................................................. 2

## U.S. Constitution
U.S. Constitution at Article III, §2 .............................................................................. 11

## Regulations
7 CFR § 400.351 et seq. ............................................................................................... 10
7 CFR § 400.352 .................................................................................................... 1, 9, 25
7 CFR § 400.766(b)(2) .................................................................................................. 8
7 CFR § 400.768(g) ...................................................................................................... 8
7 CFR § 457.8 ....................................................................................................... 1, 4, 10
7 CFR Part 400 ............................................................................................................. 9
7 CFR Part 400, Subpart X ........................................................................................... 8

## Federal Register
69 Fed. Reg. 48652 ...................................................................................................... 18

## Final Agency Determinations
FAD-078 ....................................................................................................................... 9
FAD-099 ....................................................................................................................... 9
FAD-190 ................................................................................................................... 9, 16
FAD-192 ................................................................................................................... 9, 10
FAD-208 ....................................................................................................................... 9
FAD-211 ................................................................................................................... 9, 17
FAD-251 ................................................................................................................... 9, 17
FAD-270 ................................................................................................................... 9, 20

## CCIP Basic Provisions (see 7 CFR Section 457.8)
CCIP Basic Provisions §14(f) ................................................................................... 15, 23
CCIP Basic Provisions §14(f)(3) ............................................................................... passim
CCIP Basic Provisions §20(a) ..................................................................................... 15

CCIP Basic Provisions §20(a)(1) ......................................................................................... 14, 16
CCIP Basic Provisions §20(b)(4) ............................................................................................... 8
CCIP Basic Provisions §20(i) ........................................................................................... passim
CCIP Basic Provisions §20(j) ................................................................................................... 30
CCIP Basic Provisions §26 ......................................................................................................... 1
CCIP Basic Provisions §31 ................................................................................................... 1, 10
CCIP Basic Provisions, Agreement to Insure ......................................................................... 23
CCIP Basic Provisions, Preamble ...................................................................................... 11, 22

---

# I.  INTRODUCTION

## A.     ISSUES PRESENTED

- *All claims:* None of the Plaintiffs' claims are ripe for adjudication because they concern an ongoing USDA investigation into the two LLC plaintiffs' crop insurance claims and their policy terms prohibit Great American from adjusting or paying their claims until that investigation concludes and USDA finds no evidence of wrongdoing.  All four plaintiffs' claims in this lawsuit are derivative of those yet-to-be-determined crop insurance claims.

  Plaintiffs' claims are fatally flawed for the following reasons:

- *Count I – Breach of Contract with NHF-I* and the similar *Count II – Breach of Contract with NHF-II* fail to state claims because Plaintiffs' allegations demonstrate that Great American has in fact complied with the federally-mandated contract terms.  The applicable Common Crop Insurance Policy (referred to herein as the Common Crop Insurance Policy Basic Provisions or "CCIP Basic Provisions"), reproduced in Plaintiffs' Exhibits, is found at 7 CFR § 457.8 (2018 Ed.).  Those federally mandated terms preempt any conflicting state law.  CCIP Basic Provisions §14(f)(3) states that a loss is deemed payable only at the later of several dates, one of which is the completion of any investigation by USDA if evidence of no wrongdoing has been found.  CCIP Basic Provisions §14(h) also authorizes the company to defer adjustment of a loss until the amount of the loss can be accurately determined.  Furthermore, Plaintiffs' requests for extra-contractual damages are preempted and prohibited by CCIP Basic Provisions §20(i), §26 and §31, and 7 CFR § 400.352.

*Great American's Brief in Support of Motion to Dismiss*

- *Count III – Failure to Promptly Adjust, Determine, and Pay claims in Violation of 7 USC § 1508 and MCL 500.2006(1)* fails to state a claim against Great American because Plaintiffs' state law-based claims are preempted by federal law as described above.  The Agreement to Insure in the policy terms also states that the policy takes precedence over FCIC procedures, meaning that CCIP Basic Provisions §14(f)(3) and §14(h) preempt any adjustment requirements.

- *Count IV – Intentional Infliction of Emotion Distress to Stacy Boersen and Nicholas Boersen* fails because the amended complaint demonstrates Plaintiffs' loss claims are not yet due and payable since USDA has not yet completed its investigation and federal law preempts this claim.  Great American's conduct here establishes that it is complying with the contract, not engaging in any outrageous behavior.  Also, federal law preempts this claim.

- *Count V – Bad Faith Adjustment of NHF-I and NHF-II's Insurance Claims* fails because Michigan does not recognize insurance bad faith as an actionable claim.  Even if it did, federal law would preempt it.

- *Count VI – Intentional Interference with Contractual Relationships* fails because federal law preempts this claim and because Plaintiffs have failed to allege that Great American's conduct resulted in any third party breaching any contract with any Plaintiff.

- *Count VII – Intentional Interference with Business Relationships or Expectancies* fails because federal law preempts this claim.

- [There is no Count VIII.]

- *Count IX – Constitutional Due Process Violations* fails because Great American Insurance Company is a private insurance company, not a governmental actor.

*Great American's Brief in Support of Motion to Dismiss*

## II.  STANDARD OF REVIEW

"A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  A complaint must have either direct or inferential allegations of all the material elements necessary for recovery.  *Id.*  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). In determining the sufficiency of a complaint under the plausibility standard, courts must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true."  *Ryan v. Blackwell*, 979 F.3d 519 at 524.

When considering whether dismissal is proper, the court may consider a document attached to a complaint, and if the attached document contradicts an allegation in the complaint, the document trumps the allegation.  *Cates v. Crystal Clear Technologies, LLC*, 874 F.3d 530, 536 (6th Cir. 2017).  When ruling on a Rule 12(b)(6) motion, a court may also consider materials that are public records or otherwise appropriate for taking judicial notice.  *New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

Similarly, when considering a facial attack on jurisdiction, the court accepts the well-pleaded allegations as true and views them in the light most favorable to the Plaintiffs, and then determines whether they amount to a ripe case or controversy.  *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053, 1057 (6th Cir. 2022).

## III.  KEY FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Great American Insurance Company ("Great American") is an insurance company engaged in the business of federally reinsured crop insurance.  Accordingly, Great American is

referred to as an "Approved Insurance Provider" or "AIP" within the program.  Second

Amended Complaint (Doc. No. 26) ("AC,") at ¶5, ¶¶17-18  (PageID.2285, 2287).

NHF-I[1] applied to Great American for a federal crop insurance policy for the 2019 crop

year.  AC ¶¶24 (PageID.2287).  Shortly thereafter, Great American issued Policy No. MP-2019-

MI-084-1139524 ("Policy NHF-I-524").  AC ¶ 26 (PageID.2287).  The Schedule of Insurance

for Policy NHF-I-524 reflects coverage for corn crops in Allegan, Barry, Calhoun, Jackson, and

Ottawa Counties in Michigan, and soybean crop coverage for Eaton and Ingham Counties in

Michigan.  AC Ex. 3 (PageID.2540-2563).

NHF-II[2] submitted two applications to Great American for federal crop insurance policies

for the 2019 crop year.  AC ¶54 (PageID.2291).  In response, Great American issued Policy Nos.

MP-2019-MI-084-1139526 and MP-2019-MI-084-1139527 ("Policies NHF-II-526 and NHF-II-

527").  AC ¶56 (PageID.2291).  The Schedule of Insurance for Policy NHF-II-526 reflects

coverage for corn in Berrien, Cass, Hillsdale, and Van Buren Counties in Michigan.  AC Ex. 12

(PageID.2290-3005).  The Schedule of Insurance for Policy NHF-II-527 reflects corn crop

coverage for Eaton and Washtenaw Counties and soybean crop coverage for Ingham County,

Michigan.  AC Ex. 13 (PageID.3006-3015).

The policy terms applicable here are not simple insurance policies, but rather the

Common Crop Insurance Policy terms applicable to Plaintiffs' policies are federal regulations

promulgated by the federal government at 7 CFR § 457.8 (2018 Ed.).  The applications that

NHF-I and NHF-II signed alert them to that fact at the bottom of the second pages of their

---

[1] Great American refers to New Heights Farm I, LLC as NHF-I for consistency since Plaintiffs used that
abbreviation in their Complaint.
[2] Great American refers to New Heights Farm II, LLC as NHF-II for consistency since Plaintiffs used that
abbreviation in their Complaint.

*Great American's Brief in Support of Motion to Dismiss*

applications (AC Exhibits 1, 8, and 9) ("*The insurance contract ... is defined in the regulation published at 7 CFR Chapter IV.*") (PageID.2309, 2577, 2581).

The same Common Crop Insurance Policy basic terms found at 7 CFR § 457.8 apply to each of the policies in issue here, which the Federal Crop Insurance Corporation ("FCIC") reproduces for convenience on a government form titled the Common Crop Insurance Policy Basic Provisions (Form No. 18-BR), which terms are found in the policy documents attached as exhibits to the Complaint for each policy here (AC Exhibits 2, 10, and 11) (PageID.2312-2539, 2584-2807, 2808-2989). For simplicity, the terms in those exhibits are referred to herein as the "Common Crop Insurance Policy Basic Provisions" or the "CCIP Basic Provisions," and when a specific paragraph of those terms is cited herein, the location of that terms paragraph in the record is included.

After coverage commenced, NHF-I submitted two notices of loss under Policy NHF-I -524, one for a claim for prevented planting and one for a probable loss, to which Great American assigned Claim Numbers 2019-1139524-01 and 2019-1139524-03, respectively. AC Exhibits 4 and 5 (PageID.2464-2569). Shortly thereafter, Great American started adjusting the claims submitted under Policy NHF-I-524. AC ¶¶ 33, 35-37 (PageID.2289).

NHF-II submitted one notice of loss under Policy NHF-II -526 for a probable loss, to which Great American assigned Claim Number 2019-1139526-01. See the first two pages of AC Exhibit 15 (PageID.3018-3019).

NHF-II also submitted three notices of loss under Policy NHF-II -527, one for a claim for prevented planting and two for probable loss, to which Great American assigned Claim Numbers 2019-1139527-01, 2019-1139527-02, and 2019-1139527-03, respectively. AC Exhibits 14, 15 (see the last two pages of Exhibit 15), and 16 (PageID.3016-3017, 3020-3021, 3022-3023). Like

*Great American's Brief in Support of Motion to Dismiss*

the claims submitted by NHF-I, Great American started adjusting the claims submitted under Policies NHF-II-526 and NHF-II-527.  AC ¶¶ 63, 65-67 (PageID.2292-2293).

After NHF-I and NHF-II submitted their claims and Great American began adjusting them, RMA, on behalf of FCIC, started investigating all of the claims at issue in this suit.  (AC ¶¶ 47-52, 76-81) (PageID.2290-2291, 2293-2294).  On August 21, 2020, Great American sent letters to NHF-I and NHF-II stating that since RMA had formally notified Great American that RMA and the USDA Office of Inspector General (OIG) had opened an investigation of suspected fraud regarding their policies and claims, and that the policy provisions and binding USDA Risk Management Agency interpretations prohibited Great American from paying or otherwise determining their claims until the government completed its investigation.  AC Exhibits 7 and 18 (PageID.2572-2575, 3027-3030).

Plaintiffs do not allege that the USDA has completed or otherwise closed its investigation of their claims.

## IV.  THE FEDERAL CROP INSURANCE PROGRAM

### A.  Plaintiffs' Policy Terms are Federal Law.

#### 1.  Federal Crop Insurance Program Background.

Plaintiffs' policies are not typical insurance policies.  Rather, crop insurance is a federal benefit program in the form of subsidized and regulated insurance, funded in part by the federal treasury.  Congress established the Federal Crop Insurance Corporation (FCIC) as a federal corporation under the Federal Crop Insurance Act to implement the Act.  See 7 USC § 1501, et seq.  USDA Risk Management Agency ("RMA") administers FCIC (see 7 USC § 6933; as a practical matter, RMA and FCIC act as one and the same, though they remain legally separate).

6

Because federal crop insurance is a congressionally enacted program that subsidizes the cost of insurance coverage and uses federal funds, participants in the Federal Crop Insurance Program "must turn square corners" in strictly observing the terms and conditions defined by Congress and promulgated by the FCIC for charging the public treasury. *Federal Crop Ins. Corp v. Merrill*, 332 U.S. 380, 385 (1947). "Courts must strictly construe the statutory regulatory limits upon disbursements of funds through federal insurance programs." *Mancini, et al. v. Redland Insurance Co.*, 248 F.3d. 729, 733 (8th Cir. 2001) (citing *Merrill*, 332 U.S. at 385-386) (granting summary judgment for insurance company where there was no issue of fact that insured failed to strictly comply with terms of federal flood insurance policy).

### 2. Federally Subsidized Policies Include Strict Requirements.

The premiums for Plaintiffs' policies were heavily subsidized by the federal government: NHF-I's subsidy was $313,126 and NHF-II's subsidies for its two policies were $330,636 and $68,903, respectively (see the summaries on the schedules of insurance attached as exhibits; PageID.2561, 3003, 3013). "But subsidized insurance comes with a catch: the terms of every federally reinsured crop insurance policy are set by the FCIC and codified at 7 C.F.R. § 457.8, the Common Crop Insurance Policy (the common policy or CCIP)." *NAU Country Ins. Co. v. Alt's Dairy Farm, LLC*, 6th Cir. No. 21-2792, 2023 U.S. App. LEXIS 867 at *3 (Jan. 11, 2023). When an AIP and a farmer enter into a federally-reinsured crop insurance contract, they agree to those common terms set by FCIC. *Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agriculture Ins. Co.*, 57 F.4th 536, 538 (6th Cir.2023).

## B. Only the Federal Government May Interpret the Policy Terms.

The CCIP Basic Provisions mandate that in a suit, any interpretations of policy or procedure must be obtained from FCIC:

7

In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

CCIP Basic Provisions §20(b)(4)
(PageID.2353, 2625, 2849).

FCIC issues its official and binding interpretations of crop insurance regulations through binding rulings known as Final Agency Determinations (FADs).  In response to Congress' mandate at 7 USC § 1506(r) that the FCIC provide procedures for the issuance of the agency's binding interpretations of crop insurance regulations, FCIC created a process for the agency to publish FADs by promulgating 7 CFR Part 400, Subpart X.  That regulation provides that FCIC will publish FADs electronically on the RMA website.  *See* 7 CFR § 400.768(g).  A FAD is binding upon all participants in the Federal Crop Insurance Program.  "All written final agency determinations issued by FCIC are binding on all participants in the Federal crop insurance program for the crop years the policy provisions are in effect."  7 CFR § 400.766(b)(2).  A FAD also represents the agency's official interpretations of its own regulations, and therefore, reviewing courts must defer to the agency's position if the court concludes that the agency's action is reasonable.  *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984).

The import of §20(b)(4) and 7 CFR Part 400, Subpart X is that the federal government has reserved the right to interpret the policy terms to itself rather than to courts or arbitrators, further demonstrating that this is not a typical insurance policy whose terms are subject to traditional notions of waiver or estoppel or judicial interpretation.  (If the court has any concerns about the meaning of the policy in the context of the issues before it in this motion, the FAD

8

process will need to be followed, although here the issues, policy requirements, and law seem

plain in their meaning and requirements.)

**C.  Request for Judicial Notice of FCIC Final Agency Determinations.**

Great American respectfully requests the Court take judicial notice of the FADs relevant

to the issues raised in the instant motion to dismiss.  The RMA publishes FADs on its official

government website.  Judicial notice of official records from government websites is appropriate.

*Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 947 fn 3 (6th Cir. 2020).  FADs from before

2015 are available on the archived version of the RMA website at

https://legacy.rma.usda.gov/regs/533/archive.html, while FADs from 2015 and after are available

at https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations.  The

internet publication location for each of the following FADs relevant to this motion are listed

below, and genuine copies of each FAD are also attached as exhibits, numbered as indicated in

the table.  FAD language relevant to the issues discussed herein is cited in the appropriate

sections.

| Ex. | FAD | Date Issued | RMA website location |
|-----|-----|-------------|----------------------|
| 1 | 78 | August 20, 2007 | https://legacy.rma.usda.gov/regs/533/2007/fad-78.html |
| 2 | 99 | May 4, 2009 | https://legacy.rma.usda.gov/regs/533/2009/fad-99.html |
| 3 | 190 | August 13, 2013 | https://legacy.rma.usda.gov/regs/533/2013/fad-190.html |
| 4 | 192 | October 17, 2013 | https://legacy.rma.usda.gov/regs/533/2013/fad-192.html |
| 5 | 208 | March 16, 2014 | https://legacy.rma.usda.gov/regs/533/2014/fad-208.html |
| 6 | 211 | March 24, 2014 | https://legacy.rma.usda.gov/regs/533/2014/fad-211.html |
| 7 | 251 | December 17, 2015 | https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/7-CFR-Section-400-FAD-251 |
| 8 | 270 | December 16, 2016 | https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-14f3-FAD-270 |

*Great American's Brief in Support of Motion to Dismiss*

**D.  The Policy Terms Preempt Conflicting State Law.**

Under its rulemaking authority, FCIC has promulgated rules and regulations setting the terms and conditions of the crop insurance contracts that AIPs, such as Great American, issue to farmers.  See, generally, 7 CFR Part 400.  Those terms and conditions preempt any contrary state laws that would otherwise apply to insurance contracts.  See 7 USC § 1506(l); see 7 CFR § 400.352(a); *Hillsborough County v. Automated Med. Lab., Inc.*, 471 U.S. 707, 713 (1985) (explaining federal rules as well as federal statutes can preempt state law).  The regulations dictating the form of crop insurance policies issued by FCIC have the force and effect of a federal statute.  *Roberts v. Federal Crop Ins. Corp.*, 158 F.Supp. 688, 694-695 (E.D. Wash. 1958); *Nobles v. Rural Community Ins. Services*, 122 F.Supp.2d 1290, 1294 (M.D. Ala. 2000).

FCIC promulgated the Common Crop Insurance Policy (CCIP) Basic Provisions as regulations at 7 CFR § 457.8 (2018 ed.), which, along with crop-specific terms and actuarial documents published for each county and state where FCIC offers its policies, form the terms of Defendant's Policy.  CCIP Basic Provisions §31 states that "[s]tate and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy."  (PageID.2356, 2628, 2852).

FCIC confirmed in Final Agency Determination FAD-192 that CCIP Basic Provisions §31 and 7 CFR § 400.351 et seq. are applicable to all policies of insurance and preempt state law:

> 7 C.F.R. §§ 400.351 et seq.; and section 31 of the Basic Provisions provide that the regulations contained in the subpart are issued pursuant to the Federal Crop Insurance Act (Act), as amended, to prescribe the procedures for federal preemption of State laws and regulations not consistent with the purpose, intent, or authority of the Act. Furthermore, these regulations are applicable to all

policies of insurance, insured or reinsured by FCIC, contracts, agreements, or actions authorized by the Act and entered into by FCIC.

Final Agency Determination FAD-192 (October 17, 2013)
(https://legacy.rma.usda.gov/regs/533/2013/fad-192.html)

(Exhibit 4, FAD-192)

**E.  No One Has Authority to Waive the Policy Terms.**

Neither Great American nor any other person has the authority to waive or deviate from the terms of a federally-reinsured crop insurance policy; nor can anyone extend the coverage beyond what Congress and FCIC have authorized.  *Walpole v. Great American Insurance Companies*, 914 F.Supp. 1283, 1290-1291 (D. S.C., 1994).  The CCIP Basic Provisions state that "[t]he provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours or any employee of USDA[.]"  (CCIP Basic Provisions, Preamble).  (PageID.2320, 2592, 2816).

**F.  Policyholders Are Deemed to Know the Policy Terms.**

It is a longstanding principle that policyholders in federal insurance programs, such as the Federal Crop Insurance Program, are deemed to know the policy terms.  *See Oaks v. Allstate Ins. Co., No. 05-191-REW, 2006 U.S. Dist. LEXIS 83652 (E.D. Ky. Nov. 14, 2006)* citing *Federal Crop Ins. Corp. v. Merrill,* 68 S.Ct. 1 (1947).  Such policyholders "have a duty to 'familiarize themselves' with the program requirements," *Oaks* at *14, fn 8., citing *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 104 S.Ct. 2218, (1984).  In addition, policyholders are obligated to familiarize themselves with the legal requirements for receipt of such federal funds and cannot "plead ignorance to the technical provisions." *Id.*  In addition, policyholders in Michigan are obligated to read their insurance policies.  *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 29, 761 N.W.2d 151, 160 (2008).

11

# V.  ARGUMENT

## A.  Plaintiffs' Claims are Not Ripe.

The U.S. Constitution at Article III, §2 limits federal court jurisdiction to cases and controversies and prohibits courts from issuing advisory opinions.  *Safety Specialty Ins. Co. v. Genesee Cty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022).  If the court lacks subject matter jurisdiction, dismissal is appropriate under Fed. R. Civ. P. 12(b)(1).  When a Rule 12(b)(1) motion is based on the sufficiency of the pleading's allegations, the motion is a facial attack.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  In reviewing a Rule 12(b)(1) facial attack, the court must accept all material allegations as true and construe them in a light most favorable to the non-moving party.  *Id*.  In contrast, a factual attack under Rule 12(b)(1) does not challenge the sufficiency of the allegations, and carries with it no presumption that the alleged facts are true, but rather challenges the factual existence of subject matter jurisdiction and the court may weigh evidence to satisfy itself that it has the power to hear the case.  *Id*.  Great American asserts that the claims here are not ripe under a facial attack, but weighing evidence may be beneficial here to clarify the circumstances upon which Plaintiffs' claims are grounded.

To determine whether a claim is ripe, the court must determine two things:  first, whether the claim arises in a concrete factual context and concerns a dispute that is likely to come to pass; and second, what hardship to the parties will occur if the court withholds consideration.  *Overdrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 957 (6th Cir. 2021).  A claim that turns on contingent future events that may not occur at all or as anticipated is not ripe.  *Overdrive Inc.* at 958.

*Great American's Brief in Support of Motion to Dismiss*

Here, the claims are based upon an ongoing USDA investigation into federal crop insurance claims submitted by NHF-I and NHF-II that, by federal regulation, Great American cannot complete until future events under federal control occur, and whose outcome will be determined by those events.  As discussed in detail below, the policy terms applicable to Plaintiffs prohibit Great American from paying the claims until USDA completes its investigation, and then only if no evidence of wrongdoing is found.  USDA's findings and determinations at the conclusion of its investigation is a vital piece of the factual context here that does not yet exist.

Plaintiffs' Breach of Contract claims are certainly not ripe because the policy terms expressly state that no indemnity is due until the government's investigation concludes and finds no evidence of wrongdoing.  All the Plaintiffs' remaining claims are derivative of their crop insurance claims which are barred by the ongoing investigation.

In addition, any disagreements NHF-I and NHF-II have concerning determinations that Great American may make after the conclusion of the USDA investigation must be resolved by arbitration.  Thus, another important piece of the record has yet to be created because Great American cannot issue claim determinations until the USDA completes its investigation.

Furthermore, Plaintiffs' due process violations claim is akin to a takings claim.  A takings claim is not ripe until the plaintiff has received a final decision from the government actor. *Barber v. Charter Twp. of Springfield*, 31 F.4th 382, 388 (6th Cir. 2022).  While the complaint includes allegations that Defendants are taking too long to complete the investigation and make claims determinations, there is no allegation that any government actor has issued the final decision necessary to Great American moving forward with the underlying insurance claims. Plaintiffs' claims are not ripe and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

*Great American's Brief in Support of Motion to Dismiss*

**B.  A Policyholder Must Complete Arbitration Before Filing Suit.**

**1. Arbitrable Issues Exist.**

Plaintiffs' Second Amended Complaint includes numerous factual allegations regarding

Great American determinations that when resolved would impact the amount of any award that

an arbitrator might issue.  Those allegations (most of which Great American disputes) include

the following:

- Great American indicated it would make corrections to Plaintiffs' reported acreage at year end (AC ¶¶ 29-30, 59-60 (PageID.2288, 2292),
- An adjuster over-reported the volume of corn in storage for NHF-I (AC ¶34, PageID.2289),
- NHF-I and NHF-II performed all conditions Great American required to maintain a claim (AC¶¶44, 74, PageID.2290, 2293),
- NHF-I is due no less than $1,229,779 for coverage it should have been paid (AC ¶53, PageID.2291),
- Great American owes NHF-II approximately $1,104,045 on its claim (AC ¶82, PageID.2294),
- Great American is withholding an estimated $2,333,824 in insurance benefits (AC ¶119, PageID.2300), and
- NHF-I and NHF-II have rightfully due and bona-fide crop insurance claims (AC ¶125, PageID.2301).
- They also allege that "GAIC's failure to properly adjust the claims at best was reckless and given the steps taken by GAIC during the adjustment process to manipulate the test weights among other conduct is demonstrable of intent." AC ¶120 (PageID.2300).

CCIP Basic Provisions §20(a)(1) states that any determinations made by Great American

are subject to arbitration:

**20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**
(a) **If you and we fail to agree on any determination made by us** except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). **If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration** …

    (1) All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration. …

    (2) Unless the dispute is resolved through mediation, the arbitrator must provide to you and us a written statement describing the issues in dispute, the factual findings, the determinations and the amount and basis for any award and breakdown by claim for any award. The statement must also include any amounts awarded for interest. Failure of the arbitrator to provide such written statement will result in the nullification of all determinations of the arbitrator. All agreements reached through settlement, including those resulting from mediation, must be in writing and contain at a minimum a statement of the issues in dispute and the amount of the settlement.

(b) Regardless of whether mediation is elected:

    (1) The initiation of arbitration proceedings must occur within one year of the date we denied your claim or rendered the determination with which you disagree, whichever is later;

    (2) **If you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review**;

    (3) If arbitration has been initiated in accordance with section 20(b)(1) and completed, and judicial review is sought, suit must be filed not later than one year after the date the arbitration decision was rendered; and

    (4) In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

**[Emphasis added.]**

CCIP Basic Provisions §20(a)
(PageID.2352-2353, 2624-2625, 2848-2849).

One overarching determination that must be made before any payment is due is that NHF-I and NHF-II each complied with all of the policy provisions because that is a prerequisite to payment pursuant to CCIP Basic Provisions §14(f) ("If you have complied with all the policy provisions, we will pay your loss within 30 days after …") (PageID.2341, 2613, 2837).  To the extent that any disputes regarding storage bin measurements or test weights need to be resolved,

15

those are determinations that are subject to the arbitration clause in the policies.  CCIP Basic

Provisions §20(a)(1) (PageID.2352, 2624, 2848).  This is not the proper forum for those disputes.

FCIC confirmed in FAD-190 that a policyholder may initiate arbitration while an

investigation is ongoing, if there has been a decision or determination:

> FCIC agrees with the requestor's interpretation that section 14(f) does not prohibit
> an insured from exercising the insured's right to arbitration, or reconsideration of
> determinations including while an investigation by USDA is ongoing. In order for
> there to be an arbitration or request for reconsideration there must be a decision or
> determination in which the insured disagrees. The fact that a claim is under
> investigation does not in and of itself constitute a decision or determination that is
> subject to arbitration or reconsideration. However, if there has been a decision or
> determination unrelated to the investigation, the insured is entitled to seek
> arbitration or reconsideration of the determination within the timeframes specified
> in the policy. FCIC agrees with the requestor that if the arbitration or
> reconsideration process determines that an indemnity is due, no indemnity will be
> paid until 30 days after the completion of the investigation.
>
> Final Agency Determination FAD-190 (August 13, 2013)<br>(https://legacy.rma.usda.gov/regs/533/2013/fad-190.html)<br>(Exhibit 3, FAD-190)

NHF-I and NHF-II filed suit without initiating or completing arbitration and their claims

against Great American must be dismissed for failure to comply with the contractual prerequisite

to suit discussed above.

## 2.  Plaintiffs' Claims Are Specifically Preempted by CCIP Basic Provisions ¶20(i).

To the extent Plaintiffs are seeking "attorneys fees or other expenses, or any punitive,

compensatory or any other damages," CCIP Basic Provisions §20(i) requires that FCIC must

authorize such damages:

> In a judicial review only, you may recover attorneys fees or other expenses, or
> any punitive, compensatory or any other damages from us only if you obtain a
> determination from FCIC that we, our agent or loss adjuster failed to comply
> with the terms of this policy or procedures issued by FCIC and such failure

resulted in you receiving a payment in an amount that is less than the amount
to which you were entitled. …

(PageID.2353, 2625, 2849).

FCIC explained in FAD-211 that the policy terms are non-waivable and that they

preempt state and local laws:

> The policy is codified in the Code of Federal Regulations and has the force of
> law. Therefore, no one has the authority to waive or modify the provisions except
> as authorized in the regulations themselves. In accordance with section 506(l) of
> the Federal Crop Insurance Act (Act) (7 U.S.C. §1506(l)) state and locals laws are
> preempted to the extent that they are in conflict with the Act, regulations or
> contracts of FCIC. A vast majority of the policy provisions, including the
> preamble to the policy, are codified in regulation so they preempt state and local
> laws.

Final Agency Determination FAD-211 (March 24, 2014)<br>
(https://legacy.rma.usda.gov/regs/533/2014/fad-211.html)

(Exhibit 6, FAD-211)

Furthermore, FCIC confirmed in FAD-99 that a policyholder must obtain a determination

from it before any extra-contractual damages may be awarded:

> The provisions specify that it is only in a judicial review that producers can
> recover attorneys fees or other expenses, or any punitive, compensatory or any
> other damages from insurance providers provided the producer obtains a
> determination from FCIC that the insurance provider, its agent or loss adjuster
> failed to comply with the terms of the policy or procedures issued by FCIC and
> such failure resulted in the producer receiving an indemnity, prevented planting
> payment or replant payment in an amount that is less than the amount to which
> the producer was entitled. FCIC is responsible for making these determinations to
> ensure the uniform application of the policies and procedures.

Final Agency Determination FAD-99 (May 4, 2009)<br>
(https://legacy.rma.usda.gov/regs/533/2009/fad-99.html)

(Exhibit 2, FAD-99)

FCIC again confirmed in FAD-251 that section 20(i) and 7 CFR §400.352 require a FCIC

determination authorizing extracontractual damages:

> FCIC agrees with the requestor's interpretation to the extent that any claim,
> including a claim for extra-contractual damages, that arises under or is related to a
> Federal crop insurance policy issued pursuant to the Federal Crop Insurance Act

17

(Act) may only be awarded if a determination is obtained from FCIC in accordance with section 20(i) of the Common Crop Insurance Policy Basic Provisions and §400.352.

As previously provided in FAD-240, FCIC also agrees that 7 C.F.R. § 400.352 pre-empts any State law that would allow a claim for extra-contractual damages that conflicts with the provision in section 400.352 that any extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent, or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC. To the extent that State courts award extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with 7 C.F.R. § 400.352 and FCIC regulations.

Final Agency Determination FAD-251 (December 17, 2015)
(https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/7-CFR-Section-400-FAD-251)

(Exhibit 7, FAD-251)

FCIC has appointed itself as gatekeeper for any extra-contractual damages claims against an insurance provider, and made that requirement explicit in the policy terms.  Thus, to recover extra-contractual damages, a policyholder must request a determination from the RMA Deputy Administrator of Compliance that the insurer failed to follow procedure, and that the failure resulted in the policyholder receiving less than he was due.

FCIC considered exercising its authority to completely preempt all damages claims, but:

FCIC elected not to completely preempt the imposition of punitive or compensatory damages.  There may be instances where the circumstances are so egregious that such damages are warranted and FCIC does not want to take the authority away from the states to regulate conduct through the imposition of such damages. However, FCIC has eliminated the possibility that such damages may be imposed when the insurance provider follows FCIC's policy and procedures.  FCIC has also revised section 20 to specifically reference 7 CFR part 400, subpart P as binding.

69 Fed. Reg. 48652, at 48726.

The Second Amended Complaint contains no allegations regarding NHF-I's or NHF-II's initiation of arbitration.  Because timely initiation and completion of arbitration is a mandatory prerequisite to suit, federal law bars judicial review of Plaintiffs' claims.

18

*Great American's Brief in Support of Motion to Dismiss*

### C.  Counts I and II – Breach of Contract Claims are Preempted.

#### 1.  CCIP Basic Provisions §14(f)(3) Expressly Prohibits Claim Payment Here.

No claim payments are due under the policies because the claims have not been and
cannot be decided.  On August 21, 2020, Great American notified NHF-I and NHF-II that RMA
had opened an investigation of suspected fraud regarding their policies and claims.  AC Exhibits
7 and 18 (PageID.2572-2575, 3027-3030).  Great American further explained  that the policy
provisions and binding RMA interpretations prohibit Great American from paying, adjusting, or
otherwise determining their claims until those investigations are completed and only if no
evidence of wrongdoing is found.  AC Exhibits 7 and 18 (PageID.2572-2575, 3027-3030).  CCIP
Basic Provisions §14(f)(3) states that the company will pay a loss within 30 days after the later
of various dates, one of which is the conclusion of any USDA investigation if no evidence of
wrongdoing is found:

> 14. Duties in the Event of Damage, Loss, Abandonment, Destruction, or
> Alternative Use of Crop or Acreage.
> …
> Our Duties:
> (f) If you have complied with all the policy provisions, we will pay your loss
> within 30 days after the later of:
> …
> (3) Completion of any investigation by USDA, if applicable, of your current or
> any past claim for indemnity if no evidence of wrongdoing has been found (If any
> evidence of wrongdoing has been discovered, the amount of any indemnity,
> prevented planting or replant overpayment as a result of such wrongdoing may be
> offset from any indemnity or prevented planting payment owed to you); or
> …
> (h) We may defer the adjustment of a loss until the amount of loss can be
> accurately determined. We will not pay for additional damage resulting from your
> failure to provide sufficient care for the crop during the deferral period.

> (PageID.2341, 2613, 2837).

FCIC interpreted language identical to §14(f)(3) in FAD-78, confirming that a reinsured company such as Great American is prohibited from making a payment while an investigation is ongoing:

> The delay in paying any claim applies only to investigations of current or past claims where there is suspected wrongdoing on the part of the policyholder. **If the USDA Office of the Inspector General (OIG) investigates a policyholder's current or past claim because of such suspected wrongdoing, the reinsured company is prohibited from paying a current year's replanting, prevented planting payment, or claim for indemnity until the investigation is complete. Likewise, if the RMA Compliance Office provides written notification to the reinsured company not to initiate payment pending an investigation, the reinsured company is prohibited from making such payment. ...** With respect to the example, a 2006 claim for indemnity cannot be paid if there is an investigation by OIG of alleged wrongdoing by the policyholder in connection with the 2004 claim for indemnity until the investigation is completed.

> Final Agency Determination FAD-78 (August 20, 2007)
> (https://legacy.rma.usda.gov/regs/533/2007/fad-78.html)

> (Exhibit 1, FAD-78) (**emphasis added**)

FCIC interpreted §14(f)(3) in FAD-270 to prohibit payment until an investigation is complete, stating that details regarding any suspected wrongdoing do not have to be disclosed, and anticipates that other crop years may pass while an investigative process is ongoing:

> Section 14(f)(3) (Our Duties) (Note: The relevant provision of this FAD request was formerly contained in Section 14(a)(3) (Our Duties) prior to the 2011 Basic Provisions 11-BR) requires withholding payment pending an investigation of a current or any past claim for indemnity when there is evidence of wrongdoing on the part of the policyholder. ...

> **There is nothing within the policy or subsequent FADs that states the specificity of the nature of the suspected wrongdoing must be provided to withhold payment.** In fact, in most investigations of wrongdoing, FCIC does not discuss the nature of the specific wrongdoing in order to protect the integrity of the investigation. Further, there are instances where the agent or loss adjuster may be complicit in the wrongdoing.

> ... **The policy is clear that until the investigation is complete, no indemnity or other payment can be made.  Unfortunately, the investigative process can take time to complete and in the interim, other crop years may pass. ...**

Final Agency Determination FAD-270 (December 16, 2016)
(https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-
Determinations/Basic-Provisions-14f3-FAD-270)

(Exhibit 8, FAD-270) (**emphasis added**).

### 2.  CCIP Basic Provisions §14(h) Expressly Permits Adjustment Deferral.

Even if there were no investigatory hold mandate, as there is here, CCIP Basic Provisions

§14(h) authorizes Great American to defer adjustment until the amount of loss can be accurately

determined.

> (h) We may defer the adjustment of a loss until the amount of loss can be
> accurately determined. We will not pay for additional damage resulting from your
> failure to provide sufficient care for the crop during the deferral period.
>
> (CCIP Basic Provisions §14(h)
>
> (PageID.2341, 2613, 2837).

Great American's letters to both NHF-I and NHF-II stated that RMA and OIG were

conducting an investigation.  AC Exhibits 7 and 18 (PageID.2572-2575, 3027-3030).  Plaintiffs

allege in the Second Amended Complaint that RMA has not made a determination on NHF-I's or

NHF-II's claims.  AC ¶¶ 89, 98 (PageID.2295-2296).  Plaintiffs' allegations establish for the

purposes of this motion that RMA has not concluded its investigation, and that no payments are

yet due under the policy pursuant to CCIP Basic Provisions §14(f)(3).

In addition, since RMA may provide additional information at the conclusion of its

investigation that may impact whether any payment is due or the amount of any such payment,

the amount of loss cannot be accurately determined at this time and Great American has properly

deferred adjustment pursuant to CCIP Basic Provisions §14(h) (PageID.2341, 2613, 2837).

21

Great American has followed the express terms of the contract.  Those terms require

Great American to defer any payment until RMA concludes its investigation.  The terms also

authorize Great American  to defer claims adjustment until the amount of loss can be accurately

determined.

**D.     Count III – Failure to Promptly Adjust, Determine, and Pay Claims in Violation of 7 USC § 1508 and MCL 500.2006(1) is Preempted.**

**1.  Policy Terms Require Great American to Follow FCIC Procedures.**

Plaintiffs allege that 7 USC § 1508 requires FCIC to establish standards for uniform and

timely adjustment of losses.  AC ¶ 103 (PageID.2297).

7 USC § 1508(j)(1) states as follows:

> (j) Claims for losses
>     (1) In general
>     Under rules prescribed by the Corporation, the Corporation may provide for
>     adjustment and payment of claims for losses. The rules prescribed by the
>     Corporation shall establish standards to ensure that all claims for losses are
>     adjusted, to the extent practicable, in a uniform and timely manner.
>                                                             7 USC § 1508(j)(1).

FCIC has in fact provided procedures for the adjustment of losses and the Preamble of

the CCIP Basic Provisions requires Great American to follow those procedures ("We will use the

procedures … as issued by FCIC") (PageID.2320, 2592, 2816.)

For purposes of this motion, Plaintiffs' allegations that Great American has not

determined or denied the claim are accepted as true.  AC ¶¶ 110-111 (Page ID.2298).  Plaintiffs

also allege that FCIC has assumed control of the investigation of the claims at issue here.  AC ¶¶

47-52, 76-81 (PageID.2290-2291, 2293-2294).

*Great American's Brief in Support of Motion to Dismiss*

### 2. Policy Terms Take Precedence Over Procedures.

The Agreement to Insure in the CCIP Basic Provisions states that the regulations, which includes the policy itself since it was promulgated as a regulation at 7 CFR § 457.8, take precedence over those procedures:

> AGREEMENT TO INSURE: … If there is a conflict between the Act, the regulations published at 7 CFR chapter IV, and the procedures as issued by FCIC, the order of priority is: (1) the Act; (2) the regulations; and (3) the procedures as issued by FCIC, with (1) controlling (2), etc. If there is a conflict between the policy provisions published at 7 CFR part 457 and the administrative regulations published at 7 CFR part 400, the policy provisions published at 7 CFR part 457 control. …
>
> (PageID.2320, 2592, 2816.)

The wait-until-the-investigation-concludes requirement in CCIP Basic Provisions §14(f)(3) and the permission-to-defer-adjustment provision in §14(h) therefore take precedence over and preempt any procedures.  Simply put, the CCIP Basic Provisions preempt any procedural requirements at this time.

### 3. Plaintiffs' State Law Claims Are Preempted.

Plaintiffs also allege that MCL 500.2006(1) requires an insurance company to pay claims on a timely basis or pay interest at a certain rate.  As explained above, CCIP Basic Provisions §14(f)(3) and §14(h) require Great American to withhold payment at this time and permit deferral of adjustment.  As discussed above in Section IV, the policy terms are federal regulations and preempt any Michigan state law, including the timeliness and interest requirements in MCL 500.2006(1).  CCIP Basic Provisions § 20(i) preempts all claims for "attorneys fees or other expenses, or any punitive, compensatory or any other damages", including interest.  (PageID.2353, 2625, 2849).  Plus, the policy terms define what is a timely payment (§ 14(f)) and the time for payment hasn't arrived yet.  (PageID.2341, 2613, 2837).

*Great American's Brief in Support of Motion to Dismiss*

**E.  Count IV – Intentional Infliction of Emotional Distress – Great American's Conduct is Authorized and Not Outrageous.**

"To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must establish four elements: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress."  *Andrews v. Prudential Sec.*, 160 F.3d 304, 309 (6th Cir. 1998).  Conduct is extreme and outrageous only if it goes beyond all possible bounds of decency and is atrocious and utterly intolerable in civilized society, such that no reasonable person could be expected to endure it.  *Id.*

When the factual allegations are an alleged failure to reasonably investigate a claim, allegedly deliberately oppressing a claim, and making accusations related to the claim, those circumstances don't rise to the level of outrageousness necessary for an intentional infliction of emotional distress claim.  *Crossley v. Allstate Ins. Co.*, 155 Mich. App. 694, 699, 400 N.W.2d 625, 628 (1986) (finding accusations of arson and fraud in response to a proof of loss are not the type of conduct that would cause an average member of the community to scream "Outrageous!").

Here, Great American is simply complying with the federally-mandated contract terms, which prohibit payment until the federal investigation concludes and finds no wrongdoing.  The company is complying with the federal regulation which defines the policy terms and is therefore acting in accordance with the law. A defendant is not liable for intentional infliction of emotional distress when he has done no more than insist upon his legal rights, even if he is aware that such insistence is certain to cause emotional distress.  *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 196 (6th Cir. 1986).

The policy terms clearly state the consequences that can occur when a federal

*Great American's Brief in Support of Motion to Dismiss*

investigation is ongoing, including no payments until any such investigations conclude. Plaintiffs were therefore aware of this possibility from the outset when they applied for their deeply-subsidized federal coverage and should have been prepared for that possibility.

Finally,  as discussed in Sec. 2(D)(3), above, CCIP Basic Provisions § 20(i) preempts this claim.

## F.  Count V – Michigan Does Not Recognize Bad Faith Adjustment Claims.

Michigan does not recognize bad-faith denial of an insurance claim as a cause of action. "[T]he Michigan Supreme Court held that an insurer's dilatory handling of its client's claim constituted 'bad faith,' but did not create a cause of action separate from the underlying contract." *Benkert v. Med. Protective Co.*, 842 F.2d 144, 148 (6th Cir. 1988) (quoting *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 608, 374 N.W.2d 905, 911 (1985)).  The Michigan Court of Appeals has held that "[a] plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law. An alleged bad-faith breach of an insurance policy does not state an independent tort claim."  *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 729 N.W.2d 277 (2006).  Moreover, even if this were a viable claim in Michigan, it would be preempted by CCIP Basic Provisions § 20(i).

## G.  Count VI – Intentional Interference with Contractual Relationships Claim Fails.

In Michigan, tortious interference with contracts requires the Plaintiffs to show:

(1) the existence of a contract,
(2) a breach of the contract, and
(3) an unjustified instigation of the breach by the defendant.

*Great American's Brief in Support of Motion to Dismiss*

*Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150, AFL-CIO*, 3 F.4th 866, 873-874 (6th Cir. 2021) (quoting *Health Call v. Atrium Home & Health Care Servs.*, 268 Mich. App. 83, 89-90, 706 N.W.2d 843, 848-849 (2005)).

### 1. Plaintiffs Do Not Allege the Required Resulting Breach.

"It is well established in Michigan law that a prerequisite to an action for tortious interference with contractual relations is a breach of contract." *Woody v. Tamer*, 158 Mich. App. 764, 770, 405 N.W.2d 213, 215 (1987).  Unjustifiably instigating or inducing a party to breach a contract is an essential element of interference with a contract. *Knight Enters. v. RPF Oil Co.*, 299 Mich. App. 275, 281, 829 N.W.2d 345, 348 (2013).

Plaintiffs do not allege that Great American instigated any other party to breach a contract with any Plaintiff.  In fact, Plaintiffs do not allege that any third party breached a contract with any of the Plaintiffs.  While Plaintiffs allege that certain parties "cease[d] doing business with them," they fail to allege any actual breach.  AC ¶142(a) (PageID.2304).

Because Plaintiffs failed to plead an essential element of intentional interference with contract, their claim must be dismissed.  However, if the Court finds that Plaintiffs successfully pled this claim, it is preempted by CCIP Basic Provisions § 20(i).  See Section 2(D)(3).

### ''H. Count VII – Intentional Interference with Business Relationships or Expectancies Claim Fails.

The elements of a tortious interference with business relationships claim are:

(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract,

(2) knowledge of the relationship or expectancy on the part of the defendant interferer,

*Great American's Brief in Support of Motion to Dismiss*

(3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and

(4) resulting damage to the party whose relationship or expectancy was disrupted.

*Courser v. Allard*, 969 F.3d 604, 620 (6th Cir. 2020).

### 1.  Plaintiffs Cannot Allege an Intentional Per Se Wrongful or Unjustified Lawful Act with Malice.

The third element of intentional interference with business relationships requires more than purposeful or knowing behavior on the part of the defendant.  *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003).  It requires an allegation of an intentional per se wrongful act or a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.  *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150, AFL-CIO*, 3 F.4th 866, 874 (6th Cir. 2021).  Under Michigan law, a per se wrongful act is one that is inherently wrongful or never justified under any circumstances.  *Saab Auto. AB v. GM Co.*, 770 F.3d 436, 441-442 (6th Cir. 2014).  Exercise of a contractual right cannot, as a matter of law, constitute a per se wrongful act.  *Saab Auto.* at 442.

Plaintiffs fail to allege that Great American did anything illegal, unethical, or fraudulent.  *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Ath. Equip.*, 535 F. Supp. 3d 638, 650 (E.D. Mich. 2021).  Plaintiffs merely allege that Defendants contacted "landlords, ARM and vendors" and made "disparaging statements."  AC ¶140(b) and ¶147(b) (PageID.2303, 2305).

However, the policy authorizes Great American to investigate claims and even requires policyholders to cooperate in those investigations.  CCIP Basic Provisions §14(e)(4)(ii) (PageID.2341, 2613, 2837).  CCIP Basic Provisions §21(d) states that by submitting an

*Great American's Brief in Support of Motion to Dismiss*

application, Plaintiffs NHF-I and NHF-II authorized Great American to investigate their crop

insurance claims and obtain documents from third parties:

> (d) By signing the application for insurance authorized under the Act or by
> continuing insurance for which you have previously applied, you authorize us or
> USDA, or any person acting for us or USDA authorized to investigate or review
> any matter relating to crop insurance, to obtain records relating to the planting,
> replanting, inputs, production, harvesting, and disposition of the insured crop
> from any person who may have custody of such records, including but not limited
> to, FSA offices, banks, warehouses, gins, cooperatives, marketing associations,
> and accountants.  …
>
> (PageID.2354, 2626, 2850).

Thus, Plaintiffs not only fail to allege that Great American engaged in illegal, unethical,

or fraudulent conduct, Plaintiffs consented to the very conduct about which they now complain.

Plaintiffs also do not allege that Great American's purported wrongful conduct hastened a

contract breach or a breakdown of a business relationship.  *Parks v. LaFace Records*, 329 F.3d

437, 462 (6th Cir. 2003).  Even if such a breach of breakdown occurred, CCIP Basic Provisions

§ 20(i) preempts this claim against Great American.

### 2.  Great American Investigated for Legitimate Reasons.

Actions motivated by legitimate business reasons do not constitute improper motive or

interference in relation to an intentional interference with a business relationship.  *Wausau*

*Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003).  The Michigan

Court of Appeals has stated that "there is certainly nothing wrong in insurance companies

investigating claims."  *Wood v. Herndon & Herndon Investigations, Inc.*, 186 Mich. App. 495,

501, 465 N.W.2d 5, 9 (1990).  Because Great American's conduct was consistent with the terms

of Plaintiffs' policies and required by federal law, throughout the relevant time period, Great

American has been motivated by legitimate business reasons.

28

*Great American's Brief in Support of Motion to Dismiss*

**I.  Count – IX Constitutional Due Process Violations Claim Fails.**

The Fifth Amendment prohibits the federal government from depriving a person of property without due process of law.  *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 618 (6th Cir. 2019).  Under the circumstances here, to prevail on such a claim, the Plaintiff must show that a state actor deprived it of a property interest without the kind of process that the Constitution requires.  *Id.*

Plaintiffs allege that Great American is an Ohio company that is an "approved insurance provider" ("AIP") that has a reinsurance agreement with FCIC.  AC ¶¶ 5, 17-18, (PageID.2285, 2287).  7 C.F.R. 400.765 defines an "Approved insurance provider" as "[a] private insurance company that has been approved by FCIC to sell and service Federal crop insurance policies under a reinsurance agreement with FCIC."  An AIP, however, is not a government actor for the purposes of the Fifth Amendment.  *See First Foliage, L.C. v. Rural Cmty. Ins. Servs. (In re First Foliag, L.C.)*, Nos. 10-27532-BKC-LMI, 10-03591-LMI, 2014 Bankr. LEXIS 2605 (Bankr. S.D. Fla. June 10, 2014) (holding Plaintiff cannot raise Due Process  claims against an AIP)..

In the Prayer for Relief for the alleged constitutional due process violations, Plaintiffs seek judgment against all "Defendants."  Since Great American is not a federal government actor, to the extent Plaintiffs seek a judgment against Great American, this claim must be dismissed.

**J.  CCIP Basic Provisions §20(j) Prohibits Suit Against Great American.**

Plaintiffs allege that Great American notified Plaintiffs NHF-I and NHF-II that FCIC had assumed control of the investigation and further allege that "GAIC and the FCIC" have failed to adjust their claims, "GAIC and FCIC" have spent 3 years on the claims, and that "GAIC and

*Great American's Brief in Support of Motion to Dismiss*

FCIC" have interfered with their ability to recover crop insurance claims.  AC ¶¶ 49, 50, 52; 78, 79, 81 (PageID.2290-2291, 2294).  For purposes of this motion, Great American understands the Court will consider those allegations to be true.  CCIP Basic Provisions §20(j) prohibits a policyholder from bringing suit against Great American if FCIC is involved in adjusting a claim, the very circumstances that Plaintiffs have alleged here:

> (j) If FCIC elects to participate in the adjustment of your claim, or modifies, revises or corrects your claim, prior to payment, you may not bring an arbitration, mediation or litigation action against us. You must request administrative review or appeal in accordance with section 20(e).

> (PageID.2353, 2625, 2849).

Because Plaintiffs filed suit against Great American along with FCIC and USDA, the provision above makes clear that inclusion of Great American is improper.

## VI.  CONCLUSION

Great American respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety.  Alternatively, should the Court find that only some claims should be dismissed, Great American requests that those claims be dismissed.

Respectfully submitted,

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr., Esq.
(Ohio Bar # 73531)
**SANDERS & ASSOCIATES, LPA**
8040 Hosbrook Road, Suite 202
Cincinnati, OH 45236
Phone:  (513) 229-8080
Fax: (513) 229-8081
TomJames@SandersLPA.com

**Attorney for Defendant Great American**

*Great American's Brief in Support of Motion to Dismiss*

## <u>CERTIFICATE OF SERVICE</u>

  The undersigned hereby certifies that he served a copy of the foregoing through the Court's Electronic Case Filing System (CM/ECF), upon Plaintiffs' attorneys, Ronald J. VanderVeen, John D. Fitzpatrick, and Cal Thorwall, Cunningham Dalman, PC, 321 Sellers Road, Holland, MI 49422-1767, this <u>24th</u> day of <u>August</u> 2023.

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr.
