UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NEW HEIGHTS FARM I, LLC, a Michigan
limited liability company; STACY BOERSEN;
NEW HEIGHTS FARM II, LLC, a Michigan
limited liability company; and NICHOLAS                Case No. 1:23-cv-663
BOERSEN,

      Plaintiffs,                                     Hon.: Hala Y. Jarbou

v

GREAT AMERICAN INSURANCE
COMPANY; FEDERAL CROP INSURANCE
CORPORATION; and UNITED STATES
DEPARTMENT OF AGRICULTURE,

      Defendants.

---

| | |
|---|---|
| Ronald J. VanderVeen (P33067) | Thomas C. James, Jr., Esq. (OH0073531) |
| John D. Fitzpatrick (P85554) | Sanders & Associates, LPA |
| Carl Thorwall (P86746) | *Attorneys for Defendant Great American* |
| Cunningham Dalman, P.C. | 8040 Hosbrook Road, Suite 202 |
| *Attorneys for Plaintiffs* | Cincinnati, OH 45236 |
| 321 Sellers Road | (513) 229-8080 |
| Holland, MI 49422-1767 | tomjames@sanderslpa.com |
| (616) 392-1821 | |
| rjvv@cunninghamdalman.com | |
| jfitzpatrick@cunninghamdalman.com | |
| carlt@cunninghamdalman.com | |
| | Laura A. Babinsky (P85670) |
| | Assistant to United States Attorney |
| | Attorneys for U.S. Department of Agriculture and |
| | Federal Crop Insurance Corporation |
| | PO Box 208 |
| | Grand Rapids, MI 49501-0208 |
| | (616) 456-2404 |
| | Laura.babinsky@usdoj.gov |

---

**PLAINTIFFS' BRIEF OPPOSING DEFENDANT
GREAT AMERICAN INSURANCE CO.'S MOTION TO DISMISS**


**Oral Argument Is Requested**

## Table of Contents

Index of Authorities ............................................................................................................. iii

Statement of Jurisdiction ...................................................................................................... 1

Statement of Facts ................................................................................................................. 2

    Introduction ....................................................................................................................... 2

    Factual Background .......................................................................................................... 2

Law and Argument ................................................................................................................ 9

    Introduction ....................................................................................................................... 9

    I.    Plaintiffs are not required to arbitrate their claims since the policies only require .......... 9

    II.   GAIC's argument that Plaintiffs' claims are not ripe for adjudication fail because (a) GAIC (initially) and the FCIC/RMA control when a determination will be made, (b) there is a concrete factual context for Plaintiffs' claims, and (c) further delay will have devastating consequences to Plaintiffs. .................................................................................................. 10

    III.   State Law Is Not Preempted When Is It Not Inconsistent With Federal Law, Regulations And The Policy. ............................................................................................... 14

        A.   The Federal Crop Insurance Act Does Not Preempt Applicable State Law That is Not Inconsistent With Federal Law. ..................................................................................... 14

        B.   The Provisions In The Insurance Policy Do Not Preempt State Law That Is Not Inconsistent With The Policy. .......................................................................................... 15

    IV.  NHF-I's and NHF-II's State Law Claims Are Not Inconsistent With Federal Law, Regulations And The Policies. ........................................................................................... 17

        A.   Counts I, II, III, & V: Breach of Contract and Failure to promptly investigate and adjust the claim in good faith. ........................................................................................ 17

        B.   Count VI and VII: Recovery For Intentional Interference With Contracts and with Business Relationships And Expectancies .......................................................................... 18

        C.   Count IX: Constitutional Due Process Violations ...................................................... 19

        D.   Count IV: Recovery by *Stacy Boersen* and *Nicholas Boersen* for intentional infliction of emotional distress. ...................................................................................................... 21

Relief Requested ................................................................................................................. 23

## Index of Authorities

**Cases**

*Armstrong v. Sears*, 33 F.3d 182, 185 (2d Cir. 1994) ................................................................... 19

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ..................................................................................................................... 19

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) .................................................................................................... 19

*Bratt Enters. v Noble Int'l Ltd.*, 338 F.3d 609 (6th Cir. 2003) ........................................................ 9

*Burnside v State Farm Fire & Casualty, Co.*, 208 Mich.App. 422 (1995) ..................................... 12

*Commercial Union Ins. Co. v Medical Protective Co.*, 426 Mich. 109 (1986) ............................ 12

*Cotton v. Banks*, 310 Mich. App. 104, 129, 872 N.W.2d 1, 15 (2015) ........................................ 21

*Ehler v. Empire Fire & Marine Ins. Co.*, File No. 5:93:CV:48, 1993 U.S. Dist. LEXIS 18872, at *3 (W.D. Mich. Nov. 16, 1993) .................................................................................................. 14

*Golio v. Adena Health Sys.*, No. 2:11-cv-00757, 2012 U.S. Dist. LEXIS 56250, at *20-21 (S.D. Ohio Apr. 23, 2012) .................................................................................................................... 19

*Great Am. Ins. Co. v. E.L. Bailey & Co.*, 841 F.3d 439, 445 (6th Cir. 2016) ............................... 17

*Great Am. Ins. Co. v. Mills*, No. 4:06-cv-01971-RBH, 2008 U.S. Dist. LEXIS 42570, at *23-24 (D.S.C. May 29, 2008) ............................................................................................................... 15

*Horn v. Rural Cmty. Ins. Servs.*, 903 F. Supp. 1502, 1505-06 (M.D. Ala. 1995) ......................... 14

*Hyzer v. Cigna Prop. Cas. Ins. Co.*, 884 F. Supp. 1146, 1149 (E.D. Mich. 1995) ....................... 14

*Hyzer v. Cigna Prop. Cas. Ins. Co.*, 884 F. Supp. 1146, 1152 (E.D. Mich. 1995) ....................... 20

*Murphy v Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir. 1985) ........................................................ 12

*Murphy v Cincinnati Ins. Co.*, 772 F.2d 273, 276 (6th Cir. 1985) ................................................ 17

*O'Neal v. CIGNA Prop. & Cas. Ins. Co.*, 878 F. Supp. 848, 852 (D.S.C. 1995) .......................... 20

*O'Neal v. CIGNA Property and Casualty Insurance Co.*, 878 F.Supp. 848 (D.S.C. 1995) .......... 15

*Overdrive Inc. v Open E-Book Forum*, 986 F.3d 954, 957 (6th Cir. 2021).................................... 11

*Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 686 (5th Cir. 2001) .............. 14

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602-03, 374 N.W.2d 905, 908-09 (1985)....... 22

*Solo v. UPS Co.*, 947 F.3d 968 (6th Cir. 2020) ............................................................................... 9

*Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009) ................................. 19

*Stark v Budwarker, Inc.*, 25 Mich.App. 305 (1970) ....................................................................... 12

*Total Quality, Inc. v. Fewless*, 332 Mich. App. 681, 704-05, 958 N.W.2d 294, 308 (2020) ......... 18

*Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*, 364 F. Supp. 3d 839, 848 (E.D. Tenn. 2019) ........................................................................................................................................... 14

*Warshak v United States*, 532 F.3d 521, 528 (6th Cir. 2008) ........................................................ 11

*Wendt v. Auto-Owners Ins. Co.*, 156 Mich. App. 19, 24, 401 N.W.2d 375, 378 (1986) ............... 21

*Yeager v. GMC*, 265 F.3d 389, 398 (6th Cir. 2001) ....................................................................... 19

**Statutes**

MCL 500.2006 (4) ............................................................................................................... 16, 17

MCL 600.2006 ......................................................................................................................... 18

MCL 750.370 ............................................................................................................................ 19

**Other Authorities**

7 CFR 400.352 ......................................................................................................................... 21

F.R.Civ.P. 15 ............................................................................................................................. 23

M Civ JI 126.03(b)................................................................................................................... 18

**Rules**

F.R.Civ.P. 12 (b)(1) ................................................................................................. 8
F.R.Civ.P. 12 (b)(6) ................................................................................................. 8

**Constitutional Provisions**

28 U.S.C. 1332 ......................................................................................................... 1
42 U.S.C. § 1983 ................................................................................................... 19
7 U.S.C. § 1506 (l) ............................................................................................... 14
7 U.S.C. 1501 ........................................................................................................... 2
7 U.S.C. 1506 (j) ................................................................................................... 10
7 U.S.C. 1506 (l) ....................................................................................... 13, 14, 21
7 U.S.C. 1508 (j) ................................................................................................... 10

## Statement of Jurisdiction

This Court has jurisdiction over the dispute with the Defendant Great American Insurance Co.  pursuant to 28 U.S.C. 1332 for the reason that there is complete diversity between the parties. Plaintiffs are residents of Michigan. Defendant Great American Insurance Co. is a resident of Ohio.  (Complaint para. 1-5, ECF No. 26, p 2285).

## Statement of Facts

### Introduction

Plaintiffs' New Heights Farm I, LLC and New Heights Farm II, LLC purchased crop insurance from Defendant Great American Insurance Co. ("GAIC") for the 2019 crop year. They paid the required premiums in amounts totaling approximately $220,000.00.  When they suffered losses, GAIC's agent, Spartan Insurance, submitted Notices of Loss for them during December 2019.

Rather than promptly determining and paying the claim as directed by the United States Department of Agriculture's ("USDA") Risk Management Agency (the "RMA"), GAIC started a protracted investigation that appears designed to avoid the claim and ultimately refused to act. GAIC also falsely reported that Plaintiffs were committing crop insurance fraud to the RMA, triggering a never-ending investigation by the RMA.

The Defendants have used this never-ending investigation to avoid making a determination of Plaintiffs' 2019 claims and avoiding payment. The "investigation" is now almost 4 years old, produced no known reason to avoid the claim, has no end in sight, and represents an attempt to force NHF-I and NHF-II out of business.

For purposes of responding to GAIC's Motion, Plaintiffs have submitted Exhibits 19-25 to give greater detail to what is pled.

### Factual Background

Congress set up the federal crop insurance program under 7 U.S.C. 1501, et seq. to encourage and stabilize the farming economy and ensure a safe and reliable source of food. Congress intended to make crop insurance broadly available to farmers. Congress set up the FCIC as a corporation to operate the crop insurance program. (Complaint, ECF No. 26, para. 17-

23) The RMA is the agency within the USDA that operates the FCIC. (Complaint, ECF No. 26, para. 22). Congress charged the FCIC with adopting rules to make sure claims are promptly adjusted and paid. 7 U.S.C. 1508(j).

The FCIC controls crop insurance from start to finish. It writes the policy terms. It must approve private insurers (an "API"), such as GAIC. The FCIC then reinsures APIs to cover their losses. The FCIC drafts the manuals governing the AIPs and controls the loss adjustment process.

In early 2019, Plaintiffs Stacy Boersen ("Stacy") and her son, Nicholas Boersen ("Nicholas"), decided to engage in corn and soybean farming. They were approved for lines of credit and open accounts for inputs.[1]  The lender required that they set up 2 companies and obtain crop insurance. (Affidavit of Stacy Boersen attached as **Exhibit 19**[2]). Towards that end, Stacy set up New Heights Farm I, LLC ("NHF-I") and Nicholas set up New Heights Farm II, LLC ("NHF-II") in March 2019 as Michigan limited liability companies. Stacy is the sole owner and manager of NHF-I. Nicholas is the sole owner and manager of NHF-II. (Complaint, ECF No. 26, para. 13-16, Affidavit of Stacy Boersen).

The companies applied to GAIC for crop insurance policies through GAIC's agent, the Spartan Insurance Agency. GAIC accepted the applications and issued an insurance policy to NHF-I and two policies to NHF-II. (Complaint, ECF No. 26, para. 24-27 and 54-57). In reliance on the policies, each company leased farmland. NHF-I leased approximately 8,740 acres in various counties in southern Michigan.  NHF-II leased approximately 8,760 acres in various counties in southern Michigan. (Complaint, ECF No. 26, para. 28 and 58).

---

[1] Inputs include seed, fertilizer and chemicals needed to produce a crop.
[2] Exhibits 1-18 were filed with the Second Amended Complaint. Exhibits 19-25 are filed with this Brief.

Plaintiffs reported their acreage and intended crops to GAIC as required by the policy. NHF-I and NHF-II each planted, tended to, and harvested corn and soybeans on their respective leased farms over the 2019 crop season. Mid-year, they realized a few errors in their reporting and sought to correct them through the agent.  GAIC advised the agent to wait until the end of the year and it would be adjusted then. (Complaint, ECF No. 26, para. 29 and 30, 59 and 60). GAIC indicated that mid-year changes were only required if affecting over 5% of the acres planted, the changes were less than 5%.  (**Exhibit 20**).

According to GAIC's field adjuster, Andy Potter, Plaintiffs' farming operations were larger, both in acres and number of counties, than others they deal with.[3]  (**Exhibit 21**).

The 2019 crop year was a disaster for farmers. Bad weather during the early part of the season hampered their efforts planting and early growth. Bad weather late in the season resulted in large losses in the farming community throughout lower Michigan. GAIC's adjuster indicated that GAIC hired at least 6 new adjusters to handle the large volume of claims in Michigan that year. (**Exhibit 21**).

NHF-I and NHF-II suffered large losses. Spartan Insurance submitted Notices of Loss for Plaintiffs, like for many other farmers. (Complaint, ECF No. 26, para. 31 and 32, 61 and 62, p 2288 and 2292).

Plaintiffs understand that the typical process for a crop insurance claim is that the AIP inspects storage bins and asks for records for counties with losses.  The AIP then reviews the records and makes a determination of the amount of loss, if any.  The AIP then prepares a claim form for the insured to either (a) sign and be paid or (b) to dispute. Losses are determined on a county-by-county basis.  (Complaint, ECF No. 26, para. 45).

---

[3] Mr. Potter's deposition was taken in other proceedings that were triggered by GAIC's and the FCIC's/RMA's inactions.

Here, GAIC undertook efforts to avoid payment of the claim even though the FCIC directed GAIC to handle the claim. (**Exhibit 23**). First, GAIC's adjustor inspected grain storage facilities in late December 2019 and the adjuster prepared false reports, under-reporting the amount in storage. (Complaint, ECF No. 26, para. 33 and 34, 63 and 64, Affidavit of Stacy Boersen). Second, GAIC asked NHF-I and NHF-II to submit records of grain sales for the counties with losses. Plaintiffs complied. Later, GAIC requested more records from all counties and an examination under oath. Plaintiffs complied. (Complaint, ECF No. 26, para. 35-38 and 65-68). Stacy and Nicholas complied with all of GAIC's requests. (Complaint, ECF No. 26, para. 38 and 44, 68 and 74, Affidavit of Stacy Boersen).

GAIC failed to follow the FCIC's procedures for handling NHF-I's and NHF-II's claims. Their failures include (a) falsified reports of the grain in NHF-I's and NHF-II's storage bins (Complaint, ECF No. 26, para. 34 and 64), (b) failure to keep NHF-I and NHF-II informed about the investigation, and (c) failure to set up an entrance conference, failure to make a determination. (Affidavit of Stacy Boersen and Exhibit 25).

By June or July 2020, GAIC had all of the information necessary to make a determination. However, in efforts to avoid paying, GAIC refused to determine the amount of the claim or loss. (Complaint, ECF No. 26, paragraph 46, 49-51, 75 and 78-80).

Plaintiffs have learned that GAIC falsely reported that Plaintiffs were committing crop insurance fraud to the FCIC/RMA in March 2020. Instead of determining the claim and after delaying through June or July 2020, GAIC again reported to the RMA that Plaintiffs were committing crop insurance fraud. (Complaint, ECF No. 26, para. 47 and 76, Affidavit of Stacy Boersen). The actual substance of what was reported is a mystery at this point, the parties have

not yet been able to engage in discovery. We only know that the RMA claims that GAIC accused Plaintiffs of trying to commit crop insurance fraud.

Under the crop insurance program, the RMA and FCIC have the authority to step into the insurer's shoes and determine the claim.  In doing so, they are to set up an entrance interview of the insured policyholder (**Exhibit 25**). This was not done. The FCIC steps into the shoes of the AIP at this point. (**Exhibit 25**).

As a result of GAIC's report, the FCIC/RMA started a ruthless, slow moving and never-ending investigation. (Complaint, ECF No. 26, para. 49-51, 78-80). The FCIC/RMA obtained and executed a search warrant in June 2021.  Out of the blue, they descended upon Stacy's and Nicholas' residence in the early morning hours of June 9, 2021, with several federal officers with weapons drawn as if Stacy and Nicholas were terrorists. They did the same at Plaintiffs' office. The officers held Stacy, her husband, and her daughter hostage for hours. (Affidavit of Stacy Boersen). They interrupted NHF-I's and NHF-II's employees, preventing them from planting and harvesting for hours while the interrogated them. (Affidavit of Stacy Boersen). The investigators have since interviewed and made disparaging comments to lenders, vendors landlords, and neighbors. (Affidavit of Stacy Boersen).  The investigation goes on endlessly with no results and no end in sight. (Complaint, ECF No. 26, para. 51 and 80, Affidavit of Stacy Boersen).

Realistically, all of the information needed to determine the claim was available by mid-2020.  All the corn and soybeans were harvested in 2019 and sold before October 1, 2020.  By mid-2020, GAIC had records of sales and storage from its inspection of storage, records from NHF-I and NHF-II, and records directly from the grain buyers. Even though they had this information for 3+ years, and now with an investigation dragging on for almost 4 years, yet there is still no determination.  (Complaint, ECF No. 26, para. 51 and 80, Affidavit of Stacy Boersen).

The effect of this never-ending investigation is catastrophic for Plaintiffs. The cascading effects include:

1.  NHF-I and NHF-II have not paid their loss from a terrible 2019 because GAIC and the FCIC/RMA refuse to determine the claims.

2.  The FCIC/RMA prohibits NHF-I's and NHF-II's excess band insurer for 2019 from paying for their loss because the FCIC/RMA prohibits payment during an investigation.

3.  NHF-I and NHF-II have debts from 2019 that they cannot pay without the insurance proceeds.

4.  NHF-I and NHF-II suffered some losses in subsequent years. The FCIC/RMA prohibits NHF-I's and NHF-II's insurers for those years from paying for their losses, again because the FCIC/RMA prohibit payment of future losses during an investigation.

5.  NHF-I and NHF-II have debts from the subsequent years that they cannot pay without the insurance proceeds.

6.  NHF-I and NHF-II have been required to pay their insurance premiums for 2019 totaling approximately $220,000 even though their losses are not paid.[4]

7.  NHF-I and NHF-II have been required to pay their insurance premiums for subsequent years even though their losses are not paid.

---

[4] The 2019 premium was due in March 2020, it is usually paid from crop proceeds or from crop insurance proceeds. If not paid, the insurance lapses and no claim is paid. The 2019 losses meant crop proceeds were not available, the delays by GAIC meant that insurance proceeds were not available. Thus, NHF-I and NHF-II had to borrow money to pay the premiums while GAIC and FCIC/RMA were accusing them of fraud. This scenario repeats for 2020-2022.

8.  Plaintiff's lender now refuses to lend to NHF-I and NHF-II, even though they have been paid in full, after the FCIC's/RMA's investigator told them that they are investigating allegations of fraud, fraud that does not exist.

9.  Plaintiff's largest landlord now refuses to lease to NHF-I and NHF-II, even though they have been paid in full, after the FCIC's/RMA's investigator told them that they are investigating allegations of fraud, fraud that does not exist.

10. As a result, NHF-I and NHF-II are down to only a total of about 4,000 acres for 2023.

11. Plaintiffs Stacy and Nicholas have suffered emotional distress including Nicholas has suffered from anxiety resulting in at least 2 trips to the local hospital emergency room and additional doctor visits and use of medication.

    (Complaint, ECF No. 26, para. 92, 101, 113, 127, 128, 137, 142, 149 and 157, Affidavit of Stacy Boersen).

GAIC's delays, its report to the RMA and then the RMA's endless investigation is basically slowly and painfully putting Stacy and Nicholas and their companies out of business. These consequences were all known or should have been known to GAIC and FCIC/RMA when they undertook their efforts to delay and avoid paying the 2019 loss, they are the result of the FCIC's/RMA's rules. Yet, they refuse to make a determination even while they force NHF-I and NHF-II to pay insurance premiums!

This scenario has been a nightmare for Stacy and Nicholas Boersen, living under constant stress and anxiety and threats of false criminal proceedings since mid-2020. (Affidavit if Stacy Boersen).

## Law and Argument

### Introduction

GAIC's Motion is based on F.R.Civ.P. 12 (b)(1) and. 12 (b)(6). Plaintiffs agree with the standard of review on page 3 of GAIC's Brief (ECF No. 28). In part, GAIC asserts that the Court lacks jurisdiction based on the arbitration clause and in part based on ripeness.

As set forth below, the arbitration issue requires the Court to look to whether Plaintiffs' claims are within the scope of the contractual arbitration clause (below on this page). The ripeness argument requires the Court to assess whether there is a concrete factual context and the impact of delay on Plaintiffs (see page 11, below).  Plaintiffs submit Exhibits 19-27 to provide a more complete context for the Court's decision on these issues.

**I.    Plaintiffs are not required to arbitrate their claims since the policies only require arbitration of a determination by GAIC or the FCIC, arbitration is not required where GAIC and the FCIC/RMA refuse to act.**

GAIC argues that this case must be dismissed because the insurance policies require arbitration.  However, they misinterpret the policy and the facts of this case.

Arbitration clauses are enforceable.  However, once the Court determines there is an arbitration clause, it must determine whether the current dispute is within the scope of the arbitration clause.  The Sixth Circuit in *Bratt Enters. v Noble Int'l Ltd.*, 338 F.3d 609 (6th Cir. 2003) noted that the duty to arbitrate derives from the agreement, a party cannot be compelled to arbitrate issues not covered by the agreement.  In determining that there was no duty to arbitrate certain issues, the Court stated that:

> ""Before compelling an unwilling party to arbitrate, [a] court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624 (6th Cir. 2003) (citing *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643,

649, 89 L. Ed. 2d 648, 106 S. Ct. 1415 (1986)).  The district court properly concluded that a valid agreement to arbitrate existed between Bratt and Noble, but erred in concluding that all aspects of Noble's breach of contract claim fell within the scope of that agreement." 338 F.3d at 612

More recently, the Sixth Circuit in *Solo v. UPS Co*., 947 F.3d 968 (6th Cir. 2020) ruled that the dispute in that case was not within their arbitration clause, and held that:

"[T]he FAA does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). They have not agreed to do so here." 947 F.3d at 974.

Here, the insurance policies dictated by the FCIC (ECF No. 26-2, 26-10, and 26-11), only provide for arbitration if the insured disagrees with a determination. Specifically, section 20(a)(1) (Complaint, ECF No. 26-2), states in pertinent part that:

"(1) All disputes involving determinations made by us, except those specified in section 20(d) or (e), are subject to mediation or arbitration."

After almost 4 years, GAIC and the FCIC have failed and refused to make a determination and cannot give an explanation of when they will. Thus, the arbitration clause does not apply.

II.     **GAIC's argument that Plaintiffs' claims are not ripe for adjudication fail because (a) GAIC (initially) and the FCIC/RMA control when a determination will be made, (b) there is a concrete factual context for Plaintiffs' claims, and (c) further delay will have devastating consequences to Plaintiffs.**

After almost 4 years of investigation by GAIC and FCIC/RMA, if this case is not ripe, it never will be! The FCIC is charged by law with adopting procedures to determine crop insurance claims "in a uniform and timely manner."  7 U.S.C. 1508 (j).  They have adopted manuals of procedures to direct AIPs to promptly determine claims. (USDA's Loss Adjustment Manual at

https://rma.usda.gov/-/media/RMA/Handbooks/Loss-Adjustment-Standards---25000/Loss-Adjustment-Manual/2019-25010-Loss-Adjustment-Manual-Standards-Handbook.ashx and

USDA's Large Claim Standard Manual at https://www.rma.usda.gov/-
/media/RMA/Handbooks/Program-Administration--14000/Large-Claim-Standards/2017-14040-
2H-Large-Claims-Standards-Handbook/2017-14040-Large-Claims-Standards-Handbook.ashx).

Congress also provides that the FCIC may make determinations of claims.  7 U.S.C. 1506

(j). Otherwise, the FCIC would report back to the AIP to make the determination.  For large

claims, the FCIC's Large Claim Standard Handbook at Sections 31A and 31B requires that

GAIC report the claim to the FCIC/RMA and get instruction. (**Exhibit 26**). Here, the FCIC/RMA

instructed GAIC to determine the claim. (**Exhibit 23**).  If the claim is disputed or controversial,

the FCIC Loss Adjustment Manual at Section 1204 provides for preparing 2 versions of its

claims form, one based on what the insured policy holder claims and one based on the AIP's

determination. Then both are submitted to the insured policy holder.  Both are submitted to the

insured policy holder.  (**Exhibit 27**).

Despite having everything it requested of Plaintiffs and their grain buyers, GAIC did not

make a determination.  Instead, it falsely reported to the FCIC/RMA that Plaintiffs were

attempting to commit crop insurance fraud. This set off a never-ending investigation by the

FCIC/RMA. We are now 3 ½ + years down the road (almost 4 years) and yet there is no

determination.

The ripeness doctrine is intended to avoid prematurely involving the Courts in abstract

debates that do not involve a case in controversy.  *Warshak v United States*, 532 F.3d 521, 528

(6th Cir. 2008). GAIC correctly quotes the standard for when a case is ripe. As stated by GAIC, in

determining whether a claim is ripe, the Court looks "first, whether the claim arises in a concrete

factual context and concerns a dispute that is likely to come to pass; and second, what hardship

to the parties will occur if the Court withholds consideration." *Overdrive Inc. v Open E-Book Forum*, 986 F.3d 954, 957 (6th Cir. 2021), (GAIC Brief, ECF No. 28, p 12).

Here, GAIC claims the case turns on future events – the never-ending FCIC/RMA investigation. In reality, the case turns on past events. Those events are:

1. The policy issued by GAIC to NHF-I and NHF-II in 2019.

2. NHF-I's and NHF-II's actual crop yields in 2019.

3. The pre-2019 Actual Production Histories applicable to NHF-I and NHF-II to measure the actual 2019 yield against.

These facts all span the time period of March 2019 through mid-2020.  The policies and their terms obviously existed in April 2019. The crops were grown in 2019. The actual 2019 yield is based on what was harvested in late 2019.  This is determined based on GAIC's storage measurements in December 2019 and the sales records obtained from Plaintiffs and their grain buyers in the first half of 2020.

An insurer such as GAIC has a duty to investigate and determine claims in good faith. *Murphy v Cincinnati Ins. Co.*, 772 F.2d 273 (6th Cir. 1985)[5].

> "In view of *Wakefield* and the footnote in *Kewin*, the district court properly concluded  that Michigan law recognizes a contractual obligation on the part of an insurer to act in good faith. The district court did not err by extending the duty of exercising good faith to the investigation of claims." 772 F.2d at 276-277.

The obligation of good faith is a long-standing principal of Michigan law. *Commercial Union Ins. Co. v Medical Protective Co.*, 426 Mich. 109 (1986); *Stark v Budwarker, Inc.*, 25 Mich.App. 305 (1970).

---

[5] While the Michigan Supreme Court rejected the *Murphy* Court's decision on attorney fees in *Burnside v State Farm Fire & Casualty, Co.*, 208 Mich.App. 422 (1995), it did not reject the ruling on the insurer's obligation to investigate in good faith.

Here, that obligation applied to the first half of 2020 and thereafter. Good faith does not mean falsely accusing Plaintiffs of crop insurance fraud and then hiding behind the investigation to avoid payment. Good faith does not involve gathering all of the information needed to determine a claim and then not doing so.  GAIC's failure to investigate and make a determination in good faith during 2020, by itself, is a breach of contract.

The bottom line here is that during the period of December 2019 through July 2020, Defendants would not determine the amount of corn and soybeans produced by Plaintiffs in 2019.  Since the corn and soybeans were all sold to known grain buyers in 2019 and 2020, if Defendants can't figure out the claim by now, they never will. This constitutes a breach of contract with a concrete factual context for this dispute.

If this Court accepts GAIC's argument, the case will never be ripe, there will never be a determination and Plaintiffs' will be forced out of business. Defendants assert that Plaintiffs' have no recourse for Defendants' refusal to act, their position is that they can refuse to act for an eternity and Plaintiffs will never have a remedy. According to Defendants, Plaintiffs must suffer while Defendants run around the area interviewing friends, lenders, landlords, vendors, and others telling them that Plaintiffs will be indicted.  Thus, Plaintiffs will suffer great hardship and harm if the Court withholds consideration.

Based on the above, Plaintiffs claims are ripe, with one exception.  There is a concrete factual context and the ongoing delay is causing substantial harm to Plaintiffs.  The exception is Plaintiffs' claim for attorney fees and punitive damages. In hindsight, these need to be determined by the FCIC pursuant to Section 20 (i) of the policy. Thus, the claims for relief of attorney fees and punitive should be dismissed without prejudice.

III.    **State Law Is Not Preempted When Is It Not Inconsistent With Federal Law, Regulations And The Policy.**

GAIC argues that Plaintiffs' state law claims are barred by preemption. This argument is flawed as a matter of law. GAIC argued that the FCIA, the terms of the insurance policy, and regulations promulgated by the FCIC all preempt state law.

A.  **The Federal Crop Insurance Act Does Not Preempt Applicable State Law That is Not Inconsistent With Federal Law.**

The language of 7 U.S.C. 1506 (l) undercuts GAIC's arguments. It actually allows for application of state law that is not inconsistent with federal law, regulations and contracts. The language of 7 U.S.C. 1506 (l) demonstrates a clear legislative intent to allow application of non-conflicting state laws:

> "The Corporation may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or *to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations*."

7 U.S.C. § 1506 (l). (emphasis added).

Several courts have ruled that this language does not create a complete or super preemption of state law, there is only preemption of *inconsistent* state law. *Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 686 (5th Cir. 2001) ("As other courts have found, this provision does not completely preempt the field of crop insurance as to exclude all state law claims and mandate jurisdiction in federal courts."); *Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.,* 364 F. Supp. 3d 839, 848 (E.D. Tenn. 2019) ("The FCIA does not preempt all state-law claims…in the context of complete preemption and the well-pleaded complaint doctrine, that the FCIA does not preempt all state causes of action pertaining to FCIA-issued crop insurance")(internal citations omitted); *Ehler v. Empire Fire & Marine Ins. Co.*, File No.

5:93:CV:48, 1993 U.S. Dist. LEXIS 18872, at *3 (W.D. Mich. Nov. 16, 1993) ("[T]he doctrine

of complete preemption does not extend to the [Federal Crop Insurance] Act…"); *Hyzer v. Cigna*

*Prop. Cas. Ins. Co.*, 884 F. Supp. 1146, 1149 (E.D. Mich. 1995) ("Since the court does not find

that the crop insurance area is completely or super preempted, the court need not inquire whether

plaintiffs' claims fall under the super preempted area, let alone the substantive validity of the

defense."). See also *Horn v. Rural Cmty. Ins. Servs.*, 903 F. Supp. 1502, 1505-06 (M.D. Ala.

1995) (finding no complete federal preemption and remanding state law claims).

In a case familiar to Great American, *Great Am. Ins. Co. v. Mills*, No. 4:06-cv-01971-

RBH, 2008 U.S. Dist. LEXIS 42570, at *23-24 (D.S.C. May 29, 2008), the Court cited *O'Neal v.*

*CIGNA Property and Casualty Insurance Co.*, 878 F.Supp. 848 (D.S.C. 1995) stating that

"United States District Judge Cameron Currie held that the Federal Crop Insurance Act ("FCIA")

did not preempt state common law claims against a private insurance company for negligence,

breach of contract, bad faith refusal to pay, and unfair trade practices." 2008 U.S. Dist. LEXIS

42570, at *23-24.

### B.  The Provisions In The Insurance Policy Do Not Preempt State Law That Is Not Inconsistent With The Policy.

The FCIC insurance policy, as used by GAIC, contains language is consistent with this

the non-preemption case law.  The FCIC insurance policy does not preempt non-conflicting state

law, Section 31 provides that:

> If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

(Complaint, ECF No. 26-2, §31, PageID.2356)

The plain language meaning of this provision allows for application of state law that is not

inconsistent with the policy.

GAIC further argues that Section §26 in the insurance policy bars recovery of interest under a state law cause of action because Section §26 provides for an interest payment for untimely payments thus preempting state law.  While Section §26 is titled "Interest Limitations", the title is not binding[6], the plain language meaning of the provision governs. It says, in whole:

> "We will pay simple interest computed on the net indemnity ultimately found to be due by us or by a final judgment of a court of competent jurisdiction, from and including the 61st day after the date you sign, date, and submit to us the properly completed claim on our form. Interest will be paid only if the reason for our failure to timely pay is NOT due to your failure to provide information or other material necessary for the computation or payment of the indemnity. The interest rate will be that established by the Secretary of the Treasury under section 12 of the Contract Disputes Act of 1978 (41 U.S.C. 611) and published in the Federal Register semiannually on or about January 1 and July 1 of each year, and may vary with each publication."

> Complaint ECF No. 26-2, §26, PageID.2355

Accordingly, the provision expressly authorizes interest to be paid for failure to timely pay claims. Such interest is contractually owed to the NHF-1 and NHF-2 due to GAIC's failure to timely adjust and pay the claim.  The provision *does not prohibit* state law causes of action that award interest nor does it preclude additional state law cause of action interest amounts from be aggregated to the amounts contained within the insurance policy. Therefore, such state law claimed interest[7] should be *in addition to* the interest as contracted for by the parties.

---

[6] FCIC Insurance policy section §32 'Descriptive Headings': "The descriptive headings of the various policy provisions are formulated for convenience only and *are **not intended to affect the construction or meaning of any of the policy provisions.**"* (emphasis added).

[7] "If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. If the claimant is a third party tort claimant, the benefits paid bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith, and the bad faith was determined by a court of law." See MCL 500.2006 (4).

IV.    **NHF-I's and NHF-II's State Law Claims Are Not Inconsistent With Federal Law, Regulations And The Policies.**

Plaintiffs NHF-I and NHF-II seek recovery against GAIC under various state law claims. They include:

A.  **Counts I, II, III, & V: Breach of Contract and Failure to promptly investigate and adjust the claim in good faith.**

Counts I and II assert a breach of contract by failing to investigate, determine and pay NHF-I's and NHF-II's claims. Counts III and V alleged that GAIC failed to timely investigate NHF-I's and NHF-II's claims in good faith.

Michigan requires that parties to a contract, including an insurance contract, perform their obligations and act in good faith. *Murphy v Cincinnati Ins. Co.,* 772 F.2d 273, 276 (6th Cir. 1985). In the insurance context, this means that an insurer, such as GAIC, must promptly investigate the insured loss in good faith.  More recently in a case familiar to Great American, the 6th Circuit Court of Appeals stated, "Michigan law infers a duty of good faith in every contract, which a party may breach by performing in bad faith." *Great Am. Ins. Co. v. E.L. Bailey & Co.*, 841 F.3d 439, 445 (6th Cir. 2016).

Good faith is a factual issue. Plaintiffs submit that GAIC's actions to endlessly delay a determination (and the resulting payment) is not good faith. Falsely accusing the insured of a crime is not good faith. Since good faith is a contractual obligation, this conduct is a breach of the contract.  It is not inconsistent with federal law, regulations, and the policy. It supplements federal law which contemplates prompt determination of claims.

Similarly, Michigan statutory law imposes a duty on insurers to timely adjust claims and provides a punitive interest damage for failing to do so, MCL 500.2006 (4) states, in pertinent part:

> "If benefits are not paid on a timely basis, the benefits paid bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or a person directly entitled to benefits under the insured's insurance contract. If the claimant is a third party tort claimant, the benefits paid bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith, and the bad faith was determined by a court of law."

The policy does not address issues of failing to act in good faith and failing to timely make a determination, let alone refusing to make a determination. GAIC's conduct is a breach of this statute.  Imposing the statutory relief of interest is not inconsistent with federal law, regulations and the policy which contemplate prompt determination of claims. The statutory duty to timely process claims is consistent with federal law and merely supplements a situation where, as here, GAIC refused to make a determination.

### B.  Counts VI and VII: Recovery For Intentional Interference With Contracts and with Business Relationships And Expectancies

The elements of tortious interference claims are (1) the existence of a valid contract, business relationship or expectancy, (2) knowledge of the contract, relationship or expectancy on the part of the defendant, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the plaintiff." *Total Quality, Inc. v. Fewless*, 332 Mich. App. 681, 704-05, 958 N.W.2d 294, 308 (2020).

GAIC focuses on the third element, an intentional interference by the defendant inducing or causing a breach or termination of the contracts, relationship, or expectancy, claiming that no *per se* wrongful act has been alleged. However, "[t]he definition section of the standard jury instruction for tortious interference with a business relationship, M Civ JI 126.03(b), defines "intent" to include when "defendant acted knowing that his or her conduct was certain or substantially certain to cause interference with plaintiff's business relationship or expectancy." *Id*.

The actions alleged of GAIC involve falsely reporting that Plaintiffs were committing crop insurance fraud trigger this claim.  These actions triggered (a) the never-ending investigation by the FCIC/RMA, (b) prohibition of payment on other insurance contracts (the 2019 band policy and policies for other years), and (c) refusal of Plaintiffs' lender and major landlord to do business with them (refusal to continue business relationships).  The false criminal allegations are themselves a violation of Michigan law and therefore unlawful.  See MCL 750.370. Such an act is not contractual as GAIC would like this Court to believe. It constitutes a *per se* wrongful act. GAIC certainly knew the impact of these allegations, being in the crop insurance industry.

### C.  Count IX: Constitutional Due Process Violations

Count V alleges that Plaintiffs have been deprived of their property (insurance proceeds) without due process by the Defendants' refusal to determine the claim. "Where a plaintiff brings a [42 U.S.C. § 1983] claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under [*Bivens*]." *Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009). The United States Supreme Court has recognized a claim to vindicate violations of constitutional rights by federal actors[8]. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). To state a *Bivens* claim, a plaintiff must allege facts sufficient to show that a federal defendant violated his rights under the United States Constitution. *Golio v. Adena Health Sys.*, No. 2:11-cv-00757, 2012 U.S. Dist. LEXIS 56250, at *20-21 (S.D. Ohio Apr. 23, 2012).

---

[8] By definition, a "Bivens action" denotes an action in which federal officials are sued in their individual capacities. *Armstrong v. Sears*, 33 F.3d 182, 185 (2d Cir. 1994); see *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). According to Bivens, a plaintiff may bring an action for damages against a federal employee in his individual capacity for an alleged violation of plaintiff's constitutional rights. *Bivens* at 411-12, 91 S. Ct. at 2012.

Just like a 42 U.S.C. § 1983 claims, private actors like GAIC can be held liable for damages in a *Bivens* action. *Yeager v. GMC*, 265 F.3d 389, 398 (6th Cir. 2001). To be liable, their conduct must be "so related to the federal government that they can be regarded federal agents or actors, that is, that the private corporation acted under color of federal law. *Id*.

GAIC is an AIP of federal crop insurance. The multi-peril crop insurance policy they sold to the Plaintiffs is reinsured by the FCIC.  The terms of the policy, the interpretation of policy and the implementation is so controlled by the FCIC and its RMA. The AIP, when it decides to sell the insurance, has no other option than to serve as a tool or instrumentality of the Federal Government.  While GAIC is a private entity, by entering into a contract, the SRA[9], with the FCIC they have assumed a substantial role in the management of a federal crop insurance policy and are charged with implementing, investigating, and governing the policy at the behest of the FCIC by and through the Basic Provisions and the Final Agency Determinations (FADs).  The parties agreed to a Federally Reinsured crop insurance and thereby agreed to play by the rule of the FCIC and FCIA:

> "It is possible for a private insurer to sell crop insurance which would not be reinsured by the FCIC. The federal regulations apply only to crop insurance that is reinsured or insured by the FCIC."

*Hyzer v. Cigna Prop. Cas. Ins. Co.*, 884 F. Supp. 1146, 1152 (E.D. Mich. 1995) citing *O'Neal v. CIGNA Prop. & Cas. Ins. Co.*, 878 F. Supp. 848, 852 (D.S.C. 1995).

GAIC's conduct, choosing to enter into and implement a reinsured multi-peril crop insurance policy with the federal government, placed them in a position to conduct themselves in a manner controlled by the federal government by and through the USDA, FCIC, and the RMA.

---

[9] Standard Reinsurance Agreement see https://www.rma.usda.gov/en/Topics/Reinsurance-Agreements (accessed 9/15/2023).

GAIC's defense appears to be that they were *just following orders*.  Just following orders, when those orders are coming from the federal government constitutes acting under the color of federal law.  Quite plainly, GIAC is implementing the will of the Federal Government and in so doing have used their power to harm NHF-1 and NHF-2 by (1) refusing to make a determination, (2) referring them for investigation, when GAIC itself had unclean hands[10], and (3) by failing to provide any due process for the takings of plaintiffs property for 3½ years.  Such conduct, carried out by GAIC, was in direct violation of Plaintiff's due process rights in violations of the 5th Amendment of the Constitution of the United States of America.

### D.  Count IV: Recovery by *Stacy Boersen* and *Nicholas Boersen* for intentional infliction of emotional distress.

GAIC argues that 7 U.S.C. 1506 (l) and 7 CFR 400.352 preempt this claim. As stated in its title, this Count only seeks recovery for Stacy Boersen and Nicholas Boersen.  They are not parties to the insurance contracts and thus, the preemption arguments do not apply.

GAIC argues at page 24 of their Brief that there are no wrongful acts pled to support such a claim. (ECF No. 28, PageID3062). "Michigan courts have recognized that the common-law tort of intentional infliction of emotional distress vindicates a person's 'right to be free from serious, intentional and unprivileged invasions of mental and emotional tranquility.'" *Cotton v. Banks*, 310 Mich. App. 104, 129, 872 N.W.2d 1, 15 (2015). "[A claim for intentional infliction of emotional distress as a separate theory of recovery requires (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Wendt v. Auto-Owners Ins. Co.,* 156 Mich. App. 19, 24, 401 N.W.2d 375, 378 (1986).

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice", or a degree of

---

[10] GAIC's loss adjustment process and failures to correct amounts are violations of the policy.

aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602-03, 374 N.W.2d 905, 908-09 (1985) quoting (Restatement Torts, 2d, § 46, comment d, pp 72-73).

In a contractual context, the tort action must rest on a breach of duty distinct from contract. *Id*. at 909. This does not preclude recovery from an insurer for their intentional infliction of emotional distress. *Id*.

Plaintiffs allege that the Defendants have gone far beyond a mere breach of contract. GAIC's false allegations of crop insurance fraud (Affidavit of Stacy Boersen) started the cascading events. *Id*.  GAIC made false allegations of crop insurance fraud against Plaintiffs to the FCIC/RMA in March 2020 and again in June or July 2020. GAIC knew that these false allegations would set off an investigation by the FCIC/RMA. They figuratively "pulled the trigger" and are now responsible for the harm they caused. False allegations of a crime are sufficient to support a claim of intentional infliction of emotional distress.

At the same time, GAIC botched the adjustment process when (a) its adjuster submitted false reports of grain in storage, (b) GAIC failed to do alternate determinations as indicated in Exhibit 27, failed to hold an entrance conference once the RMA became involved where any questions could have been resolved.

**Relief Requested**

Plaintiffs request that the Court deny GAIC's Motion to Dismiss and determine that:

1.  The parties are not compelled to arbitrate because (a) the arbitration clause only applies to determinations and (b) GAIC and the FCIC/RMA refused to make any determinations on Plaintiffs' NHF-I's and NHF-II's 2019 insurance claims after almost 4 years.

2.  The claims against GAIC are ripe, with the exception of attorney fees and punitive damages.

3.  Plaintiff's state law claims are not inconsistent with federal law, regulations, and the policy and thus, are not pre-empted.

4.  Plaintiffs' Complaint states a due process claim that can be pursued against GAIC.

5.  Claims by Stacy Boersen and Nicholas Boersen are not pre-empted.


If the Court determines any asserted above to support the claims are not sufficiently, Plaintiffs request leave to amend pursuant to F.R.Civ.P. 15.


                CUNNINGHAM DALMAN, P.C.
                Attorneys for Plaintiffs

Dated:  September 21, 2023        By:   */s/ Ronald J. VanderVeen*
                Ronald J. VanderVeen (P33067)
                321 Settlers Road
                Holland, MI 49423
                (616) 392-1821
                rjvv@cunninghamdalman.com