UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NEW HEIGHTS FARM I, LLC, a Michigan
limited liability company, STACY BOERSEN,
NEW HEIGHTS FARM II, LLC, a Michigan
limited liability company, and NICHOLAS
BOERSEN,

Case No. 1:23-cv-663

       Plaintiffs,

Hon.: Hala Y. Jarbou

v

GREAT AMERICAN INSURANCE COMPANY,
FEDERAL CROP INSURANCE CORPORATION, AND
UNITED STATES DEPARTMENT OF AGRICULTURE,

       Defendants.

| | |
|---|---|
| Ronald J. VanderVeen (P33067) | Thomas C. James, Jr., Esq. (OH0073531) |
| John D. Fitzpatrick (P85554) | Sanders & Associates, LPA |
| Carl Thorwall (P86746) | Attorneys for Defendant Great American |
| Cunningham Dalman, PC | 8040 Hosbrook Road, Suite 202 |
| Attorneys for Plaintiffs | Cincinnati, OH 45236 |
| 321 Sellers Road | (513) 229-8080 |
| Holland, MI 49422-1767 | tomjames@sanderslpa.com |
| (616) 392-1821 | |
| rjvv@cunninghamdalman.com | |
| jfitzpatrick@cunninghamdalman.com | |
| carlt@cunninghamdalman.com | |

## AFFIDAVIT OF STACY BOERSEN

Stacy Boersen, being duly sworn, states as follows:

1. That she is a Plaintiff in this matter and makes this affidavit based on her personal knowledge except where otherwise stated and is competent to testify if called as a witness in this matter.

2. With the end of the 2018 crop cycle, my husband's farming businesses were out of business and I needed a way to support myself and my children.

3.  My son, Nicholas, who was 19 years old at the time, expressed a desire to get into farming for a career.

4.  I researched and learned that Nicholas and I could each secure a lines of credit to support farming operations from Agrifund, LLC (aka "ARM"), secured by the crop and crop insurance, and could set up open accounts with Logan's Agri-Service ("Logan's") for inputs (seed and chemicals), secured by the crops and crop insurance proceeds.

5.  ARM required that we set up 2 limited liability companies for the lines of credit because of their internal lending limits and that we apply for crop insurance.

6.  I set up New Heights Farm I, LLC. I am the sole owner and sole manager of New Heights Farm I, LLC ("NHF-I").

7.  Nicholas, with my help, set up New Heights Farm II, LLC. He is the sole owner and sole manager of New Heights Farm II, LLC ("NHF-II"), although I help him with paperwork for the business.

8.  As required by the ARM, we applied for crop insurance with Great American Insurance Co. ("GAIC") during March 2019 through their agent, Spartan Insurance Agency. Spartan Insurance determined what was needed, gathered the necessary information. Nicholas and I signed the applications and Spartan Insurance submitted the applications. (Complaint ECF 26-1, 26-8 and 26-9).

9.  GAIC accepted our applications in April 2019 and issued a policy to NHF-I and 2 policies to NHF-II covering farms to be leased in several counties (Complaint, ECF 26-2, 26-10, and 26-11) and we pledged the crop insurance proceeds as collateral for ARM and Logan's.

10. ARM required that we submit proposed operating budgets for NHF-I and NHF-II, which we did.  ARM then reviewed the proposed operating budgets and finalized the budgets.

11. ARM advanced funds on the lines of credit for us to pay NHF-I's and NHF-II's operating expenses pursuant to the budget it approved.

12. NHF-I leased approximately 8,740 acres and NHF-II leased approximately 8,760 acres of land and undertook farming by planting corn and soybeans.

13. After we completed planting, Spartan Insurance sought to correct a few things in our documents submitted to GAIC and was told by GAIC that (a) the changes affected less than 5% of our acres, (b) changes that are less than 5% will be revised after year end if we have a claim and thus, (c) they would not process the change because they involved less than 5% of our acres. (Attached **Exhibit 20**).

14. When it was time to harvest, NHF-I and NHF-II harvested their corn and soybean crops, temporarily putting some crop in storage and selling the rest of the crop to grain buyers known as Zeeland Farm Service, Carbon Green Energy, The Andersons, Eaton Farm Bureau, and Michigan Agriculture Commodities. The stored grain was later also sold to some of these grain buyers during 2020.

15. All of NHF-I's proceeds that were paid by the grain buyers were endorsed and delivered to ARM to be applied to NHF-I's lines of credit with ARM and Logan's or deposited by ARM into NHF I's account for operating expenses.

16. All of NHF-II's proceeds that were paid by the grain buyers endorsed and delivered to ARM to be applied to NHF-II's lines of credit with ARM and Logan's or deposited by ARM into NHF II's account for operating expenses.

17. The crop season in 2019 was a terrible year to start farming. We had bad weather that impacted planting in the spring and bad weather impacting the harvest in the fall. Thus, GAIC's agent, Spartan Insurance, submitted Notices of Loss for us. (Complaint ECF 26-4, 26-5, 26-14, 26-15, and 26-16).

18. It was my understanding that, after submissions of the Notices of Loss, the claim process was:

    a. The insured submits records to the insurer for counties with losses,

    b. The *insurer* makes a determination of the amount of losses,

    c. The *insurer* prepares and submits a claim form for the insured to sign,

    d. If there is any disagreement, the disagreement is discussed and mediated and resolved, and

    e. The insurer pays the amount of loss.

19. I have read Mr. Andrew Potter's deposition (GAIC's field adjuster) in another matter where he testified that:

    a. GAIC experienced a large volume of claims for 2019,

    b. GAIC hired several new adjusters during 2019 (including him) (Excerpts attached as **Exhibit 21, p 40**),

    c. That NHF-I and NHF-II was by far the largest of the largest farming operations he worked on both as to the number of acres and the number of counties it covered. (Excerpts attached as **Exhibit 21, pp 33-34**).

20. This claim has become a nightmare.

21. The nightmare started when GAIC sent Mr. Potter, to measure the grain in storage and gather records for the claim in December 2019 and continues to this date:

    a. Mr. Potter intentionally did not follow proper FCIC procedures in measuring the grain as later admitted by GAIC.

b.  Mr. Potter asked that we provide sales records *for the counties where we had losses*. We provided the records in January.[1]

c.  In February, we were asked for records for counties where we did not have losses. We promptly provided the additional records.

d.  I signed authorization forms to allow GAIC to get sales records directly from the grain buyers.

e.  We are told that GAIC reported our claims as large claims in February 2020, and were instructed by FCIC/RMA GAIC to determine our claims. (Attached **Exhibit 23**).

f.  In March, 2020, GAIC asked to question Nicholas and me under oath. We complied and answered all questions.

g.  In early May, GAIC requested additional information.  We promptly provided them.

h.  In May, GAIC asked that we visit a few fields with them. We learned that some fields had been labeled as corn but were planted with soybeans.

    i.  I promptly signed a statement prepared by GAIC[2] to correct this error as to NHF-I. (Attached **Exhibit 24**). This affected approximately 218 acres out of approximately 8,700 acres, well under 5% of its fields.

    ii.  We also noted that there was a reporting error for NHF-II of approximately 254 acres out of approximately 8,700 acres, again well under 5% of its fields.

---

[1] GAIC later complained that we did not provide records of NHF-II's sales to Michigan Agriculture Commodities. We did not do so because NHF-II was not pursuing a loss claim for Washtenaw County farms. GAIC initially only asked for records for counties with losses because loss claims are determined county-by-county.  This was explained to them by their agent, Spartan Insurance, (Attached **Exhibit 22**) and we then provided the records.

[2] GAIC violated FCIC/RMA policy by preparing the statement for NHF-I rather than having NHF-I prepare it.

i.   In early June, we inquired of GAIC if they needed more information. They did not request additional records.

j.   GAIC refused to make a determination on our loss and refused to prepare claim forms to either approve the claim, approve it in part or deny it.

k.   We have since learned that GAIC has falsely reported to the FCIC/RMA that we committed fraud both in March 2020 and late June or July 2020.

l.   The FCIC/RMA and GAIC failed to set up an entrance conference for their investigation as provided in their policy manual. https://www.rma.usda.gov/-/media/RMA/Handbooks/Program-Administration--14000/Large-Claim-Standards/2017-14040-2H-Large-Claims-Standards-Handbook/2017-14040-Large-Claims-Standards-Handbook.ashx (See the FCIC's sample investigation entrance letter from the manual attached as **Exhibit 25**).

m.   As a result of GAIC's false report, the FCIC/RMA investigators obtained search warrants and showed up at my house early on June 9, 2021, with guns drawn and held my daughter and me hostage while they searched my house, questioned me, and took my computers and records.  They did the same at my office and they approached the adjacent home where my elderly parent-in law's reside in with guns drawn but did not search the house.

n.   The affidavit used by the FCIC/RMA investigator used to obtain the search warrant contained multiple false or misleading information presumably from GAIC, such as:

   i.   stating that records for sales to Michigan Agriculture Commodities were not initially provided without disclosing that (1) these records for non-loss

counties that were not initially requested and (2) I provided the records promptly upon request.

    ii.   Over stating the number of truckloads delivered to Michigan Agriculture Commodities by about 170%.

    iii.   Stating that several fields were reported as planted but were not planted when in fact, they were planted and harvested with soybeans rather than corn. He failed to reveal that (1) we tried to correct the reporting on these fields and (2) the reporting error was well under 5% of our acres, and (3) GAIC said they do not correct reporting mid-year when under 5% of total acres.

    o.   I have since learned that they have been interviewing a multitude of persons, telling some or all that they are investing crop insurance fraud and that we committed crimes.

22. We have provided everything that GAIC requested.

23. I have heard from others that:

    a.   The investigators told one person that I will be indicted for fraud and that he would also be indicted if he did any business with me,

    b.   The investigators threatened a long time friend and neighbor of the Boersens about whether he moved harvested production for NHF-I because he had affair with Stacy, which was not true,

    c.   A large landlord who leased land to NHF-I and NHF-II during 2019, 2020, 2021, and 2023 refused to lease land to NHF-I and NHF-II after being interviewed by FCIC/RMA even though we always paid rent in advance,

    d.  ARM refused to lend to NHF-I and NHF-II after being interviewed by FCIC/RMA even though they were paid in full for prior years.

24. The FCIC/RMA investigators interfered with out planting and harvesting by showing up in fields to interrogate employees, detaining them for several hours during planting and harvest seasons and denying the employees' requests to be interviewed after they finished planting and harvesting.

25. The never-ending FCIC/RMA investigation also affect other insurance:

    a.  FCIC/RMA will not allow the insurer on the excess band policy for 2019 to pay claims even though those claims are determined and otherwise ready to be paid[3] and,

    b.  FCIC/RMA will not allow insurers for years after 2019 to pay claims even though those claims are determined and otherwise ready to be paid.

26. Not only does the FCIC/RMA prevent payment on the policies, they required that we pay the annual premiums on the policies.  Thus, we had to pay out approximately $220,000 for the 2019 policy (Complaint ECF 26-6 and 26-17) as well as premiums on subsequent policies.

27. As a result of the false reports by GAIC and the actions of FCIC/RMA,

    a.  NHF-I and NHF-II are down to a total of about 4,000 acres for 2023,

    b.  Are heavily indebted to Logan's for 2019 and subsequent years, The GAIC crop insurance proceeds will only be used to pay part of our secured open account with Logan's,

    c.  Plaintiffs have lost trust in the farming community, and

    d.  Plaintiffs have lost income.

---

[3] A band policy is a type of excess coverage policy.  The GAIC policy insures to 85% of APH and the band coverage insures losses in the range of 85% to 95% of APH.

28. The GAIC's and FCIC/RMA's never-ending investigation threaten to put NHF-I and NHF-II out of business by their failure to make a determination on the 2019 policy.

29. We have not committed crop insurance fraud as alleged by GAIC and FCIC/RMA.

30. GAIC started its investigation of our loss almost 4 years ago, it has had all of the information to adjust the claim since the late-spring of 2020 and refused to do so.  The FCIC/RMA has investigating us for over 3 years and refuses to take any action even though:

    a.  The loss occurred almost 4 years ago,

    b.  All of the corn and soybean sales were completed before October 1, 2020 and the records were provided to GAIC by me and the grain buyers, and

    c.  There were no ongoing transactions after October 1, 2020 relating to the 2019 corn and soybeans and thus, everything to investigate relating to 2019 happened before October 1, 2020, some 3 years ago.

31. Over the last 3 ½ years, I have had to live with the stress and anxiety of knowing that my son and I were being investigated based on false criminal allegations about us and that false statements about us were being made to neighbors and others and likely landlords and lenders.

32. Over the last 3 ½ years, the false claims caused Nicholas to suffer from anxiety, resulting in at least 2 trips to the local hospital emergency room, additional doctors' visits and use of medication.

33. To this date, there have been no determinations on our 2019 crop loss by GAIC or FCIC-RMA.

{Signature on next page}

Further deponent sayeth not.

Stacy Boersen

STATE OF MICHIGAN    )
                             ) ss.
COUNTY OF OTTAWA    )

The foregoing instrument was acknowledged before me in Ottawa County, State of Michigan, this ___21st___ of September, 2023, by Stacy Boersen.

Notary Public, __Ottawa__ County, Michigan
My commission expires: ___1·95·2027___
Acting in Ottawa County, Michigan

Lisa Robinson
Notary Public of Michigan
Ottawa County
Expires 01/15/2027
Acting in the County of Ottawa