

United States Department of Agriculture



Federal Crop Insurance Corporation

FCIC-25010 (12-2018)

# LOSS ADJUSTMENT MANUAL STANDARDS HANDBOOK

## 2019 and Succeeding Crop Years

**1203    Dealing with Problem Cases (Continued)**

(7) Questionable claims may be investigated when there is some indication that legal action may occur.  This is still a legitimate function as long as the information is intended for AIP use.  Consideration must not be given as to the eventual evidentiary value of the information.  If it is discovered upon cross examination that a particular farm visit was for the purpose of obtaining evidence for criminal or civil prosecution, that visit could be considered to have a law enforcement purpose.  The absence of prescribed law enforcement procedures would render the information inadmissible.

(8) It should be kept in mind that any promises made to an insured for cooperation may render the information inadmissible, and possibly impose civil liability on the person(s) who made such an offer.  Any evidence, no matter how small, indicating that the information supplied by the insured was in consideration of a waiver of civil or criminal charges can void a successful prosecution or, at the least, devalue the evidentiary weight of such evidence.

**1204 Controversial Claim Procedure**

If the insured will not agree with the adjustment data, refer the case to the AIP.  The AIP representative and the adjuster will review the case with the insured and make every effort to resolve it.

If an agreement cannot be reached with the insured, AIPs may use the procedures in subparagraph A or the AIP may use a MPCI Non-Waiver Agreement.  If a MPCI Non-Waiver Agreement is used, follow the instructions provided by the AIP for completing this form, and follow the documentation procedures in subparagraph B below.  However, if neither the procedures in subparagraph A nor a MPCI Non-Waiver Agreement is used, the AIP still must use the procedures for documenting the controversial situation as stated in subparagraph A(3) below.

    **A.   Prepare Two Claims**

        (1) One claim showing the data submitted by the insured, signed only by the insured.  The insured should be provided a copy of the claim and any appraisal worksheets or other documents signed by the insured at the time of this inspection.

        (2) The other claim showing the data determined and the date signed by the AIP representative(s).

        (3) Submit both sets of the claims to the person or office designated by your AIP along with complete documentation.  Refer to subparagraph B below.

    **B.   Documentation**

        (1) Conduct interviews with the insured, the insured's employees, neighbors, other persons having knowledge of the facts in the case, and any additional individuals the AIP determines to have information relevant to the case.  AIP representatives conducting the interview should be accompanied by another individual represented by the AIP.

**1204 Controversial Claim Procedure (Continued)**

  B. **Documentation (continued)**

    (2) Collect signed statements by the insured and other persons interviewed.  The insured should personally prepare a detailed Special Report to document the points of disagreement in support of the claim as submitted.

    (3) Conduct appraisals of potential production and uninsured COL in the insured field(s) and neighboring fields.  Make appraisals explicit as to potential production and uninsured causes i.e., "16 bu./ac. potential, 86 weed plants in 36 square foot area."  Any neighboring field used for comparison purposes should be of similar soil type, farmed with similar cultural practices, and planted to the same crop as the insured field.  Properly document photograph(s) or video(s) showing the damaged crop and identifiable landmarks of both insured and neighboring fields damage.

    (4) Obtain harvested production data from insured and neighboring field(s) and include photographs, if pertinent to the case.

    (5) Include signed statements by AIP representatives involved in the case.  Do not include any evidence, insinuations or opinions which do not have complete supporting facts in the statements, nor references to the insured's personal habits or traits.  Prepare the statements in a manner that will lead the reader to a logical conclusion based upon the facts presented.

**1205 Pesticide or Other Chemical Substance Hazards**

  (1) Most pesticides have a period of time that must lapse after they have been applied before it is safe to enter the treated field without wearing protective clothing and equipment.  Normally, this is at least the time necessary for sprays to dry and dusts to settle (8-48 hours).  MSDS contain pertinent detailed information about specific chemicals including health hazards, emergency and first-aid, and the safe re-entry period after a chemical has been applied.  Some USDA field offices such as FSA and NRCS house MSDSs.  Other local agencies may have these data sheets for possible use.  In addition, each state has a poison control center, which normally carries a toll-free number and maintains a 24-hour consultant service in the diagnosis and treatment of human illnesses resulting from toxic substances.  Check with NRCS or FSA for MSDSs or other literature pertaining to pesticide or chemical hazards.

  (2) At the time the appointment is set up, ask the insured or the insured's representative if the field, orchard, or vineyard to be entered has been treated with pesticides or other chemicals.  If the field, orchard, or vineyard is to be treated or has been treated within this time period, reschedule the appointment(s) and document the visit accordingly.

**1206-1220 (Reserved)**