UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

NEW HEIGHTS FARM I, LLC, a Michigan
limited liability company; STACY BOERSEN;
NEW HEIGHTS FARM II, LLC, a Michigan
limited liability company; and NICHOLAS          Case No. 1:23-cv-663
BOERSEN,

      Plaintiffs,                                    Hon.: Hala Y. Jarbou

v

GREAT AMERICAN INSURANCE
COMPANY; FEDERAL CROP INSURANCE
CORPORATION; and UNITED STATES
DEPARTMENT OF AGRICULTURE,

      Defendants.

---

| | |
|---|---|
| Ronald J. VanderVeen (P33067) | Thomas C. James, Jr., Esq. (OH0073531) |
| John D. Fitzpatrick (P85554) | Sanders & Associates, LPA |
| Carl Thorwall (P86746) | *Attorneys for Defendant Great American* |
| Cunningham Dalman, P.C. | 8040 Hosbrook Road, Suite 202 |
| *Attorneys for Plaintiffs* | Cincinnati, OH 45236 |
| 321 Sellers Road | (513) 229-8080 |
| Holland, MI 49422-1767 | tomjames@sanderslpa.com |
| (616) 392-1821 | |
| rjvv@cunninghamdalman.com | |
| jfitzpatrick@cunninghamdalman.com | |
| carlt@cunninghamdalman.com | |
| | Laura A. Babinsky (P85670) |
| | Assistant to United States Attorney |
| | Attorneys for U.S. Department of Agriculture and |
| | Federal Crop Insurance Corporation |
| | PO Box 208 |
| | Grand Rapids, MI 49501-0208 |
| | (616) 456-2404 |
| | Laura.babinsky@usdoj.gov |

---

**PLAINTIFFS' BRIEF OPPOSING DEFENDANTS
FCIC'S AND USDA'S MOTION TO DISMISS**

Oral Argument Requested

## Table of Contents

Statement of Jurisdiction ................................................................................................... 1

Statement of Facts ............................................................................................................. 2

Law and Argument ............................................................................................................ 5

  Introduction .................................................................................................................... 5

    I.    Plaintiffs' claims in Counts I-III, V and IX are ripe for judicial determination. ............. 5

    II.    Federal District Courts Have Subject Matter Jurisdiction Pursuant to the Federal Crop Insurance Act, sovereign immunity has been waived. ........................................................... 8

    III.    The Plaintiffs and FCIC/RMA Are In Privity Of Contract. ......................................... 9

    IV.    Due process claim .......................................................................................................... 15

    V.    Proper Party for a *Bivens* Action ............................................................................... 16

    VI.    Stipulation To Dismiss Counts Pursuant to FTCA ..................................................... 18

Relief Requested ............................................................................................................. 18

Index of Authorities

**Cases**

*Ainsworth v. General Reinsurance Corp.*, 751 F.2d 962, 965 (8th Cir. 1985)...................... 10, 11

*Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 798 (8th Cir. 2008) ...................... 8

*Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.*, 532 F.3d 797, 800 (8th Cir. 2008) ...................... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 1948 (2009) ............................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009) ............................................ 16

*Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs.*, 447 F.3d 1370, 1376 (Fed. Cir. 2006) ..................................................................................................................................... 12

*Beddingfield v. Mullins Ins. Co.*, 266 So. 3d 698, 705-706 (Ala. 2018)......................................... 8

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971) ............................................................................................ 15, 16

*Byrd v. Haas*, 17 F.4th 692, 698 (6th Cir. 2021) .......................................................................... 9

*Cf. Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 14 F.4th 462, 485 (6th Cir. 2021) ................ 9

*Commercial Union Ins. Co. v Medical Protective Co.*, 426 Mich. 109 (1986) .............................. 7

*Davis v. Passman*, 442 U.S. 228, 229-30, 99 S. Ct. 2264, 2269 (1979) ....................................... 16

*F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) .............................................................................. 16

*Golio v. Adena Health Sys.*, No. 2:11-cv-00757, 2012 U.S. Dist. LEXIS 56250, at *20-21 (S.D. Ohio Apr. 23, 2012) .................................................................................................................. 16

*Haight v. Thompson*, 763 F.3d 554, 560 (6th Cir. 2014).............................................................. 9

*Litho Color, Inc. v. Pacific Employer's Ins. Co.*, 98 Wn. App. 286, 301-02, 991 P.2d 638, 646 (Wash. Ct. App. 1999)............................................................................................................... 13

*McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir. 1991)..................................................... 8

*Murphy v Cincinnati Ins. Co.*, 772 F.2d 273, 276-277 (6th Cir. 1985)........................................... 7

*Old Republic Ins. Co. v. Fed. Crop Ins. Corp.*, 947 F.2d 269, 276 (7th Cir. 1991) .............. 10, 11

*Olsen v. United States*, 546 F. Supp. 2d 1122 (E.D. Wash. 2008).............................................. 13

*Overdrive Inc. v Open E-Book Forum*, 986 F.3d 954, 957 (6th Cir. 2021)..................................... 6

*Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009)................................ 15

*Stewart v. Fed. Crop Ins. Corp.*, No. 4:09-cv-101, 2010 U.S. Dist. LEXIS 87882 (E.D. Tenn. Aug. 25, 2010) .......................................................................................................................... 13

*Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1372 (Fed. Cir. 2005)...................... 12, 13

*Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1373 (Fed. Cir. 2005)............................. 12

*Warshak v United States*, 532 F.3d 521, 528 (6th Cir. 2008) ........................................................ 6

*Wiley v. Glickman*, A3-99-32, 1999 U.S. Dist. LEXIS 20278, at *38-39 (D.N.D. Sep. 3, 1999) 11, 12

*Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Serv., Inc.*, 121 F.3d 630, 633 (11th Cir. 1997) ....................................................................................................................................... 10

**Statutes**

Rev. Stat. § 1979 ........................................................................................................................ 16

**Other Authorities**

F.R.Civ.P. 12 (b)(1) ..................................................................................................................... 5

F.R.Civ.P. 12 (b)(6) ..................................................................................................................... 5

F.R.Civ.P. 56............................................................................................................................... 5

**Regulations**

7 C.F.R. 400.96 ......................................................................................................... 14, 15
7 C.F.R. 400.96 section (C)...................................................................................... 15

**Constitutional Provisions**
42 U.S.C. § 1983 ...................................................................................................... 15, 16
7 U.S.C. § 1506 ........................................................................................................... 9
7 U.S.C. § 1506 (d) ..................................................................................................... 8
7 U.S.C. § 1506 (j) .................................................................................................... 10
7 U.S.C. § 1507(c) ...................................................................................................... 8
7 U.S.C. § 1508 ........................................................................................................... 9
7 U.S.C. § 1508 (j)(2) ............................................................................................... 11
7 U.S.C. § 1508 (j)(2)(A) ....................................................................................... 8, 9
7 U.S.C. §§ 1501 ......................................................................................................... 8
7 U.S.C. 1506 ............................................................................................................... 1
7 U.S.C. 1506 (j) ......................................................................................................... 6
7 U.S.C. 1508 (j) ......................................................................................................... 5
7 U.S.C. 1508 (j)(2)(A) ............................................................................................. 10

**Statement of Jurisdiction**

This Court has jurisdiction pursuant to 7 U.S.C. 1506 that provides for suits against the

Federal Crop Insurance Corporation in the US District Court for the district where the Plaintiff's

farming operations are located.

**Statement of Facts**

The facts are stated in Plaintiffs' Brief Opposing Defendant Great American Insurance Co.'s Motion to Dismiss (ECF No. 35 PageID.3122-3128) and the Affidavit of Stacy Boersen (ECF No. 35-1 PageID.3144-3153). They can be summarized as:

Plaintiffs New Heights Farm I, LLC ("NHF-I") and New Heights Farm II, LLC ("NHF-II") applied for crop insurance with Great American Insurance Co. ("GAIC") for 2019. GAIC accepted the applications and issued a policy to NHF-I and NHF-II. (Complaint, ECF No.  26 Page ID.2287 and 2291, para. 24 and 54).

GAIC accepted their applications and, in April 2019, issued a policy to NHF-I and two policies to NHF-II. (Complaint, ECF No.  26 Page ID.2287 and 2291, para. 25-27 and 55-57). The policies are reinsured by the Federal Crop Insurance Corporation ("FCIC").  Not only does the FCIC reinsure GAIC, they dictate the terms of the policies issued by GAIC and procedures for determining losses.  The FCIC also reserves the right to step into the shoes of GAIC to investigate a loss and to determination claims.  (Exhibit 29, ECF No. 40-2)

NHF-I and NHF-II were by far the largest farming operation insured by GAIC in Michigan.  They were the largest by number of acres and largest by number of counties. By virtue of their size, Plaintiffs sold to more grain buyers that the typical farmer GAIC insures. (Exhibit 28, ECF No. 40-1).  Their farming operations and crop insurance were complicated by the number of counties where they farmed, as losses are determined on a county-by-county basis.

2019 was a terrible year for corn and soybean farming in Michigan. The weather was bad during planting and during harvest. There were a lot of claims that year. In fact, GAIC hired 6 new adjusters to work the notices of loss that year. (Exhibit 28, ECF No.40-1).

GAIC's agent, Spartan Insurance Agency, submitted Notices of Loss for NHF-I and NHF-II in December 2019. (Complaint, ECF No. 26 PageID.2287-2288, 2292, para. 31 and 32,

2

61 and 62). GAIC started to investigate the loss in late December.  GAIC asked for records and

information from Plaintiffs for the counties where there were losses. Plaintiff provided the

records.  Plaintiffs provided additional records and information as requested by GAIC over the

next few months. GAIC also obtained sales records from all of NHF-I's and NHF-II's grain

buyers, with Plaintiffs' consent. (Complaint, ECF No.  26 Page ID. 2239-2290, 2292-2293, para.

33-38, 44, 63-68 and 74, Affidavit of Stacy Boersen, ECF No. 35-1 PageID.3144-3153).

Because of the size of the farming operations and losses, GAIC was required to report the

notices of loss to the FCIC/RMA.  RMA[1] instructed GAIC to go forward with determining the

claim. (Exhibit 23, ECF No. 35-5, PageID.3462).  The process involves (a) GAIC reviewing

NHF-I and NHF-II records, (b) GAIC determining the loss, GAIC preparing claims forms, (c)

GAIC submitting the claim forms to NHF-I and NHF-II, (d) GAIC paying the claims and (e)

GAIC receiving partial reimbursement from the FCIC. (Complaint, ECF No.  26 PageID.2290,

para. 45).  If there is a dispute over the claim, GAIC is to prepare 2 claims, one based on the

farmer's records and one based on their own determination and submit them to the farmer.

(Exhibit 27, ECF No.  35-9 PageID.3475, Section 1204).

Instead of determining the losses as directed by the RMA and as provided in the FCIC's

handbooks, GAIC chose a path to avoid determining the loss.  First, its field adjuster understated

the amount of grain in storage.  Second, in March 2020, GAIC falsely reported to the

FCIC/RMA that Plaintiffs were committing crop insurance fraud. Although GAIC had all of the

information to determine losses before June, it again reported that Plaintiffs were committing

crop insurance fraud to the RMA. (Complaint ECF No. 26, PageID.2290 para. 46-47 and

PAGEID.2293, para. 75-76, Affidavit of Stacy Boersen, ECF No. 35-1 PageID.3144-3153)

---

[1] The RMA is the agency within the USDA that manages the FCIC. The RMA and USDA are used
interchangeably.

The FCIC/RMA stepped in and started what has become a never-ending investigation seeking to run NHF-I and NHF-II out of business. The FCIC/RMA continues to this date refusing to determine NHF-I's and NHF-II's loss and refusing to allow GAIC to determine their loss. (Affidavit of Stacy Boersen, ECF No. 35-1 PageID.3144-3153).

The FCIC/RMA's position is that they can investigate Plaintiffs for an eternity, thereby depriving NHF-I and NHF-II of their insurance proceeds and leaving them with no remedy or recourse.  Not only do they prevent payment of the 2019 claims, they prevent payment of any subsequent claims by maintaining their never-ending investigation.[2]

Their investigation continues even though all of the relevant facts, the rating per acre and the harvest per acre, were all finalized and known by mid-2020.

While they prevent payment of claims, NHF-I and NHF-II are required to pay their insurance premiums, some $220,000 for 2019 alone, for each year in order to avoid losing their insurance. (Complaint, ECF No. 26 PageID.2289 and 2293, para. 39-43, 69-73).

The consequences Plaintiffs have been severe. Plaintiffs' lender for 2019, 2020, and 2021 refused to lend in 2022 and 2023 after being interviewed by the FCIC/RMA (even though they have been fully paid for 2019-2021), Plaintiffs' major landlord to stopped leasing to them after being interviewed by the FCIC/RMA (even though they were paid in advance each year) and Plaintiff was told that the investigators threatened another party with indictment if they do business with Plaintiffs.  The never-ending investigation has caused Plaintiffs' operations to shrink from about 18,000 acres in 2019 to about 4,000 acres in 2023. This never-ending investigation also includes Nicholas Boersen suffering trips to the local hospital emergency room for anxiety attacks, doctors' visits, and medication to control anxiety due to the false accusations.

---

[2] The policies, as dictated by the FCIC, prohibit payment for subsequent years if an investigation is pending, with no requirement that the FCIC/RMA ever finish an investigation.

4

(Complaint, ECF No. 26 PageID.2295, 2297, 2299, para. 92, 101 and 113, Affidavit of Stacy Boersen, ECF No. 35-1 PageID.3144-3153).

## Law and Argument

### Introduction

The FCIC's/USDA's Motion to Dismiss is based on F.R.Civ.P. 12 (b)(1) and 12 (b)(6) and references F.R.Civ.P. 56. Plaintiffs agree with the standard of review on page(s) 4 and 5 of FCIC's/USDA's Brief (ECF No. 32 Page ID 3094-3095).  Plaintiffs submitted Exhibits 19-27 (ECF 35-1 through 35-9) with its Brief opposing GAIC's Motion to Dismiss and Exhibits 28 and 29 with this Brief (ECF No. 40-1 and 40-2) to provide a more complete context for the Court's decision on these issues.

The FCIC/USDA have raised arguments based on the procedures under the Federal Tort Claims Act (the "FTCA"). Plaintiffs reluctantly concede that the claims in Counts IV, VI, and VII are tort claims and, as to the FCIC/USDA, must be submitted for determination under the FTCA before litigation. Thus, Plaintiffs request that these claims, to the extent they are against the FCIC and USDA, be dismissed without prejudice so that they can be evaluated and possibly pursued administratively.  Plaintiffs oppose the FCIC/USDA's Motion as to other claims.

## I.     Plaintiffs' claims in Counts I-III, V and IX are ripe for judicial determination.

After almost 4 years of investigation by GAIC and FCIC/RMA, if this case is not ripe, it never will be! The FCIC is charged by law with adopting procedures to determine crop insurance losses "in a uniform and timely manner."  7 U.S.C. 1508 (j).  They have adopted manuals of procedures to direct AIPs to promptly determine losses. (USDA's Loss Adjustment Manual[3] and

---

[3] Published at https://rma.usda.gov/-/media/RMA/Handbooks/Loss-Adjustment-Standards---25000/Loss-Adjustment-Manual/2019-25010-Loss-Adjustment-Manual-Standards-Handbook.ashx. (excerpts filed as ECF 35-9, PageID 3474-3476).

USDA's Large Claim Standard Manual[4]). Yet their "investigation" has not concluded, and they give no indication when it will.

Congress also provides that the FCIC may make determinations of losses.  7 U.S.C. 1506 (j). Otherwise, the FCIC reports back to the AIP to make the determination.  For large claims, the FCIC's Large Claim Standard Handbook at Sections 31A and 31B requires that GAIC report the claim to the FCIC/RMA and get instruction. (ECF No. 35-8 PageID.3471-3472, Section 31 B). Here, the FCIC/RMA initially instructed GAIC to determine the claim. (ECF No. 35-5 PageID.3462-3463).  If the claim is disputed or controversial, the FCIC Loss Adjustment Manual at Section 1204 provides for preparing two versions of its claims form, one based on what the insured policy holder claims and one based on GAIC's determination. Then both are submitted to the insured policy holder.  (ECF No. 35-9 PageID.3475-3476, Section 1204).  Nevertheless, after 3 ½ - 4 years, they have not determined the losses.

The ripeness doctrine is intended to avoid prematurely involving the Courts in abstract debates that do not involve a case in controversy.  *Warshak v United States*, 532 F.3d 521, 528 (6th Cir. 2008). To determine whether a claim is ripe, the Court looks "first, whether the claim arises in a concrete factual context and concerns a dispute that is likely to come to pass; and second, what hardship to the parties will occur if the Court withholds consideration." *Overdrive Inc. v Open E-Book Forum*, 986 F.3d 954, 957 (6th Cir. 2021).

Here, Plaintiffs' claims are based on a concrete set of facts.  This case turns on past events. Those events are:

1.  The policy that was issued by GAIC to NHF-I and NHF-II in 2019.

---

[4] Published at https://www.rma.usda.gov/-/media/RMA/Handbooks/Program-Administration--14000/Large-Claim-Standards/2017-14040-2H-Large-Claims-Standards-Handbook/2017-14040-Large-Claims-Standards-Handbook.ashx. (Excerpts filed as ECF No. 35-8 PageID.3469-3473).

2.   NHF-I's and NHF-II's actual crop yields in 2019.

3.   The pre-2019 Actual Production Histories applicable to NHF-I and NHF-II to measure the actual 2019 yield against.

These facts all span the time period of March 2019 through mid-2020.  The policies and their terms obviously existed in April 2019. The crops were grown in 2019. The actual 2019 yield is based on what was harvested in late 2019.  This should have been determined based on GAIC's storage measurements in December 2019 and the sales records obtained from Plaintiffs and the records from their grain buyers in the first half of 2020.

Once the Notice of Loss has been submitted, GAIC and then FCIC/RMA had a duty to investigate and determine the losses timely and in good faith.  *Murphy v Cincinnati Ins. Co*., 772 F.2d 273, 276-277 (6th Cir. 1985), *Commercial Union Ins. Co. v Medical Protective Co.*, 426 Mich. 109 (1986).  They have not.  Thus, since all relevant facts existed as of mid-2020, this case is based on a concrete set of facts.

Likewise, delay has been and will be disastrous for NHF-I and NHF-II. They need the crop insurance proceeds to pay vendors.  They are losing business partners (their lender, their major landlord and others) based on this never-ending investigation.  They are down form approximately 18,000 acres to 4,000 acres. They cannot collect on losses for subsequent years. Meanwhile, the FCIC dictates that NHF-I and NHF-II must pay for the policies or face cancellation!

If this Court accepts FCIC's/USDA's argument on ripeness, this case will never be ripe, there will never be a determination and Plaintiffs' will be forced out of business.

Based on the above, Plaintiffs claims are ripe.  There is a concrete factual context and the ongoing delay is causing substantial harm to Plaintiffs.

7

## II.     Federal District Courts Have Subject Matter Jurisdiction Pursuant to the Federal Crop Insurance Act, sovereign immunity has been waived.

The FCIA confers exclusive subject matter jurisdiction to district courts when the FCIC is sued in its corporate name.  Congress passed The Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq*. in 1938. The Act created the federal crop insurance program to be administered by the FCIC. The RMA was created by Congress in 1996 to operate and manage the FCIC. The FCIC contracts with approved private insurance companies for them to offer the policies to producers. *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp*., 532 F.3d 797, 798 (8th Cir. 2008), see also, 7 U.S.C. § 1507(c).

Congress waived sovereign immunity for suits against the FCIC under 7 U.S.C. § 1506 (d). In construing the waiver, it should not be construed more broadly nor more narrowly than Congress intended. *McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir. 1991).

In 7 U.S.C. 1506 (d), Congress grants the district courts original and exclusive jurisdiction over actions brought by or against the FCIC. *Am. Growers Ins. Co. v. Fed. Crop Ins. Corp*., 532 F.3d 797, 800 (8th Cir. 2008). The district courts have jurisdiction without regard to the amount in controversy. 7 U.S.C. § 1506 (d).

Likewise, 7 U.S.C. § 1508 (j)(2)(A) grants the District Courts for jurisdiction over the FCIC where the claim is denied by the FCIC or the AIP. Congress used the word "denial" in this section. The FCIC can be sued for a denial. Congress did not limit suits to "determinations." Congress did not define the word "denial."

An insurance company can deny a claim by either actual denial or constructive denial. A constructive denial stems from an unreasonable delay in adjusting the claim. *Beddingfield v. Mullins Ins. Co.*, 266 So. 3d 698, 705-706 (Ala. 2018). When determining whether a constructive denial has occurred, courts should take context as their guidepost. *Cf. Barrios Garcia v. U.S.*

8

*Dep't of Homeland Sec.*, 14 F.4th 462, 485 (6th Cir. 2021) (A claim of unreasonable delay is necessarily fact dependent.)  When administrative inaction has precisely the same impact on the rights of a party as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief. See *Byrd v. Haas*, 17 F.4th 692, 698 (6th Cir. 2021) (A prisoner's request for religious services was found to have been constructively denied due to inaction on the part of the government after six years.); See also *Haight v. Thompson*, 763 F.3d 554, 560 (6th Cir. 2014) (finding a constructive denial where a government official "investigated" a request for four years and neither approved or denied the request and sought 'further investigation').

Here, it is undisputed that there has not been an actual denial of the claim. However, after 3 ½ - 4 years of investigation of facts that occurred in 2019/2020 with no determination, Plaintiffs submit that GAIC and the FCIC/RMA have constructively denied their claim. Thus, 7 U.S.C. § 1506 waives immunity and permits suit.

Accordingly, this Court must deny the FCIC/RMA's motion to dismiss for want of subject matter jurisdiction based on sovereign immunity because Congress, by enacting 7 U.S.C. § 1506 and 7 U.S.C. § 1508, clearly granted exclusive and original subject matter jurisdiction in this District court for suits brought against the FCIC, thereby waiving immunity.

### III.    The Plaintiffs and FCIC/RMA Are In Privity Of Contract.

The FCIC/USDA argue that Counts I, II, and III and V must be dismissed because there is no privity of contract between the Plaintiffs insureds and the FCIC/RMA. (ECF 32 Page ID 3104). Their argument fails to consider the totality of the relationship between the parties.

In the present case, 7 U.S.C. § 1508 (j)(2)(A) specifically provides that the insured may file suit against the FCIC when the FCIC or an AIP denies a claim. As noted above, GAIC and

9

the FCIC/RMA have constructively denied the claim. What would the insured file suit on other than the insurance contract?

Second, the FCIC dictates the policy terms and serves as reinsurer to encourage AIPs such as GAIC to insure crops.  But there is more to the story here. The FCIC stepped in and took over the investigation.  This has two effects.  First, the FCIC prohibits GAIC from determining or paying on the loss during the FCIC/RMA's never-ending investigation. Second, Section 1204 of their Loss Adjustment Standards Manual, Section 31E of the Large Claims Standards Handbook, and their entrance letter in the FCIC/RMA's Crop Insurance Standards Manual states that once the FCIC/RMA steps in, the policyholder's dispute is with the FCIC/RMA. (ECF No. 35-9 PageID.3475-3476, ECF No. 35-8 PageID.3473, and ECF No. 35-7 PageID.3467) Then, the FCIC/RMA is authorized to determine the loss. 7 U.S.C. § 1506 (j). Lastly, the actual policy dictated by the FCIC includes the same language as 7 U.S.C. 1508 (j)(2)(A). Thus, the FCIC steps into the shoes of the insurer.

In a true reinsurance arrangement, the insured only deals with the insurer.  The insurer deals with the reinsurance company.  The insured is not a party to the reinsurance contract and thus, the liability of the reinsurer is solely to the insurer, not the original insured. *Williams Farms of Homestead, Inc. v. Rain and Hail Ins. Serv., Inc.*, 121 F.3d 630, 633 (11th Cir. 1997). However, there is a well-settled an exception to this rule where the provisions of the policy are such that it creates liability on the reinsurer directly to the original insured. *Ainsworth v. General Reinsurance Corp.*, 751 F.2d 962, 965 (8th Cir. 1985). To avoid liability, the terms of the insurance policy and the reinsurance policy must be distinct and disconnected. *Old Republic Ins. Co. v. Fed. Crop Ins. Corp.*, 947 F.2d 269, 276 (7th Cir. 1991).

*Old Republic* and *Ainsworth* are both cited in *Wiley v. Glickman*, A3-99-32, 1999 U.S. Dist. LEXIS 20278, at *38-39 (D.N.D. Sep. 3, 1999). *Wiley*, although unpublished, has been cited for its analysis of the history of 7 U.S.C. § 1508 (j)(2) and because it is demonstrative of provisions that are not distinct and disconnected and therefore makes the reinsurer directly liable to the insured under the exception. The *Wiley* court, at pages 39-41, commented on the Standard Reinsurance Agreement stating that:

> "Strong arguments can be made for the proposition that the Standard Reinsurance Agreement (SRA) falls within this exception. The SRA defines itself as "a cooperative financial assistance agreement between FCIC [and reinsureds] to deliver eligible crop insurance under the authority of [FCIA][.]" The SRA requires reinsureds to offer all approved plans of insurance for all approved crops in any state in which they write eligible crop insurance contracts, and requires reinsureds to accept and approve all applications from all eligible producers. Reinsureds are prohibited from canceling any crop insurance contract held by any policyholder so long as the policyholder remains an eligible producer (and the reinsureds continue to write eligible crop insurance contracts within the state). The SRA also contains a "cut-through" clause, so named because it "cuts through" the usual route of claim payment from reinsurer-to-reinsured and substitutes instead reinsurer to original insured in certain situations."

Turning the insurance policy, the *Wiley* court found that it was not distinct and disconnected from the SRA because the policy, stated:

> "This policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the authority of section 508(h) of the Federal Crop Insurance Act, as amended (7 U.S.C. 1508(h)). The provisions of the policy may not be waived or varied in any way by the crop insurance agent or any other agent or employee of the company. In the event the company cannot pay a loss, the claim will be settled in accordance with the provisions of the policy and paid by FCIC."

The policies in the present case have the same language as in *Wiley*. Exhibits 26-2, 26-10 and 26-11 state, at Section 18-BR, that:

> "This insurance policy is reinsured by the Federal Crop Insurance Corporation (FCIC) under the provisions of the Federal Crop Insurance Act (Act) (7 U.S.C. 1501 et seq.). All provisions of the policy and rights and responsibilities of the parties are specifically subject to the Act. The provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement. We will use the

11

procedures (handbooks, manuals, memoranda and bulletins), as issued by FCIC and published on RMA's website at http://www.rma.usda.gov/ or a successor website, in the administration of this policy, including the adjustment of any loss or claim submitted hereunder. In the event that we cannot pay your loss because we are insolvent or are otherwise unable to perform our duties under our reinsurance agreement with FCIC, your claim will be settled in accordance with the provisions of this policy and FCIC will be responsible for any amounts owed. No state guarantee fund will be liable for your loss."

Insurance Policies, (ECF 26-2 Page ID 2320, ECF 26-10 Page ID 2592, and ECF 26-11 Page ID 2816)

The insurance policies in the instant matter are substantially like those of the *Wiley* case. The insurance policies and SRA are not distinct or disconnected and liability should flow from the insured to the reinsurer in the instant, just as it did in *Wiley*. The FCIC cannot seek refuge behind the rules of liability governing common law reinsurance arrangements, in order to escape its obligations. *Wiley* at 42.

Another Court found privity of contract, based on the language contained within the Insurance Policy.  See *Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1373 (Fed. Cir. 2005). The Court remanded the case for pursuit of a contract claim against the FCIC, stating:

"An inspection of the contract and appellants' pleadings reveals the true nature of this action: a suit against the FCIC for breach of the [insurance policy]."

*Tex. Peanut Farmers v. United States*, 409 F.3d 1370, 1372 (Fed. Cir. 2005).

Later, in *Bd. of Trs. of Bay Med. Ctr. v. Humana Military Healthcare Servs*., 447 F.3d 1370, 1376 (Fed. Cir. 2006), the Court summarized their holding in *Tex. Peanut Farmers* stating:

"In *Texas Peanut Farmers*, we held that the proper defendant in a suit by peanut farmers for breach of their Multiple Peril Crop Insurance ("MPCI") policies was the Federal Crop Insurance Corporation ("FCIC"), the reinsurer of those policies, even though the peanut farmers had named the United States as the defendant. 409 F.3d at 1371-72. We reasoned that the "MCPI itself plainly states that [the peanut farmers] are the contracting parties and the FCIC is the reinsurer." Id. at 1373.

The insurance policies in the instant matters, just like those in *Tex. Peanut Farmers*, plainly state that NHF-I and NHF-II are the insured and the FCIC is the reinsurer and those policies further state that FCIC will step into the shoes of the insurer in specific scenarios.

The FCIC/RMA rely on *Olsen v. United States*, 546 F. Supp. 2d 1122 (E.D. Wash. 2008) as precedent that there is no privity between the insured and the reinsurer.  However, *Olsen* is factually distinct from the instant matter. The FCIC argued that no privity existed between the insured and the FCIC that could be arbitrated when the insurer was liquidated by the state. *Id.* at 1124.  The privity argument was regarding an arbitration agreement between the insured and the insurance company not the FCIC and RMA's adjustment of a large claim pursuant to the Large Claim Adjustment handbook. *Id*. at 1126.

The *Olsen* court stated that as a "general rule, 'there is no privity of contract that would enable the original insured to bring an action against a reinsurer.' citing a state of Washington case *Litho Color, Inc. v. Pacific Employer's Ins. Co.*, 98 Wn. App. 286, 301-02, 991 P.2d 638, 646 (Wash. Ct. App. 1999). However, the *Olsen* court further found that "the general rule has its exceptions[.]" *Olsen* at 1127.

One exception is for large claims where the FCIC and RMA participate in the adjustment of that large claim. The application of the Large Claims Standards Handbook was not litigated in *Olsen*, it was litigated in an unpublished case, *Stewart v. Fed. Crop Ins. Corp.*, No. 4:09-cv-101, 2010 U.S. Dist. LEXIS 87882 (E.D. Tenn. Aug. 25, 2010) and that Court found, at 10-11,  that "when the FCIC or RMA participates in the denial of an insured's claim through the large claims review process, the insured may sue those governmental entities in federal court."

Reviewing the FCIC's Large Claim Standards Handbook, it either establishes or does not require privity between reinsurer and insured:

13

(3) When RMA elects to participate in the loss determination, or modifies, revises, or corrects a claim during review prior to the AIP reaching an agreement with the policyholder or prior to the AIP making payment to the policyholder on the claim:

(a) *If the policyholder disputes the claim, the policyholder's dispute on the RMA modification, revision or correction will be with RMA.*

(Emphasis added).

**Exhibit 29, ECF No. 40-2,** Large Claims Standards Handbook - FCIC-Approved Standards and Procedures for Handling Large Claims and Referrals for Insurance Services, Regional Offices, and AIPs for the 2017 and Succeeding Crop Years, Pg. 34.

Likewise, the FCIC's standard entrance letter states the same. (ECF No. 35-7 PageID.3467).

The Large Claims[5] Standards Handbook applies to claims exceeding $500,000.00, such as the claim(s) at issue in this matter. (ECF No. 35-8 PageID.3470, p 13). For Large Claims, the RMA is permitted to step in and investigate the claim. *Id.* at Pg. 16. RMA did exactly that with the Plaintiffs' claims. Complaint ECF No.  26 PageID.2290 ¶47 and PageID.2293 ¶76.  Once the RMA takes over and investigation and adjustment of the claim for FCIC, '*any dispute regarding the claim is with the RMA'.* (Exhibit 29, ECF No. 40-2), Large Claims Standards Handbook, Pg. 34. In the instant matter, the policy holders, NHF-I and NHF-II, have a dispute regarding the claim being investigated by the FCIC and its RMA. Being bound by the Large Claim Standards Handbook, the dispute over the claim is '*with the RMA'.*  This clause creates the requisite privity to bring suit against the federal Defendants.

The FCIC and RMA also assert that no privity exists between the NHF-I and NHF-II and the FCIC and RMA because 7 C.F.R. 400.96 states "Nothing in this section can be construed to create privity of contract between the Agency and a participant." (ECF No. 32 PageID.3105).  At

---

[5] Large Claim means a potential claim with an indemnity in excess of $500,000, or such amount as determined by FCIC, or the production losses or indemnity under such claim are likely to exceed such amount. (**Exhibit 29, ECF 40-2,** Large Claims Standards Handbook, 'Definitions' Pg.45).

14

best, this is misleading. The FCIC/RMA cherry-pick one sentence from 7 C.F.R. 400.96 section (C) and argue that this regulation "make[s] clear there is no privity of contract between the federal Defendants and participants in the federal crop insurance program." (ECF No. 32 PageID.3105).  The FCIC/RMA failed to point out to the Court that this language only applies in respect to *adverse determinations*. See 7 C.F.R. 400.96 (Stating "Except as provided in § 400.98, with respect to *adverse determinations*: … Nothing in this section can be construed to create privity of contract between the Agency and a participant") (emphasis added). For this language to apply there must be a determination. The FCIC/RMA have made no determinations let alone an adverse one. The time is not ripe for application of 7 C.F.R. 400.96 because there is not an adverse determination.

To be clear, the instant matter is a Large Claim, and the FCIC and RMA have participated in the adjustment process which has resulted in a constructive denial by FCIC and RMA thereby waiving any privity defense pursuant to the terms of the Large Claims Adjustment Handbook creating a contract dispute between the policyholder and the FCIC and RMA.

## IV.   Due process claim

Count V alleges that Plaintiffs have been deprived of their property (insurance proceeds) without due process by the Defendants' refusal to determine the claim. "Where a plaintiff brings a [42 U.S.C. § 1983] claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under [*Bivens*]." *Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009). The United States Supreme Court has recognized a claim to vindicate violations of constitutional rights by federal actors. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). To state a *Bivens* claim, a plaintiff must allege facts sufficient to show that a federal defendant violated his rights under the United States Constitution. *Golio v. Adena Health*

15

*Sys.*, No. 2:11-cv-00757, 2012 U.S. Dist. LEXIS 56250, at *20-21 (S.D. Ohio Apr. 23, 2012).

*Bivens* only applies to a few specific circumstances[6] the United State Supreme Court permitted a cause of action for violation of a plaintiff's Constitutional Fifth Amendment due process rights in *Davis v. Passman*, 442 U.S. 228, 229-30, 99 S. Ct. 2264, 2269 (1979). The cause of action in the instant case is a due process violation of the Fifth Amendment of the Constitution of the United States of America and therefore a *Bivens* cause of action for damages is appropriate.

### V.      Proper Party for a *Bivens* Action

"[W]here *Bivens* does apply, the implied cause of action is the federal analog to suits brought against state officials under Rev. Stat. § 1979, 42 U.S.C. § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 1948 (2009). (internal citations omitted). "[A] Bivens action may not be maintained against a federal agency." *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). When making a *Bivens* claim "…a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948 (2009).

The Complaint did not raise allegations against specific federal government officials. Nonetheless numerous government officials took individual unconstitutional actions causing harm to the Plaintiffs.  Today, those individuals, with one exception[7], are not known. Proceeding on a *Bivens* claim with unknown government officials is not unprecedented. After all, the Bivens case is "*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*". See *Bivens* 403 U.S. 388, 91 S. Ct. 1999 (1971).

---

[6] *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (Supreme Court limited Bivens actions in new contexts).
[7] The name of one specific investigating agent is known at this time and he was not listed in the Complaint in his official capacity as a matter of discretion.

16

In this case, numerous unknown federal agents or employees of FCIC, RMA, and the USDA have violated NHF-1, NHF-2, Stacey Boersen, and Nicholas Boersen's Fifth Amendment Constitutional Due Process rights by and through the following conduct:

1.      NHF-I and NHF-II have not paid their loss from a terrible 2019 because GAIC and the FCIC/RMA refuse to determine the claims.

2.   The FCIC/RMA prohibits NHF-I's and NHF-II's excess band insurer for 2019 from paying for their loss because the FCIC/RMA prohibits payment during an investigation.

3.   NHF-I and NHF-II have debts from 2019 that they cannot pay without the insurance proceeds.

4.   NHF-I and NHF-II suffered some losses in subsequent years. The FCIC/RMA prohibits NHF-I's and NHF-II's insurers for those years from paying for their losses, again because the FCIC/RMA prohibit payment of future losses during an investigation.

5.   NHF-I and NHF-II have debts from the subsequent years that they cannot pay without the insurance proceeds.

6.   NHF-I and NHF-II have been required to pay their insurance premiums for 2019 totaling approximately $220,000 even though their losses are not paid.

7.   NHF-I and NHF-II have been required to pay their insurance premiums for subsequent years even though their losses are not paid.

8.   Plaintiff's lender now refuses to lend to NHF-I and NHF-II, even though they have been paid in full, after the FCIC's/RMA's investigator told them that they are investigating allegations of fraud, fraud that does not exist.

17

9.   Plaintiff's largest landlord now refuses to lease to NHF-I and NHF-II, even though they have been paid in full, after the FCIC's/RMA's investigator told them that they are investigating allegations of fraud, fraud that does not exist.

10. As a result, NHF-I and NHF-II are down to only a total of about 4,000 acres for 2023.

11. Plaintiffs Stacy and Nicholas have suffered emotional distress including Nicholas has suffered from anxiety resulting in at least 2 trips to the local hospital emergency room and additional doctor visits and use of medication.

(Complaint, ECF No. 26 PageID.2295-2297, 2299, 2301-2306, para. 92, 101, 113, 127, 128, 137, 142, 149 and 157, Affidavit of Stacy Boersen, ECF No. 35-1 PageID.3144-3153).

Such conduct, carried out by unknown federal agents, was in direct violation of Plaintiff's due process rights in violation of the Fifth Amendment of the Constitution of the United States of America. The Plaintiffs therefore request leave from the Court to proceed to discovery which will open the door to the tools needed by the Plaintiffs to identify the unknown individual government agents that have caused the Plaintiffs these great harms.

## VI.    Stipulation To Dismiss Counts Pursuant to FTCA

In the interest of justice, Plaintiffs hereby requests that this Court dismiss Counts IV, VI, and VII[8] without prejudice as claimed against FCIC, RMA, and the USDA.

### Relief Requested

Plaintiffs request that this Court deny the FCIC's/USDA's Motion to Dismiss in part and determine that:

1. This case is ripe for judicial action;
2. The FCIC/RMA is not immune from suit by virtue of 7 U.S.C. 1506 and 7 U.S.C. 1508;

---

[8] Count IV - Intentional Infliction of Emotional Distress, Count VI – Intentional Interference with Contractual Relations, Count VII - Intentional Interference with Business Relations.

3. Either there is privity of contract or privity is not necessary for this action to proceed against the FCIC/RMA; and

4. Allow claims alleging Constitutional Fifth Amendment Due Process violations by unknown agents of the government to continue forward as claims arising from the same case or controversy against to-be-named and currently unknown defendants.

CUNNINGHAM DALMAN, P.C.
Attorneys for Plaintiffs

Dated:  September 25, 2023

By:   */s/ Ronald J. VanderVeen*
Ronald J. VanderVeen (P33067)
321 Settlers Road
Holland, MI 49423
(616) 392-1821
rjvv@cunninghamdalman.com

19