# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **NEW HEIGHTS FARM I, LLC**, a Michigan limited liability company, **STACY BOERSEN**, **NEW HEIGHTS FARM II, LLC**, a Michigan limited liability company, and **NICHOLAS BOERSEN**,<br><br>Plaintiffs,<br><br>v.<br><br>**GREAT AMERICAN INSURANCE COMPANY, FEDERAL CROP INSURANCE CORPORATION, AND UNITED STATES DEPARTMENT OF AGRICULTURE**,<br><br>Defendants. | Case No. 1:23-CV-663<br><br>Honorable Hala Y. Jarbou<br>Magistrate Judge Phillip J. Green<br><br>**ORAL ARGUMENT REQUESTED** |

## DEFENDANT GREAT AMERICAN INSURANCE COMPANY'S
## REPLY BRIEF TO PLAINTIFFS' BRIEF IN OPPOSITION OF MOTION TO DISMISS

### ORAL ARGUMENT REQUESTED

## Table of Contents

TABLE OF AUTHORITIES ................................................................................................... ii
RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS ........................................................ 1
    A.  Plaintiffs' Exhibit 23 Reflects RMA Declined to Participate in Claims.............................. 1
    B.  Plaintiffs Contradict Their Allegation of 'False' Fraud Reporting. ..................................... 2
OBJECTION TO STACY BOERSEN AFFIDAVIT AND EXHIBITS ....................................... 2
LAW AND ARGUMENT .......................................................................................................... 3
I.  AN ARBITRATOR DECIDES ARBITRABILITY, NOT THE COURT. ................................ 3
II.  PLAINTIFFS' CLAIMS ARE UNRIPE. ................................................................................ 5
III.  FEDERAL LAW SPECIFICALLY PREEMPTS PLAINTIFFS' CLAIMS. .......................... 7
IV.  PLAINTIFFS' STATE LAW CLAIMS CONFLICT WITH THE POLICY. ........................ 8
    A.  Breach of Contract and State Law Claims Are Preempted. ................................................ 8
    B.  Intentional Interference with Contract Claim Fails. ............................................................ 9
    C.  Constitutional Due Process Violations ................................................................................ 9
    D.  Intentional Infliction of Emotional Distress Claim Fails and Is Preempted. ..................... 10
VI.  CONCLUSION....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**
*Ackerman v. United States Dep't of Agric.*, No. 17-cv-11779, 2018 U.S. Dist. LEXIS 93707 (E.D. Mich. June 1, 2018)....................................................................................................... 5
*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008). .................................................................................. 2
*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020). ............................... 3
*Cambridge Dental, LLC v. JPMorgan Chase Bank N.A.*, No. 20-12068, 2020 U.S. Dist. LEXIS 226908 (E.D. Mich. Dec. 3, 2020)................................................................................................. 11
*Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023)......................................................... 9
*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515 L. Ed. 2d 456 (2001)....................... 9
*Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877 (6th Cir. 2023)............................................................ 2
*Haverbush v. Powelson*, 217 Mich. App. 228, 551 N.W.2d 206 (1996) ..................................... 11
*Mich. Gun Owners, Inc. v. Ann Arbor Pub. Sch.*, 502 Mich. 695, 918 N.W.2d 756 (2018). .......... 7
*Miller v. United States Dep't of Agric.*, No. 22-1209, 2023 U.S. App. LEXIS 165 (6th Cir. Jan. 3, 2023) ............................................................................................................................................. 13
*O'Neal v. CIGNA Prop. & Cas. Ins. Co.*, 878 F. Supp. 848 (D.S.C. 1995).................................... 7
*Ritchie v. Eberhart*, 11 F.3d 587 (6th Cir. 1993)............................................................................... 7
*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985)................................ 10
*Valerie ex rel. McManus v. Mich. Dep't of Corr.*, No. 2:07-cv-5, 2008 U.S. Dist. LEXIS 101168 (W.D. Mich. Dec. 15, 2008). ......................................................................................................... 2
*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565 (6th Cir. 2008)........................................ 2
*Yeager v. GMC*, 265 F.3d 389 (6th Cir. 2001). ................................................................................ 10

**Statutes**
7 U.S.C. §1506(l) ................................................................................................................................ 12
7 USC § 1515 ...................................................................................................................................... 13

**Regulations**
7 CFR § 400.352 ........................................................................................................................ 5, 12, 13

**Final Agency Determinations**
Final Agency Determination FAD-208. ............................................................................................ 4

**CCIP Basic Provisions (see 7 CFR Section 457.8)**
CCIP Basic Provisions § 1 ................................................................................................................ 11
CCIP Basic Provisions § 10(a) ......................................................................................................... 11
CCIP Basic Provisions § 14(f).............................................................................................................5
CCIP Basic Provisions § 14(f)(3) ..................................................................................................... 10
CCIP Basic Provisions § 14(i) .......................................................................................................... 11
CCIP Basic Provisions § 20(a) ........................................................................................................... 4
CCIP Basic Provisions § 20(b)(2).......................................................................................................5
CCIP Basic Provisions § 20(f)(3) ....................................................................................................... 6
CCIP Basic Provisions § 20(h). ...........................................................................................................7
CCIP Basic Provisions § 20(i) ......................................................................................................... 5, 6

CCIP Basic Provisions § 26 ................................................................................................. 7
Preamble ..................................................................................................................... 10, 11

**RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS**

**A. Plaintiffs' Exhibit 23 Reflects RMA Declined to Participate in Claims.**

Plaintiffs allege FCIC directed Great American to handle the claim and refer to Plaintiffs' Exhibit 23 to support that assertion. (PageID.3125). Exhibit 23 contains two emails from RMA's "ROE System," which is RMA's large claims management system. See Informational Memorandum: IS-18-006, attached hereto as **Exhibit 9** and available on the RMA website[1] at https://www.rma.usda.gov/en/Policy-and-Procedure/Bulletins-and-Memos/2018/IS-18-006.

Those Exhibit 23 emails were RMA's notices to Great American in early 2020 that RMA's Regional Office *declined* to participate in potential large claims for NHFI's Calhoun County (PageID.3462) and NHFII's Van Buren County corn (PageID.3463). As Plaintiffs note in their brief (PageID.3124), losses are determined by county. Exhibit 23 relates only to Calhoun (NHFI) and Van Buren (NHFII) corn claims but no others.

Decisions by an RMA Regional Office about large claim participation and by RMA's Special Investigations Staff (SIS) and Office of Inspector General about whether to investigate are entirely different procedures. In 2020, when Great American notified NHF1 and NHFII that OIG/RMA's investigation must conclude before it could make any claims determinations, those notice letters referenced an SIS case but did not mention large claim procedures. See Plaintiffs' Exhibit Nos. 7 and 18 (PageID.2572-2575, 3027-3030).

FCIC/RMA does have the authority to determine claims under certain circumstances. But Plaintiffs' filings demonstrate that FCIC/RMA *declined* to participate in their claims.

---

[1] Great American respectfully requests that the Court take judicial notice of that official document from a government website, in the same manner as the request for judicial notice of FADs in Section IV.C of Great American's brief in support. (PageID.3047)

1

*Great American's Reply Brief in Support of Motion to Dismiss*

Plaintiffs' Exhibit 25, which is a sample letter RMA's Regional Offices use when electing to participate in a claim (Page.ID.3465) is of no import. Nothing in the record reflects such letter was issued, and any procedures within it are inapplicable to Plaintiffs' claims.

**B. Plaintiffs Contradict Their Allegation of 'False' Fraud Reporting.**

In alleging Great American "falsely reported" crop insurance fraud, only to then admit that what it reported to FCIC/RMA "is a mystery" (PageID.3122, 3125), Plaintiffs admit they don't know what Great American reported nor whether it was false.

## OBJECTION TO STACY BOERSEN AFFIDAVIT AND EXHIBITS

"When reviewing a motion to dismiss, a district court may not consider matters beyond the complaint." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). The referred-to-in-the-Complaint limitation only applies to exhibits attached to a motion to dismiss. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).

When a *moving party* attaches a deposition transcript to a motion to dismiss, the court typically treats the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *Valerie ex rel. McManus v. Mich. Dep't of Corr.*, No. 2:07-cv-5, 2008 U.S. Dist. LEXIS 101168 at *8-9 (W.D. Mich. Dec. 15, 2008). But here, the *Plaintiffs,* not the movant, submitted an affidavit, deposition excerpt, and other matters outside the complaint. Much of it is inadmissible hearsay even if it were otherwise properly before the court for consideration.

Plaintiffs' affidavit from Stacy Boersen[2] (PageID.3144-3468) is an attempt to introduce information from outside of the pleadings that should not be considered in relation to Great American's motion to dismiss.  Her affidavit includes numerous statements inadmissible under Fed. R. Evid. 801 and 805[3] because they are hearsay and she lacks personal knowledge as to the facts and documents proffered.

Great American objects to consideration of the Affidavit and its exhibits. They are not the types of documents the court is permitted to consider when ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Also, even if an affidavit with exhibits were an appropriate submission at this juncture, Exhibits 20-24 are not sufficiently authenticated under the Federal Rules of Evidence.

## LAW AND ARGUMENT

### I.  AN ARBITRATOR DECIDES ARBITRABILITY, NOT THE COURT.

Plaintiffs incorrectly argue that the court must decide whether their claims are within the arbitration clause's scope.  (PageID.3129).  But the Sixth Circuit has confirmed that incorporation of American Arbitration Association rules into an arbitration agreement provides "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020).

---

[2] Ms. Boersen also testifies as to facts not within the complaint that appear to bar certain of the Plaintiffs' claims on statute of limitations grounds.  Great American objects to the affidavit at this time and will address that issue if this litigation proceeds after the court rules on its motion to dismiss.

[3] For example, see Boersen Affidavit Paragraphs 13, 21(e), 21(k), 21(n), and 23.  ¶13 describes alleged statements from Great American to Spartan Insurance.  ¶21(e) alleges that someone told her FCIC/RMA instructed GAIC to determine their claims.  In ¶21(k), she alleges she has "since learned that Great American falsely reported to the FCIC/RMA that [she] committed fraud," but does not provide any details.  ¶21(n) references an FCIC/RMA investigator's affidavit containing information presumably from Great American, which isn't attached.  ¶23 asserts that Ms. Boersen "has heard from others" various things she states.

3

*Great American's Reply Brief in Support of Motion to Dismiss*

CCIP Basic Provisions ("CCIP-BP") § 20(a) requires that disagreements "must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA)."  (PageID.2624, 3253, 2848).

And, per AAA Rule R-7(a)[4], "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to … scope … or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."

Plaintiffs concede that Great American must implement the policy based on the Basic Provisions and Final Agency Determinations.  (PageID.3140).  FCIC interprets CCIP-BP ¶20(a) to require arbitration when an Approved Insurance Provider (AIP) fails to render a determination when a policyholder requests one.  Final Agency Determination FAD-208 indicates a policyholder must arbitrate disputes concerning a failure to render a determination:

> [T]his request asks whether a failure of an AIP to render a determination, when asked by the producer, is a failure to agree for the purposes of section 20(a). AIPs have an obligation to administer the policy is [sic] accordance with its terms and conditions. If the producer disagrees with that administration, this creates a failure to agree and the issue is subject to arbitration under section 20(a) of the Basic Provisions. AIPs cannot simply fail to issue a determination, when asked to do so, to avoid the appeals process. The failure to act can constitute a determination upon which the AIP and producer disagree.
>
> (PageID.3078).
> Final Agency Determination FAD-208.

Plaintiffs' primary contention is that Great American has failed to act.  The remedy for any disagreement about that can only come through arbitration (although here, Great American has no obligation or authority to pay yet).

---

[4] American Arbitration Association's Commercial Rules are available on its website at https://www.adr.org/Rules.

4

*Great American's Reply Brief in Support of Motion to Dismiss*

## II.  PLAINTIFFS' CLAIMS ARE UNRIPE.

Plaintiffs concede that their claims for attorney fees and punitive damages need to be determined by FCIC pursuant to CCIP-BP § 20(i) and request that the Court dismiss those claims without prejudice.  (PageID.3133).  However, the Section 20(i) damages restriction is broader than what Plaintiffs concede: Plaintiffs need FCIC approval before seeking *any* "attorneys fees or other expenses, or any punitive, compensatory or any other damages" from Great American.  CCIP-BP § 20(i).  (PageID.2625, 2353, 2849).  The policyholders' claims in Counts I, II, III, V, VI, VII, and IX are all subject to Section 20(i), which prohibits any such damages unless FCIC first grants an approval exception permitting them to be awarded.  Separately, 7 CFR § 400.352 also preempts all such damages claims unless specifically permitted by FCIC; that regulation applies to claims by anyone, including non-policyholders such as the Boersens and their personal claims in Count IV.  Those claims are intertwined with the other claims and are also not ripe.  (There is no Count VIII.)

When OIG completes its investigation, assuming it finds no evidence of wrongdoing, then from that point onward, CCIP-BP § 14(f) will allow Great American to finalize and pay any payable claims.  (PageID.  2613, 2341, 2837).  If NHFI and NHFII then disagree with Great American's ultimate claim determinations, the policy requires arbitration.  (PageID. 2624, 2352, 2848).  If there remains an unresolved disagreement after arbitration, only then will their claims be proper for judicial review.  *Ackerman v. United States Dep't of Agric.*, No. 17-cv-11779, 2018 U.S. Dist. LEXIS 93707 at *18 (E.D. Mich. June 1, 2018).  CCIP-BP § 20(b)(2) clearly states that "[i]f you fail to initiate arbitration in accordance with section 20(b)(1) and complete the process, you will not be able to resolve the dispute through judicial review." (PageID. 2624, 2352, 2848).

CCIP-BP § 20(f)(3) is unambiguous as to when an indemnity is due and payable under the circumstances before the court:  Great American cannot pay any loss until USDA completes its investigation and finds no evidence of wrongdoing.  (PageID.2613, 2341, 2837).  Plaintiffs concede as much in their brief: "The FCIC/RMA prohibits NHF-I's and NHF-II's insurers for those years from paying their losses, again because the FCIC/RMA prohibit payment of future losses during an investigation."  (PageID.3127).

There is no dispute that a USDA investigation is underway. Plaintiffs repeatedly claim Defendants' fraud concerns are false, but the policy terms designate USDA as the entity which makes that decision.  That has yet to occur and is a matter over which Great American has no control.  Great American *is complying with the policy terms—terms to which  Plaintiffs expressly agreed to be bound—*by pausing its claim determination until completion of the USDA's investigation.  Arbitration over any disputes Plaintiffs may have with future claim determinations has logically not occurred yet.

Also, FCIC has not issued a Section 20(i) determination permitting extra-contractual damages. Notably, its 20(i) procedure requires that information must be generated during arbitration and provided with any 20(i) determination request.  See **Exhibit 10**, FCIC Manager's Bulletin No.:  MGR-14-010.[5]

Plaintiffs' claims are unripe and in the wrong forum.

---

[5] Great American respectfully requests that the Court take judicial notice of that official document from a government website, in the same manner as the request for judicial notice of FADs in Section IV.C of Great American's brief in support.  (PageID.3047)

6

*Great American's Reply Brief in Support of Motion to Dismiss*

### III. FEDERAL LAW SPECIFICALLY PREEMPTS PLAINTIFFS' CLAIMS.

Great American does not argue state law is completely preempted, but rather that any conflicting state law is specifically preempted. Plaintiffs cite numerous cases concerning *complete* preemption on Page 14-15 of their brief. (PageID.3134-3135). For example, the *O'Neal v. Cigna* case they quote on Page 15 (PageID.3135) dealt with whether federal question removal jurisdiction existed based on complete preemption, not whether a claim was specifically preempted because it conflicted with the policy or related regulations. *O'Neal v. CIGNA Prop. & Cas. Ins. Co.*, 878 F. Supp. 848, 852 (D.S.C. 1995).

Plaintiffs' interest rate 'non-preemption' arguments make no sense. (PageID.3136). The policy states that the "interest rate *will be that established by the Secretary of the Treasury* under section 12 of the Contract Disputes Act." CCIP-BP § 26 (emphasis added). (PageID.2628, 2356, 2852). Any state law rate differing from what the Treasury Secretary sets is plainly in conflict is specifically preempted by that Section 26 mandate. To contend otherwise is at odds with rules of grammar and logic.

Also, the Sixth Circuit and the Michigan Supreme Court both apply the <u>*expressio unius est exclusio alterius*</u> doctrine, meaning that expressing one thing excludes others. *Ritchie v. Eberhart*, 11 F.3d 587, 596 (6th Cir. 1993); *Mich. Gun Owners, Inc. v. Ann Arbor Pub. Sch.*, 502 Mich. 695, 707, 918 N.W.2d 756, 762 (2018). Reasonable application of the <u>*expressio unius est exclusio alterius*</u> doctrine establishes that the Section 26 interest rate applies and excludes others, such that any other proffered interest rate conflicts with the policy.

Plus, CCIP-BP § 20(h) states that "Except as provided in section 20(i), no award … can exceed the amount of liability established or which should have been established under the policy, except for interest awarded in accordance with section 26." (PageID.2625, 2353, 2849).

Any award of interest greater than what Section 26 permits is preempted.

## IV.  PLAINTIFFS' STATE LAW CLAIMS CONFLICT WITH THE POLICY.

**A.  Breach of Contract and State Law Claims Are Preempted.**

The CCIP-BP contract prohibits indemnity payments until FCIC completes its investigation and finds no evidence of wrongdoing.  That contract is a federal regulation and Great American lacks the authority to waive any of its requirements.

Furthermore, Great American's Standard Reinsurance Agreement (SRA) with FCIC requires it to search for and report suspected fraud, waste, or abuse.  The SRA is available on the RMA website,[6] and its Appendix IV[7] obligates Great American to search for and report such things, both in its Section III and IV, as excerpted in relevant part below:

> SECTION III.  QUALITY CONTROL GUIDELINES
> (a)   General Company Responsibilities
> The Company is responsible for:
> …
> (4)  Implementing procedures for timely detection and reporting of suspected misrepresentation, fraud, waste, or abuse by policyholders, …
> (5)  **Notifying FCIC of suspected misrepresentation, fraud, waste or abuse** in accordance with section IV of this Appendix and assisting FCIC in subsequent investigations.  …
> …
> SECTION IV. **REPORTING SUSPECTED MISREPRESENTATION, FRAUD, WASTE, AND ABUSE**
>
> In all cases where the Company or its affiliates reasonably suspect misrepresentation, fraud, waste, or abuse, **the Company shall**:
>
> (a)  **Immediately report such cases to FCIC**;

---

[6] The 2019 Standard Reinsurance Agreement is at https://www.rma.usda.gov/en/Topics/Reinsurance-Agreements/SRA-Archive-1998-2018.
[7] Appendix IV to the 2019 SRA is also available at https://www.rma.usda.gov/en/Topics/Reinsurance-Agreements/SRA-Archive-1998-2018.

8

*Great American's Reply Brief in Support of Motion to Dismiss*

> (b) Not take any action until the Company and FCIC have agreed to the appropriate course, except as necessary to preserve the timely adjustment of the claim or as otherwise authorized by FCIC procedures;
> (c) **Take any action required by FCIC and, upon completion, forward all information and documents in the possession of the Company regarding the required action to the appropriate FCIC compliance office** for the area; …
>
> Appendix IV to the 2019 SRA, Section III (a)(4) and (5) and Section IV (a)-(c) (emphasis added).

**B. Intentional Interference with Contract Claim Fails.**

Plaintiffs concentrate on the definition of intent in opposing Great American's motion to dismiss as to Counts VI (Intentional Interference with Contractual Relationships) and Count VII (Intentional Interference with Business Relationships or Expectancies). But they fail to address the basic flaw in their claims: They don't allege any actual breach of any contract by a third party or any specific lost business relationship or expectancy. Having failed to allege the occurrence of actual breaches or specific harm, their claims fail.

**C. Constitutional Due Process Violations**

A *Bivens* action is one in which federal officials are sued in their individual capacities. (PageID.3139 at Fn. 8). However, Plaintiffs' reliance on *Bivens* is misplaced.

The Sixth Circuit recently acknowledged that extending *Bivens* is disfavored and that the Supreme Court has rejected Bivens claims against private corporations. *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 287 (6th Cir. 2023), citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001).

Plaintiffs cite *Yeager v. GMC* for their argument that *Bivens* should apply, but there, the Sixth Circuit held that:

9

*Great American's Reply Brief in Support of Motion to Dismiss*

> The district court determined that GMC's voluntary compliance with government regulations as part of its contractual relationship with the government did not support a finding of action under federal law. We agree.

*Yeager v. GMC*, 265 F.3d 389, 399 (6th Cir. 2001).

The federally imposed policy terms indicate Great American lacks the authority to waive the terms found at 7 CFR § 457.8.  (Preamble, 7 CFR §457.8).  (PageID.2320, 2592, 2816).  CCIP-BP § 14(f)(3) says Great American cannot pay any loss until FCIC completes its investigation and finds no evidence of wrongdoing.  (7 CFR §457.8 (14)(f)(3)).  (PageID.2341, 2613, 2837).  Great American is simply complying with that federal regulation and with the contract terms to which Plaintiffs NHFI and NHFII agreed when they applied for coverage.  Great American did not act under the color of federal law by simply complying with its policy.  Plaintiffs fail to cite any case law that suggests otherwise.

**D.  Intentional Infliction of Emotional Distress Claim Fails and Is Preempted.**

A successful tort action requires a breach of duty that is distinct from contract.  *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905, 909 (1985).  The Great American actions Plaintiffs Stacy Boersen and Nicholas Boersen allege support this claim are all duties based upon contractual requirements.  In their Count IV IIED claim, the Boersens incorporate all preceding Complaint Paragraphs (1-133), including those allegations supporting their breach of contract claims in Counts I and II.  They allege Great American's adjuster did not properly measure stored corn and used incorrect test weights (Complaint ¶¶34, 64, 120) (PageID.2289, 2292, 2300).  (Great American disagrees, though the court must accept the allegations as true for motion to dismiss purposes.)  Regardless of the veracity and accuracy of those allegations, the duty to perform those adjustment activities is a contractual duty based upon the CCIP-BP

10

*Great American's Reply Brief in Support of Motion to Dismiss*

Preamble and its § 14(i), which provisions require Great American to follow FCIC procedures. (PageID.2320, 2592, 2816); (PageID.2341, 2613, 2837). Any alleged failure on Great American's part to follow those adjustment activities might support a breach of contract action, but not a tort.

Also, NHFI and NHFII are the insureds under the policies, not Stacy or Nicholas Boersen. The policy terms define "insured" as the "named person as shown on the application … This term does not extend to any other person having a share or interest in the crop (for example, a partnership, landlord, or any other person) unless specifically indicated on the accepted application." CCIP-BP § 1 (Definitions) (PageID.2322, 2594, 2818). CCIP-BP § 10(a) states that "(a) Insurance will attach: (1) Only if the person completing the application has a share in the insured crop; and (2) Only to that person's share." CCIP-BP § 10(a) (PageID.2338, 2610, 2834). NHFI and NHFII are clearly listed as the only named insureds on the applications attached as Exhibits 1, 8, and 9 to the Second Amended Complaint. (PageID.2308, 2576, 2580).

Emotional distress includes "includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Haverbush v. Powelson*, 217 Mich. App. 228, 235, 551 N.W.2d 206, 209 (1996) (quoting Restat 2d of Torts, § 46, Comment j). Corporate entities cannot suffer emotional distress and therefore cannot have a cognizable claim for intentional infliction of emotional distress. *Cambridge Dental, LLC v. JPMorgan Chase Bank N.A.*, No. 20-12068, 2020 U.S. Dist. LEXIS 226908 at *11 (E.D. Mich. Dec. 3, 2020). Plaintiffs Stacy and Nicholas Boersen have asserted intentional infliction claims, but only NHFI and NHFII have an insurable interest in their respective policies, not the individuals.

7 U.S.C. §1506(l) states that state and local rules do not apply in relation to federal crop insurance matters "to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations." That language is not limited to the parties to contracts.

> **(l) Contracts.** The Corporation may enter into and carry out contracts or agreements, and issue regulations, necessary in the conduct of its business, as determined by the Board. State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.
>
> 7 U.S.C. §1506(l).

7 CFR § 400.351 states that the crop insurance regulations in Subpart P (Preemption of State Laws and Regulations) apply to actions authorized by the Act:

> The regulations contained in this subpart are issued pursuant to the Federal Crop Insurance Act, as amended (7 U.S.C. 1501 et seq.) (the Act), to prescribe the procedures for federal preemption of State laws and regulations not consistent with the purpose, intent, or authority of the Act. These regulations are applicable to all policies of insurance, insured or reinsured by the Corporation, contracts, agreements, or actions authorized by the Act and entered into or issued by FCIC.
>
> 7 CFR § 400.351.

The section that follows, § 400.352, prohibits any awards of damages against Great American not specifically authorized by 7 CFR Part 400 or permitted by way of an FCIC approval exception, and the regulation is also not limited to parties to contracts, thereby applying to the insured entities and the Boersens:

> § 400.352 State and local laws and regulations preempted.
>
> (a) No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.
>
> (b) The following is a non-inclusive list of examples of actions that State or local governmental entities or non-governmental entities are specifically prohibited

12

*Great American's Reply Brief in Support of Motion to Dismiss*

> from taking against the Corporation or any party that is acting pursuant to this part. Such entities may not:
>
> …
>
> (4) Levy fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation (Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled); or …

7 CFR § 400.352.

The Federal Crop Insurance Act at 7 USC § 1515 (Program compliance and integrity), subparagraph (a)(2) requires FCIC to "work actively with approved insurance providers to address program compliance and integrity issues as such issues develop." The Sixth Circuit recently commented that:

> the policy does not operate in a vacuum. The Act requires the crop insurance system to be 'sound,' 7 U.S.C. § 1502(a), and requires insurers 'to address program compliance and integrity issues as such issues develop,' id. § 1515(a)(2). The regulations create administrative remedies to ensure 'compliance and prevent fraud, waste, and abuse' in the program. 7 C.F.R. § 400.451(a); see id. § 400.451(e) (requiring 'protection of the public interest'). These provisions support the duty to protect the public fisc.

*Miller v. United States Dep't of Agric.*, No. 22-1209, 2023 U.S. App. LEXIS 165 at *11 (6th Cir. Jan. 3, 2023) (not recommended for full-text publication; see attached copy) (Exhibit 11). 7 USC § 1515(d)(5)(B) also requires that the "approved insurance provider and the Corporation shall take coordinated action in any case where misrepresentation, fraud, waste, or abuse is alleged." Great American's actions in this case are all for the purpose of ensuring compliance with the policy and related regulations to ensure the integrity of the federal crop

13

insurance program, and have also all been in compliance with the policy terms to which the policyholders agreed.

## VI.  CONCLUSION

Great American respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety.  Alternatively, should the Court find that only some claims should be dismissed, Great American requests that those claims be dismissed.

Respectfully submitted,

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr., Esq.
(Ohio Bar # 73531)
**SANDERS & ASSOCIATES, LPA**
8040 Hosbrook Road, Suite 202
Cincinnati, OH 45236
Phone:  (513) 229-8080
Fax: (513) 229-8081
TomJames@SandersLPA.com

**Attorney for Defendant Great American**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing through the Court's Electronic Case Filing System (CM/ECF), upon Plaintiffs' attorneys, Ronald J. VanderVeen, John D. Fitzpatrick, and Cal Thorwall, Cunningham Dalman, PC, 321 Sellers Road, Holland, MI 49422-1767, this 5th day of October 2023.

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr.