UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW HEIGHTS FARM I, LLC, et al.,

    Plaintiffs,

v.

    Case No. 1:23-cv-663

GREAT AMERICAN INSURANCE
COMPANY, et al.,

    Hon. Hala Y. Jarbou

    Defendants.
_____/

## OPINION

Plaintiffs Stacy Boersen, Nicholas Boersen, and their companies, New Heights Farm I, LLC ("NHF-I") and New Heights Farm II, LLC ("NHF-II"), bring this insurance action against Defendants Great American Insurance Company ("GAI"), the U.S. Department of Agriculture ("USDA"), and the Federal Crop Insurance Corporation ("FCIC"). Plaintiffs allege a variety of harms, including breach of contract, failure to comply with federal and state insurance laws, personal and business torts, bad faith, and constitutional due process violations. Before the Court is GAI's motion to dismiss (ECF No. 27) as well as USDA and FCIC's joint motion to dismiss (ECF No. 31).

### I. BACKGROUND

Stacy and Nicholas Boersen established NHF-I and NHF-II, respectively, in 2019 to pursue corn and soybean farming throughout Michigan. Both companies applied to GAI for crop insurance policies for the 2019 crop year under the federal crop insurance program. GAI issued one policy to NHF-I and two policies to NHF-II. These policies form the basis of the current dispute.

The insurance contracts between the NHF entities and GAI are not typical private insurance agreements; rather, they fit within a specialized regulatory framework. GAI is an approved insurance provider ("AIP") within the federal crop insurance program set forth in the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1501 *et seq*. When farmers and AIPs enter into a federally reinsured crop insurance contract, they agree to common terms set by the FCIC,[1] a wholly owned government corporation situated under the USDA. *See Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co.*, 57 F.4th 536, 538 (6th Cir. 2023). Those common terms are referred to as the Common Crop Insurance Policy ("CCIP") and are set out in full in the Code of Federal Regulations. *See* 7 C.F.R. § 457.8.

Plaintiffs suffered significant losses during the 2019 year, apparently due to weather-related complications. As a result, they filed several claims of loss with GAI under their insurance policies. After GAI began adjusting those claims, the USDA opened an investigation of Plaintiffs for fraud associated with their insurance policies and claims. GAI then notified Plaintiffs that, due to the ongoing federal fraud investigation, federal regulations prevented GAI from continuing to adjust their claims, or from otherwise reaching a determination.

Broadly speaking, Plaintiffs' claims can be categorized into breach of contract claims (counts I and II), federal[2] and state[3] statutory claims (count III), tort claims (counts IV-VII), and constitutional claims (count IX[4]). All of these, however, center on Defendants' failure to properly handle the insurance claims. According to Plaintiffs, Defendants have failed in their contractual

---

[1] Technically, the Risk Management Agency ("RMA"), which oversees the FCIC within the USDA, has the rulemaking authority within the federal crop insurance program. The Court will refer to the FCIC as encompassing both the FCIC and RMA, except in citations to official agency decisions, in which case it will refer to the RMA.

[2] Plaintiffs' federal claims arise under the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1508.

[3] Plaintiffs' Michigan State claims arise under Mich. Comp. Laws § 500.2006(1).

[4] There is no count VIII.

and statutory duties "to promptly investigate notices of loss, adjust and pay claims under the insurance policies[,]" despite Plaintiffs' cooperation with Defendants' various requests. (2d Am. Compl. ¶¶ 95–96, ECF No. 26.) Plaintiffs also allege that GAI submitted false reports to the FCIC and the USDA to spark the fraud investigation and delay determination of the claims. These failures, Plaintiffs argue, further amount to intentional infliction of emotional distress, tortious interference with contractual and business relationships, bad faith dealing, and the deprivation of constitutional due process.

All Defendants move to dismiss. GAI moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiffs' claims are not ripe. GAI also seeks dismissal on the grounds that this dispute is covered by a valid, mandatory arbitration agreement, although it does not lodge this argument under any particular Rule 12 subsection. Finally, in the alternative, GAI argues that each of Plaintiffs' individual claims fail in some way to state a claim and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

FCIC and USDA (collectively, the "Government Defendants") move jointly to dismiss each claim under Rule 12(b)(1), primarily on sovereign immunity grounds. The Government Defendants also move to dismiss Plaintiffs' breach of contract claims under Rule 12(b)(6) because these parties lack privity of contract.

## II. LEGAL STANDARDS

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

If a challenge is asserted to the Court's subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Houchens v. Beshear*, 850 F. App'x 340, 342 (6th Cir. 2021). Moreover, the Court "must" consider a jurisdictional challenge first because Defendants' other arguments for relief are moot if the Court lacks jurisdiction. *See id.*

3

Motions challenging subject matter jurisdiction may be based on a "facial" or a "factual" attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack challenges jurisdiction looking only to the allegations in a complaint, taking them as true, while a factual attack challenges "the factual existence of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). In a factual attack, a court has broad discretion as to what evidence to consider, including evidence outside of the pleadings, and it "has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759–60 (citing *Ritchie*, 15 F.3d at 598).

### B. Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint for failure to state a claim. "While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The Court need not accept "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action," *Twombly*, 550 U.S. at 555.

Courts are generally bound to consider only the complaint when resolving a motion to dismiss unless the Court converts the motion to one for summary judgment. *Wysocki v. Int'l Bus. Mach. Corp.*, 60 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

### III. GAI'S MOTION TO DISMISS

GAI advances two overarching arguments in support of its motion to dismiss. First, it argues that all of Plaintiffs' claims are unripe. Second, it argues that all of Plaintiffs' claims are subject to a mandatory arbitration clause within the CCIP. Alternatively, GAI challenges each individual claim as failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court agrees with GAI on its first two arguments and therefore does not reach its 12(b)(6) arguments.

**A. Ripeness (All Claims)**

GAI contends that Plaintiffs' claims are unripe because resolution of the principal alleged harm—that GAI has failed to pay on the NHF entities' insurance claims—turns on a future event outside of GAI's control, the ongoing USDA investigation.

The ripeness doctrine stems from the jurisdictional limitation within Article III that requires federal courts to consider only actual cases and controversies and that forbids issuing advisory opinions. *See* U.S. Const. Art. III; *see also Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002). The doctrine "focuses on the timing of the action," *United States Postal Services v.*

5

*National Association of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003), and encompasses both constitutional and "prudential reasons for refusing to exercise jurisdiction[,]" *National Park Hospitality Association v. Department of Interior*, 538 U.S. 803, 808 (2003). "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *River City Capital, LP v. Bd. of Cnty. Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007) (internal quotation marks omitted).

Ripeness poses two questions: (1) whether the claim arises in a concrete factual context and involves a dispute that is likely to come to pass; and (2) what hardship results to the claimant if the federal court withholds consideration. *OverDrive Inc. v. Open E-Book Forum*, 986 F.3d 954, 957-58 (6th Cir. 2021). A negative answer to either question precludes jurisdiction. *Id.*

For the first inquiry, a "claim is not ripe if it turns on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Trump v. New York*, 141 S. Ct. 530, 535 (2020). Here, GAI argues that Plaintiffs' claims fit squarely within this category. Plaintiffs' disagree, arguing that if this case is not ripe now it "will never be ripe" and they will be left with "no recourse for Defendants' refusal to act[.]" (Pl.'s Br. in Opp'n to GAI's Mot. to Dismiss 13, ECF No. 35.)

To the extent Plaintiffs sue GAI for a failure to pay its insurance claims in violation of the contracts, the FCIA, and Michigan State law, this Court agrees with GAI that Plaintiffs' claims are unripe. Ultimately, GAI may or may not pay Plaintiffs. But the federal regulations which form the terms of this insurance contract prevent GAI from taking the requisite steps to make a final decision. CCIP ¶ 14(f)(3); *see also* RMA, *Final Agency Determination FAD-270* (Mar. 6, 2014). These are precisely the sorts of claims "that may or may not occur as anticipated, or indeed may not occur at all[,]" which courts find to be unripe. *OverDrive*, 986 F.3d at 958. The Court notes

6

that the entire Michigan State statutory claim is premised on a failure to pay, and thus that portion of count III in the second amended complaint will be dismissed. *See* MCL § 500.2006(1) ("Failure to pay claims on a timely basis . . . is an unfair trade practice unless the claim is reasonably in dispute.")

But Plaintiffs do not only bring claims turning on future actions. First, its breach of contract claims and FCIA claims (counts I, II and part of III) all have a component that arguably presents a concrete factual context amendable to current resolution, *i.e.*, whether GAI has promptly investigated or adjusted Plaintiffs' claims. Second, Plaintiffs also allege that GAI took false measurements in the limited adjustment investigation it performed prior to the start of the fraud investigation, made false statements to USDA investigators to initiate the fraud investigation, and made false and disparaging statements to Plaintiffs' various business partners. These tort allegations undoubtedly present concrete factual contexts and a present dispute. GAI either did or did not do the things Plaintiffs allege.

The Sixth Circuit has recently cast doubt on the salience of the second inquiry—what hardship results—but "[f]or now, the Supreme Court continues to look at both questions[.]" *See id.* (suggesting that perhaps "harm" may simply offer a way to establish concreteness and thus should merge with the first inquiry). The harms resulting from GAI's violation of its contractual and FCIA obligations to promptly investigate Plaintiffs' claims, as well as its tortious conduct, worsen as resolution of these claims is delayed—the 2019 payments will continue to be delayed and the damage done to Plaintiffs' business relationships will be ongoing. Both negatively impact Plaintiffs' ability to carry out their farming operations. The Court is unable to answer the second inquiry in the negative for a portion of the breach of contract and FCIA claims (parts of counts I-

III) and is unable to answer in the negative for all the tort claims (counts IV-VII), and thus concludes those issues are ripe.

Based on the foregoing, the Court concludes that the payment portion of Plaintiffs' breach of contract claims and FCIA claims, as well as its entire Michigan State statutory claims are unripe (parts of counts I-III). However, the remaining claims, including both the "promptly adjust" portion of plaintiffs' breach of contract claims and FCIA claims (parts of counts I-III), as well as their tort claims (counts IV-VII), rely at least in part on concrete factual disputes whose delayed resolution could harm Plaintiffs; thus, the Court concludes that these claims are ripe. At least a portion of each count in the second amended complaint survives the ripeness inquiry.

### B. Arbitration (All Claims)

GAI contends that the arbitration clause agreed to by Plaintiffs, *see* CCIP ¶ 20, provides a separate and independent reason why all claims against it should be dismissed by this Court. Plaintiffs argue that the arbitration agreement does not cover the disputes in this action.

As an initial matter, "[c]ourts in the Sixth Circuit are split on whether a motion to dismiss based on an arbitration should be brought under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter or jurisdiction) or Rule 12(b)(6) (failure to state a claim)." *Power Distrib. Co., Inc. v. Grenzebach Corp.*, No 16-12740, 2016 WL 6611032, at *2 (E.D. Mich. Nov. 9, 2016) (collecting cases and discussing the split); *see also FCCI Ins. Co. v. Nicholas Cnty. Libr.*, No. 5:18-CV-038-JMH, 2019 WL 1234319, at *3 (E.D. Ky. Mar. 15, 2019) (same); *Avient Corp. v. Westlake Vinyls, Inc.*, No. 5:22-CV-51-TBR, 2011 WL 3569019, at *4 (W.D. Ky. Aug. 18, 2022) (same). The choice of rule concerns "on one hand, whether evidence outside the pleadings is being used and whether the case should be dismissed with prejudice under Rule 12(b)(6) and, on the other, whether the term 'jurisdiction' . . . is being used with precision under Rule 12(b)(1)." *Power Distrib. Co.*, 2016 WL 6611032, at *2.

8

Here, neither party lodges this question under a specific federal rule. Given that its resolution turns on the terms of an agreement that is both attached to the complaint and a matter of federal law, the Court can consider the agreement under Rule 12(b)(1) or 12(b)(6). However, because a decision to dismiss this case due to the arbitration agreement would "not prevent [Plaintiffs' from litigating the merits of [their] claim . . . but [would] merely transfer[] the forum in which the litigation on the merits [would] occur," and because no party argues for the retention of jurisdiction should the claims be dismissed on this theory, the Court will treat this motion as one to dismiss under Rule 12(b)(1). *Id.* (cleaned up). This conclusion appears consistent with the majority of federal courts to consider this question. *See FCCI Ins. Co.*, 2019 WL 1234319, at *3 (collecting cases both in and out of circuit).

Turning to the substance of the argument, while there is no dispute as to the existence of a valid arbitration clause, the parties disagree on other "gateway" matters. Plaintiffs contend that none of their claims are subject to the arbitration clause because the clause only covers GAI determinations, and here, no such determination has been made. In other words, Plaintiffs complain of a failure to act, and a failure to act is not covered by the arbitration clause. GAI disagrees. First, it points to relevant final agency determinations ("FADs") which explicitly allow for arbitration of GAI's inaction. Second, it contends that the arbitrator, not the Court, should determine arbitrability in the first instance.

First, the Court agrees with GAI that Plaintiffs' principal complaint, GAI's failure to determine and pay on the insurance claims, is straightforwardly covered by the arbitration agreement. To reiterate, the basic provisions of the applicable insurance contracts, the CCIP, are codified in the Code of Federal Regulations. The FCIC is the federal agency that interprets those

9

provisions, which they do through FADs. CCIP ¶ 20(b)(4); *see also* 7 U.S.C. § 1506(r). One such FAD is particularly relevant here. In FAD 208, the FCIC explained:

> [T]his request asks whether a failure of an AIP to render a determination, when asked by the producer, is a failure to agree for the purposes of section 20(a). AIPs have an obligation to administer the policy i[n] accordance with its terms and conditions. If the producer disagrees with that administration, this creates a failure to agree and the issue is subject to arbitration under section 20(a) of the Basic Provisions. AIPs cannot simply fail to issue a determination, when asked to do so, to avoid the appeals process. The failure to act can constitute a determination upon which the AIP and producer disagree.

RMA, *Final Agency Determination FAD-208* (Mar. 6, 2014).

Thus, the application of the arbitration clause does not turn on whether a final determination on a claim has been made. Rather, Plaintiffs' chief complaint that GAI has "not adjusted or made a determination" and has "not made any indemnity payments" (2d Am. Compl. ¶¶ 89-90), falls squarely within the arbitration clause of the CCIP, as interpreted by the FCIC. Note, this would encompass not only Plaintiffs' claims of failure to pay, but also their claims of failure to promptly adjust or investigate. These claims comprise the entirety of counts I through III.[5] Thus, as it relates to Plaintiffs' contractual and statutory causes of action (counts I-III), the Court concludes that the applicable arbitration provision provides an independent reason to dismiss those claims.

But again, Plaintiffs do not only complain of a failure to act. Their tort claims require separate evaluation. Here, GAI's second argument—that the arbitrator must decide arbitrability, not the Court—becomes relevant.

---

[5] The Court notes that the arbitration clause would also cover Plaintiffs' Michigan State law claims. Failure to pay forms the basis of both the contractual claims and the Michigan State law claims. The CCIP specifically provides that "[i]f the provision of [the CCIP] conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with Federal statutes, [the CCIP], and the applicable regulations do not apply to this policy." CCIP ¶ 31.

The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc.*, 561 U.S. 63, 68-69 (2010).  This "reflects the principle that arbitration is a matter of contract."  To determine whether parties "have agreed to arbitrate 'arbitrability[,]'" there must be "clear and unmistakable evidence that the parties agreed to have an arbitrator decide such issues." *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).

The arbitration clause in the CCIP states:

> If you and we fail to agree on any determination made by us . . . the disagreement may be resolved through mediation . . . .  If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA) . . .

CCIP ¶ 20(a).  At first glance, this appears to leave open the question of arbitrability.  Without more, this absence of "clear and unmistakable" evidence to the contrary would suggest that the Court maintains the responsibility to determine the arbitrability of the remaining claims.  However, the reference in the CCIP to the AAA rules is critical because the AAA rules themselves "provide that arbitrators have the power to resolve arbitrability questions." *Blanton*, 962 F.3d at 845 (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019)).  And the Sixth Circuit has expressly "found that the incorporation of the AAA rules . . . provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Id.*  Thus, the Court concludes that whether the remaining tort claims are encompassed within the scope of the arbitration clause in the CCIP is a question for an arbitrator to decide.  This is what the parties agreed to when they agreed to the CCIP.

As a gut check, the Court notes that the conduct complained of by Plaintiffs—the alleged false measurements taken by GAI during the adjustment process, the alleged false report of

11

fraudulent activity to the USDA, and the various alleged false statements made to Plaintiffs' business partners—could all plausibly relate to "determination[s] made by [GAI]," in carrying out the insurance policy agreement. *See* CCIP ¶ 20(a). In other words, the substance of those complaints could plausibly be arbitrable. GAI contends that each of these actions was in some way related to its obligations under the insurance policy, or to its obligations to the FCIC and USDA as an AIP in the federal crop insurance program. Clearly, Plaintiffs disagree with those actions taken. But that disagreement exists within the confines of the insurance relationship, and thus could reasonably fall under the arbitration agreement. To emphasize, this Court does not conclude that these issues are, in fact, arbitrable as a matter of substance. Rather, the Court concludes that the threshold issue of arbitrability is at least close enough to hold the parties to their agreement that the arbitrator should decide that question.

To summarize, the Court finds that the arbitration clause mandates the parties arbitrate each of Plaintiffs' claims against GAI, at least for "gateway" matters. All counts against GAI should thus be dismissed, despite the Court's conclusion that portions of these claims are indeed ripe.

### C. Failure to State a Claim (Individual Claims)

In the alternative, GAI moves to dismiss each of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). GAI asserts individual arguments for each claim. Because this Court decides that it lacks subject matter jurisdiction or that this is otherwise an inappropriate venue for this dispute, it does not reach GAI's Rule 12(b)(6) arguments.

### IV. THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS

The Government Defendants categorize their motion to dismiss by type of claim. For all claims, they argue that sovereign immunity bars suit and move to dismiss under Federal Rule 12(b)(1). For the tort claims (counts IV–VII), the Government Defendants also contend that Plaintiffs failed to exhaust their administrative remedies. For the contract claims (counts I–II), the

Government Defendants argue in the alternative that these claims should be dismissed under Rule 12(b)(6) due to a lack privity of contract. For the Constitutional claims (count IX), the Government Defendants argue that Plaintiffs failed to name a proper defendant. For the reasons that follow, the Court agrees with the Government Defendants' Rule 12(b)(1) and similar arguments, and does not reach any Rule 12(b)(6) arguments.

### A. Tort Claims (Counts IV-VII)

In their response to the Government Defendants' motion to dismiss, Plaintiffs stipulate to the dismissal of three of the four tort claims, counts IV, VI, and VII, for failure to exhaust administrative remedies. (Pls.' Resp. to Gov't Defs.' Mot. to Dismiss 18, ECF No. 40.) Plaintiffs request that this dismissal be granted without prejudice. Because the Government Defendants' lodged their administrative exhaustion argument as a jurisdictional issue under Rule 12(b)(1), a position that enjoys authoritative support in the Sixth Circuit, *see Ruza v. Consumer Fin. Prot. Bureau*, No. 1:20-CV-1113, 2021 WL 1342459, at *2 (W.D. Mich. Mar. 18, 2021) (citing *Reisman v. Bullard*, 14 F. App'x 377, 379 (6th Cir. 2001)), the Court agrees to Plaintiffs' request and will dismiss these claims without prejudice. This just leaves count V, bad faith adjustment, to consider.

The Government Defendants' arguments regarding count V are the same as their arguments for counts IV, VI, and VII, yet Plaintiffs omit count V from their stipulation to dismiss. This omission appears to have been in error. Plaintiffs refer to count V as a due process claim in their response but count V does not describe a due process issue. Rather, count V describes a tort claim alleging that all Defendants failed in their "duty of good faith and fair dealing." (2d Am. Compl. ¶ 130.) Plaintiffs seem to have mixed up count V and count IX, the latter actually describing a due process issue.

Plaintiffs do not respond to the substance of the Government Defendants' exhaustion arguments on count V, nor do they offer a reason why count V should be viewed any differently

13

from the other tort claims. The Federal Tort Claims Act requires tort claims to first be brought "to the appropriate federal agency." 28 U.S.C. §§ 2401(b), 2675(a). Failure to properly exhaust administrative remedies prevents a plaintiff from bringing the claim in federal court. *Id.*; *see also Kellom v. Quinn*, 86 F.4th 288, 293 (6th Cir. 2023) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). With no argument or alleged facts to the contrary, the Court concludes that count V, bad faith adjustment, should be dismissed for failure to exhaust administrative remedies, consistent with Plaintiffs' stipulation as to the other tort claims.

### B. Contract Claims (Counts I, II)

The Government Defendants move to dismiss Plaintiffs' breach of contract claims under Federal Rule 12(b)(1) on sovereign immunity grounds. "The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also Does 1–10 v. Haaland*, 973 F.3d 591, 596 (6th Cir. 2020). Sovereign immunity extends to agencies of the United States and cannot be waived by implication. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). Congress must expressly waive immunity by statute. *Id.* (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)). To that end, Plaintiffs cite two statutory provisions: the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), and the Federal Crop Insurance Act (FCIA), 7 U.S.C. § 1506(d).

The FTCA is inapposite for Plaintiffs' breach of contract claims. The FTCA covers a limited class of claims that does not extend to contract claims. *See, e.g.*, *Walton v. United States*, 997 F. Supp. 2d 808, 812 (N.D. Ohio 2014). Thus, Plaintiffs must find a waiver, if at all, in the FCIA.

Plaintiffs are on stronger footing with the FCIA but fall short there as well. The FCIA does indeed provide that, "subject to section 1508(j)(2)(A)[,]" the FCIC "may sue and be sued." 7 U.S.C. § 1506(d). But this immunity waiver turns on another portion of the FCIA which

14

provides that "if a claim for indemnity is denied by the [FCIC] or an [AIP] on behalf of the [FCIC], an action on the claim may be brought[.]" *Id.* § 1508(j)(2)(A). Defendants argue that this immunity waiver contains a critical prerequisite that Plaintiffs lack—a denied claim. Here, Plaintiffs' claim has not yet been denied. Indeed, it may be ultimately approved. Thus, Defendants argue, the FCIA waiver is inapplicable, and the Government Defendants are not subject to suit.

Defendants' straightforward reading of the statutory text is persuasive and is supported by caselaw. *See, e.g.*, *Cain Field Nursery v. Farmers Crop Ins. Alliance, Inc.*, No. 4:09-cv-78, 2010 WL 3813463, at *3-4 (E.D. Tenn. Sept. 22, 2010) (noting the requirement "that the FCIC may be sued only if it denied the claim or one of its [AIPs] denied the claim on its behalf"); *Lucus v. Armtech Ins. Servs.*, No. 2:13CV249-KS-MTP, 2015 WL 11120542, at *4-5 (S.D. Miss. Mar. 6, 2015) (dismissing plaintiff's claim in part because "plaintiff has no cause of action against the FCIC under the FCIA in the absence of the FCIC's involvement in the denial of his insurance claim"). In fact, Plaintiffs do not dispute that there must be a denial of a claim for the sovereign immunity waiver of the FCIA to apply. They also do not dispute that there has been no actual denial in this case. Instead, Plaintiffs contend that the Government Defendants' actions amount to a *constructive* denial of Plaintiffs' insurance claims and that this constructive denial is sufficient for section 1506(d)'s immunity waiver.

Plaintiffs do not cite any authority directly supporting the idea of "constructive denials" within the FCIA. Instead, they cite an Alabama case for the general notion that "[a]n insurance company's denial of a claim may be either express (actual) or constructive." *Beddingfield v. Mullins Ins. Co.*, 266 So. 3d 698, 705 (Ala. 2018) (internal quotations omitted). From there, they analogize to other legal contexts where the Sixth Circuit has recognized constructive denial of other types of claims. *See Byrd v. Haas*, 17 F.4th 692, 698 (6th Cir. 2021) (finding the constructive

15

denial of a prisoner's religious exercise claim following a six-year failure by prison officials to investigate his claim after the prisoner had fully exhausted his administrative review); *Haight v. Thompson*, 763 F.3d 554, 560 (6th Cir. 2014) (finding that a prison official's failure to issue a decision after a more than four-year investigation regarding a prisoner's religious accommodations could not be used to establish the prisoner's failure to exhaust his administrative remedies).

The cases Plaintiffs cite are inapposite or distinguishable. First, that Alabama state law recognizes constructive denial as a cause of action in general insurance claims has no bearing on this case involving federally subsidized crop insurance. Alabama is the wrong jurisdiction and general insurance is the wrong field of law.

Second, the Sixth Circuit cases, *Haight* and *Byrd*, offer critically different regulatory contexts that render any analogy to the FCIA unpersuasive. Both cases analyzed the denial of relatively simple religious accommodation claims in the context of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. *Byrd* involved a request by the prisoner plaintiff to worship with other members of his faith and to obtain certain religious items, *Byrd*, 17 F.4th at 694, while *Haight* involved a request by a group of prisoner plaintiffs to access a sweat lodge for religious ceremonies, *Haight*, 763 F.3d at 560. These relatively simple religious accommodation requests are a far cry from the context of the instant case. And context matters. As the Sixth Circuit noted in *Byrd*, "constructive denials are—and should remain— rare. . . . [W]hen determining whether a constructive denial has occurred, courts should take context as their guidepost." *Byrd*, 17 F.4th at 698. Courts should consider, for example, "the length of the delay, any reasonable justification of the delay, and the nature of the interest involved."

16

A brief examination of the alleged facts of this case makes clear that, as a matter of law, this is a poor fit for any "constructive denial" category of claims. Plaintiffs themselves describe the relative complexity of their case:

> NHF-I and NHF-II were by far the largest farming operation insured by GAI[] in Michigan. They were the largest by number of acres and largest by number of counties . . . Their farming operations and crop insurance were complicated by the number of counties where they farmed, as losses are determined on a county-by-county basis.

(Pls.' Resp. to Gov't Defs.' Mot. to Dismiss 2.) And the FCIC is clear that, in addition to whatever complexity the AIP's insurance adjustment process entails, an FCIC investigation on top can take years to resolve. RMA, USDA, *Final Agency Determination FAD-270* (Mar. 6, 2014). As the agency notes, "Unfortunately, the investigative process can take time to complete and in the interim, other crop years may pass." *Id.*

To be clear, the Court is not convinced that the FCIA contemplates constructive denial as a cause of action that would qualify under the statute's sovereign immunity waiver. But even if it did, a framework like those used by the courts in *Byrd* and *Haight* would not support the categorization of Plaintiffs' claims as such. The alleged delay is not sufficiently egregious in the face of a federal fraud investigation of "the largest farming operation insured by GAI in Michigan" to overcome what "should remain [] rare."

To summarize, the Court concludes that the Government Defendants have not waived their sovereign immunity with respect to Plaintiffs' claims. While the FCIA does contemplate a waiver for denials of federal crop insurance claims, Plaintiffs concede that their claims have not been expressly denied and they fail to persuade the Court that their claims have been constructively denied. Thus, the Court will order these contractual claims against the Government Defendants to be dismissed.

### C. Statutory Claims

Plaintiffs advance two statutory claims against the Government Defendants: the FCIA, and one under Michigan State law, Mich. Comp. Laws 500.2006(1).

The FCIA claim is largely duplicative of the contractual claims and arises under the same statute Plaintiffs use for their contractual sovereign immunity waiver argument. To the extent Plaintiffs argue that the Government Defendants have failed to promptly adjust and determine their insurance claims under the FCIA, their argument fails for the same reason their contractual argument fails. The Court remains unconvinced that the FCIA's sovereign immunity waiver applies to constructive denials or that, even if it did, Plaintiffs' claims would qualify as such.

Plaintiffs also cite subsection (j) of the FCIA, which requires the FCIC to "establish standards to ensure that all claims for losses are adjusted, to the extent practicable, in a uniform and timely manner." 7 U.S.C. § 1508(j)(1). To the extent Plaintiffs intend to challenge the FCIC's rulemaking, they have not advanced any relevant facts or arguments. They appear to have abandoned this portion of the FCIA claim on both the substance and the question of sovereign immunity. This portion of the FCIA claim will be dismissed as well.

Turning to the state law claim, the Michigan Insurance Code requires insurers to "pay on a timely basis." Mich. Comp. Laws 500.2006(1). Failure to do so amounts to "an unfair trade practice unless the claim is reasonably in dispute." *Id.* On its face, this claim raises numerous concerns, including the Michigan statute's application to federal crop insurance contracts, FCIA preemption, and whether the Government Defendants are in privity of contract with the Plaintiffs. But setting these issues aside, sovereign immunity again bars Plaintiffs' claims as a threshold matter. Without a specific waiver of sovereign immunity, the federal government is not amenable to suit to enforce a state statutory scheme. *Cf. TransAmerica Assur. Corp. v. Settlement Cap. Corp.*, 489 F.3d 256, 260 (6th Cir. 2007) (discussing the development of the modern sovereign

immunity doctrine, beginning with *Larson v. Domestic & Foreign Com. Corp.*, 337 U.C. 682 (1949)). Plaintiffs' advance no authority suggesting such a waiver here. Thus, their state statutory claims must also be dismissed.

### D. Constitutional Claims

Plaintiffs allege constitutional due process violations under the Fifth Amendment. They argue that the Government Defendants' "protracted investigation" has deprived Plaintiffs' of their substantive rights, their insurance premiums and the benefits owed to them, "without providing hearing, notice . . . or denying the claim on reasonable grounds." (2d Am. Compl. ¶¶ 156–57.) Although Plaintiffs initially looked to 42 U.S.C. § 1983 to bring their constitutional action, they have since correctly identified the *Bivens* doctrine as the appropriate vehicle. Regardless, Plaintiffs have failed to name a proper *Bivens* defendant.

A federal agency is not subject to a *Bivens* suit. *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). This is so even if Congress has waived sovereign immunity for related causes of actions. *Id.* Instead, a Plaintiff bringing suit for a constitutional violation by a federal actor must bring suit against the federal actor himself in his individual capacity. "The purpose of *Bivens* is to deter the officer, not the agency." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001). Plaintiffs do not name a single individual officer; all allegations involve the Government Defendants as entities.

Plaintiffs argue that, because the individual government actors involved in this case, save one, are unknown to Plaintiffs, a suit against the agency as a whole stands in as a proxy for the individual officers. In doing so, they stress that *Bivens* itself was against six *unknown* federal agents. *See generally, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). This is incorrect. It cannot be that *Bivens* generally requires an action to be brought against individual officers and forbids an action against the agency but dispenses with that requirement if and only if the identity of the individual officer is unknown. To bring a proper

19

*Bivens* action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There is a difference between pleading such individualized facts, but not knowing the names of the individuals involved, and pleading general constitutional violations by the agency at large. Here, Plaintiffs have done the latter. This is insufficient for a *Bivens* claim.

Without a properly named defendant, Plaintiffs' constitutional claims must also be dismissed.

## V. CONCLUSION

Plaintiffs' claims suffer from numerous threshold issues that prevent this suit from continuing. GAI's alleged failures to pay Plaintiffs' insurance claims are unripe. And all of Plaintiffs' claims against GAI, whether sounding in contract, tort, or statutory violation must first be pursued (even for threshold matters) with an arbitrator, as required by the CCIP and agreed to by Plaintiffs. Furthermore, the Government Defendants have not waived sovereign immunity for any claim Plaintiffs advance and continue to pursue. They are therefore not subject to suit. All of Plaintiffs' claims must be dismissed. An order will enter consistent with this Opinion.

Dated: January 11, 2024         /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE