# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: October 15, 2024

Ms. Laura Ann Babinsky
Office of the U.S. Attorney
Department of Justice
P.O. Box 208
Grand Rapids, MI 49501

Mr. Thomas C. James Jr.
Sanders & Associates
8040 Hosbrook Road
Suite 202
Cincinnati, OH 45236

Mr. Ronald J. VanderVeen
Cunningham Dalman
P.O. Box 1767
Holland, MI 49422

Re: Case No. 24-1087, *New Heights Farm I, LLC, et al v. Great American Ins Co, et al*
Originating Case No. : 1:23-cv-00663

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Ann E. Filkins

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0235p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────

NEW HEIGHTS FARM I, LLC; a Michigan limited liability company, STACY BOERSEN; NEW HEIGHTS FARM II, LLC, a Michigan limited liability company; NICHOLAS BOERSEN,

    *Plaintiffs-Appellants*,

    *v.*

GREAT AMERICAN INSURANCE COMPANY; FEDERAL CROP INSURANCE CORPORATION; UNITED STATES DEPARTMENT OF AGRICULTURE,

    *Defendants-Appellees*.

No. 24-1087

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:23-cv-00663—Hala Y. Jarbou, District Judge.

Decided and Filed:  October 15, 2024

Before:  SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

─────────────

**COUNSEL**

**ON BRIEF:**  Ronald J. VanderVeen, CUNNINGHAM DALMAN, PC, Holland, Michigan, for Appellants.  Thomas C. James, Jr., SANDERS & ASSOCIATES, LPA, Cincinnati, Ohio, for Appellee Great American Insurance Company.  Laura A. Babinsky, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Federal Appellees.

─────────────

**OPINION**

─────────────

    SUTTON, Chief Judge.  Nicholas and Stacy Boerson submitted crop insurance claims to Great American Insurance Company after a disappointing corn and soybean harvest.  When the

insurer declined to cover the claims until the resolution of a federal fraud investigation, they sued for breach of contract, bad faith adjustment, and violations of Michigan and federal insurance laws.  We affirm the district court's dismissal of all of the claims, some of them due to lack of subject matter jurisdiction, others due to a binding arbitration clause.

I.

"It is no doubt impossible to live without thought of the future; hope and vision can live nowhere else."  Wendell Berry, *The Unsettling of America:  Culture & Agriculture* 62 (Counterpoint Press 2015) (1977).  Farming is no stranger to this principle.  Even "the community gardener knows the uncertainties"—weather, insects, soil health—"that come with farming each year."  *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 267 (6th Cir. 2021).

Crop insurance offers farmers one protection against these perils.  For a good part of our history, private insurers considered it "too large an undertaking" to insure against so many unpredictable risks.  *See* President's Comm. on Crop. Ins., *Message from the President of the United States Transmitting the Report and Recommendations of the President's Committee on Crop Insurance*, H.R. Doc. No. 75-150, at 4 (1937).  The "lack of adequate crop data and a satisfactory actuarial basis upon which to base insurance rates" risked massive losses for the companies that tried.  *Id.* at 2.  Imagine how a private insurer in Oklahoma would have fared during the Dust Bowl.  Yet "severe economic consequences and suffering caused by crop failure" continued to plague farmers, leaving them reliant on federal emergency relief.  H.R. Rep. No. 75-1479, at 2 (1937).

To manage fluctuations between bumper crops and down years, the 1938 Federal Crop Insurance Act created a pilot program for the one crop for which the government had the requisite actuarial data:  wheat harvests.  *Id.* at 3.  The experiment succeeded.  In 1980, Congress ushered in the modern regime by expanding the program's geographic scope, covering more crops and enabling private companies to operate crop insurance policies.  H.R. Rep. No. 96-1272, at 13–14 (1980) (Conf. Rep.).

Today, the Federal Crop Insurance Act provides a robust system of crop insurance overseen by the Federal Crop Insurance Corporation. 7 U.S.C. §§ 1502(a), 1503. Under the Act, farmers may purchase crop insurance from the Corporation or from approved insurance providers that the Corporation reinsures. *Id.* § 1508(a)(1), (k)(1). Unlike private insurance agreements, the Corporation "determines the terms and conditions of the policy." *Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins.*, 57 F.4th 536, 539 (6th Cir. 2023) (quotation omitted). To that end, the Corporation has promulgated a common crop insurance policy, which sets forth the rules for resolving crop-insurance disputes. 7 C.F.R. § 457.8 (2024).

Nicholas and Stacy Boerson own New Heights Farm I and II in Zeeland, Michigan. They grew corn and soybeans on about 18,000 acres of their land. In 2019, they obtained a crop-insurance policy from Great American Insurance Company, which the Corporation reinsured.

That turned out to be a good idea. In the words of the Boersons, the unfortunate confluence of a wet spring and wet fall that year yielded a crop falling "way short of insured levels." Appellant's Br. 7.

The Boersons gave notice of potential crop losses to Great American. A few road bumps emerged. As the Boersons see it, Great American's insurance adjuster over-reported the amount of corn in storage. The Department of Agriculture as a result investigated the farmers for suspected crop-insurance fraud. Making matters worse, Section 14(f) of the common crop insurance policy barred payment of the claim until the investigation's completion. That investigation remains ongoing. After waiting for three years for payment on the policy, the Boersons sued Great American, the Corporation, and the Department of Agriculture on the grounds that they breached the insurance contracts, violated statutes requiring timely adjustment of insurance claims, and administered the insurance non-adjustment in bad faith.

The district court dismissed the complaint. It held that the claims targeting Great American's nonpayment were unripe because the common crop insurance policy barred payment until the government finished the investigation. But it found ripe all claims alleging that Great American took "false measurements" and made "false statements" about the Boersons during the adjustment investigation. R.66 at 7–8. It then dismissed the rest of the complaint on two

grounds: The arbitration agreement in the insurance policy barred the claims against Great American, and sovereign immunity barred the claims against the federal government. The Boersons appeal.

## II.

This appeal presents three questions: (1) Are the Boersons' claims ripe? (2) Does the arbitration agreement in the insurance policy cover the live claims against Great American? (3) Does sovereign immunity bar the claims against the federal government? We review all three issues with fresh eyes. *Does 1–10 v. Haaland*, 973 F.3d 591, 596 (6th Cir. 2020).

### A.

*Ripeness.* The federal "judicial Power" extends only to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limitation precludes us from entertaining claims filed too early (a ripeness problem) or too late (a mootness problem). As to ripeness, courts must refrain from prematurely deciding an issue that could "turn out differently in different settings." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc).

The ripeness inquiry turns on the answers to two questions. One: Does the claim "arise[] in a concrete factual context and concern[] a dispute that is likely to come to pass"? *Id.* The action may not turn on "contingent future events that may not occur as anticipated, or . . . not occur at all." *OverDrive Inc. v. Open E-Book F.*, 986 F.3d 954, 958 (6th Cir. 2021) (quotation omitted). Two: Does deferring review impose "hardship" on the participants in the lawsuit? *Id.* (quotation omitted).

Some of the Boersons' claims are ripe, and some are not. The claims alleging that Great American thwarted their insurance claim by over-reporting the amount of corn in storage and by falsely accusing them of crop-insurance fraud are ripe. That dispute turns on actual, not contingent, events that have already occurred. Withholding jurisdiction would impose substantial hardship on the Boersons, who claim that the mismeasurement delayed insurance payments upon which they and their creditors relied and damaged their reputation among several business partners.

The same is not true for the Boersons' claims that Great American wrongfully failed to pay them. That claim is premature for a fundamental reason: The insurance company has no authority to pay the claim at this point. Section 14(f)(3) of the insurance policy requires the insurer to wait until the government completes its fraud investigation before it provides coverage. 7 C.F.R. § 457.8(14)(f)(3). Great American's letters to the Boersons, attached to the complaint, acknowledge as much. On top of that, the payment amount depends on the investigation's outcome because the insurer must offset the fruits of any wrongdoing from the indemnity. *See id.* We thus do not know if Great American will indemnify the Boersons for the amount anticipated in their complaint or whether it will owe them any money at all. That is the epitome of a ripeness problem. No jurisdiction exists over that claim.

B.

*Arbitration agreement.* Up next is whether an arbitration clause covers the Boersons' ripe claims against Great American. It does.

Under the Federal Arbitration Act, a provision in "a contract . . . to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act supports arbitration as a vehicle for dispute resolution and confirms the "fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The Act extends to "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69. The parties may agree to arbitrate those questions too, but there must be "clear and unmistakable" evidence of their agreement to do so. *Id.* at 69 n.1; *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844–45 (6th Cir. 2020); *see Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582–83 (6th Cir. 2021).

The Act and these arbitration principles cover this dispute. The Boersons and Great American signed the common crop insurance policy. Section 20 of the policy states that, if the signatories "fail to agree on any determination made" and mediation fails to resolve the disagreement, then "the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association." R.1-2 at 41; *see* 7 C.F.R. § 457.8(20)(a). As

the district court correctly noted, the parties' ripe claims—that Great American over-reported the amount of corn in storage and falsely accused the Boersons of insurance fraud—could "plausibly relate to 'determination[s] made by [Great American],' in carrying out the insurance policy agreement." R.66 at 12 (alterations in original). Whether they do so relate, and therefore whether these claims must be arbitrated, is itself an arbitrable dispute under the terms of the parties' agreement.

*Blanton* confirms as much. There, an employee argued that an arbitration agreement did not apply to his antitrust claims against Domino's Pizza because only the company's franchisees had signed the arbitration agreement. *Blanton*, 962 F.3d at 843–44. We responded that the agreement incorporated the American Arbitration Association's employment arbitration rules, which gave the arbitrator "power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id.* at 845 (quotation omitted). We held that the parties clearly delegated this threshold question of policy scope to the arbitrator. *Id.*

So too here. The insurance policy incorporates the American Arbitration Association's rules. The Association's commercial arbitration rules empower the arbitrator "to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures 14 (2022), https://tinyurl.com/ywrp7u9a. The Boersons, too, clearly delegated this threshold question of policy scope to the arbitrator.

The Boersons try to counter this conclusion in several ways. They debate whether Great American's delay in payment constituted a "determination" under § 20(a). But the Boersons must present this threshold question to the arbitrator, and that is so no matter how strong or weak Great American's rejoinders may be. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

The Boersons claim that *Blanton* has little purchase here because the parties in that case agreed to arbitrate "a wide array of issues." *Blanton*, 962 F.3d at 844. But that distinction makes no difference. In *Blanton*, as here, the arbitration agreement incorporated the Association's

rules. There, as here, that reality established "compelling evidence that [the employee] agreed to arbitrate arbitrability." *Id.* at 845.

Nor does *United States ex rel. Dorsa v. Miraca Life Sciences, Inc.* help the farmers. 33 F.4th 352 (6th Cir. 2022). In *Dorsa*, we held that an employer waived its right to arbitrate the scope of an employment dispute by "ask[ing] the district court to determine arbitrability" in its opening brief and only disputing the court's power to decide the arbitrability question in its reply brief. *Id.* at 357. We further held that the employer forfeited its challenge to the district court's conclusion that the employee's dispute fell outside the scope of the arbitration agreement because it did not raise that argument in its subsequent stay petition. *See id.* at 358–59. Our ruling turned on forfeiture and waiver, not arbitrability. *See id.* at 354, 358–59. By contrast, Great American has consistently argued that the insurance policy unequivocally allocates arbitrability questions to the arbitrator.

That leaves one wrinkle. Should we dismiss the case under Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure? Rule 12(b)(1) applies to dismissals premised on "lack of subject-matter jurisdiction" over the dispute. Rule 12(b)(6) applies to dismissals premised on "failure to state a claim upon which relief can be granted."

This amounts to a dismissal on the merits, not for lack of subject-matter jurisdiction. In the last two decades, the Supreme Court "has been on a mission to rein in profligate uses of jurisdiction." *Herr v. U.S. Forest Serv.*, 803 F.3d 809, 813 (6th Cir. 2015). The Court imposes a "high bar" on any claim that Congress has deprived the federal courts of subject-matter jurisdiction over a dispute. *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015). Absent a "clear statement" from Congress depriving us of jurisdiction over a dispute, we have it. *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024).

Congress did not clearly limit federal-court jurisdiction when it passed the Federal Arbitration Act. The Act, as an initial matter, doesn't speak in jurisdictional terms and it "bestow[s] no federal jurisdiction." *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Instead, it allows parties to come to federal court, whether on diversity or federal-question grounds, to enforce a contract of arbitration. *Badgerow v. Walters*, 596 U.S. 1, 8–9 (2022).

All of this makes the Act an odd candidate for a statute that clearly deprives a federal court of jurisdiction.

The Act's key provisions suggest a similar conclusion. Some of them empower courts to stay a case and to confirm arbitral awards. 9 U.S.C. §§ 3, 9. That does not sound like a deprivation of jurisdiction, much less a clear one. To the contrary, these remedies presuppose jurisdiction over a substantive dispute. Another provision allows a party to petition a court "which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. That, too, is a court-empowering provision, which presumes courts still have some role to play in arbitrable disputes. It simply asks a federal court, before it grants a motion to compel arbitration, to show that it would have jurisdiction over the "substantive conflict" had the parties not signed an agreement. *Vaden v. Discover Bank*, 556 U.S. 49, 63 (2009) (quotation omitted). Nowhere does it *vitiate* jurisdiction over the substantive dispute once the parties sign an arbitration agreement. Because no clear language strips federal-court jurisdiction, we have authority to reject the claims on the merits as subject to arbitration. The Boersons' claims fail under Rule 12(b)(6).

C.

Did the district court err in dismissing the Boersons' claims against the Corporation and the Department of Agriculture on sovereign-immunity grounds? No.

The United States, "as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). That principle extends to federal agencies. *See, e.g.*, *United States v. Testan*, 424 U.S. 392, 399 (1976). Although Congress may consent to suit, any such waiver "must be express, clear and unequivocal." *Reed v. Reno*, 146 F.3d 392, 398 (6th Cir. 1998). This Court lacks jurisdiction over the lawsuit otherwise. *See Sherwood*, 312 U.S. at 586.

At issue is the waiver in the Federal Crop Insurance Act. Section 1506(d) states: "Subject to section 1508(j)(2)(A) of this title, the Corporation . . . may sue and be sued in its corporate name." 7 U.S.C. § 1506(d) (footnote omitted). Section 1508(j)(2)(A), in turn, permits a party to bring "an action on the claim . . . against the Corporation or Secretary [of

Agriculture]" if "a claim for indemnity is denied by the Corporation or an approved provider on behalf of the Corporation."  *Id.* § 1508(j)(2)(A).  The upshot:  The Corporation waives its sovereign immunity only if it or an approved insurer denies an insured party's claim.

The Corporation has not waived its immunity.  It has not "denied" a claim for indemnity.  Nor has it asked Great American to deny a claim on its behalf.  Indeed, the Department's investigation of the Boersons for crop-insurance fraud remains ongoing.  Sovereign immunity thus bars the claim against the Corporation.

The Boersons push back with respect to the Corporation.  They contend that the Corporation triggered § 1506(d) when it constructively denied their claims "by not closing out [a] never-ending investigation."  Appellant's Br. 27.  We need not decide whether the Corporation did so because the Federal Crop Insurance Act does not contain an "express, clear and unequivocal" waiver of sovereign immunity with respect to constructive denial claims.  *Reed*, 146 F.3d at 398.

Section 1506(d) does not say anything about constructive denial.  In the context of a clear-statement imperative, that omission is attention-getting because Congress knows how to describe a constructive denial.  Take the Federal Torts Claims Act, which deems the "failure of an agency to make final disposition of a claim within six months after it is filed" a "final denial" for administrative exhaustion purposes.  28 U.S.C. § 2675(a).  It didn't do that here.  That "silence is controlling."  *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020) (quoting *Lindley v. FDIC*, 733 F.3d 1043, 1055–56 (11th Cir. 2013)).

The Act's structure reinforces this conclusion.  Section 1508(j)(2)(A) permits a claim against the Corporation or Secretary only when a "claim for indemnity is denied."  7 U.S.C. § 1508(j)(2)(A).  The adjacent provision, § 1508(j)(2)(B), sets the statute of limitations within one year after the "date on which final notice of denial of the claim is provided to the claimant." *Id.* § 1508(j)(2)(B).  Because a final notice follows only an actual denial, not a constructive one, this provision counsels against finding a denial in silence alone.

The Boersons offer a bevy of cases to suggest that "den[ial]" under 7 U.S.C. § 1508(j)(2)(A) encompasses constructive denial.  None speaks to the statute at hand.  The cases

No. 24-1087 *New Heights Farm I, LLC v. Great Am. Ins. Co.* Page 10

survey the state of constructive denial in various unrelated bodies of law. *Byrd v. Haas*, 17 F.4th 692, 697 (6th Cir. 2021) (Religious Land Use and Institutionalized Persons Act); *Haight v. Thompson*, 763 F.3d 554, 561 (6th Cir. 2014) (same); *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (Administrative Procedure Act); *Beddingfield v. Mullins Ins.*, 266 So.3d 698, 705–06 (Ala. 2018) (state insurance law); *Weber v. Travelers Home & Marine Ins.*, 801 F. Supp. 2d 819, 832 (D. Minn. 2011) (same); *Austin v. Town of Farmington*, 826 F.3d 622, 629 (2d Cir. 2016) (Fair Housing Act). Not one of them contains a tether to the meaning of "denial" under the Federal Crop Insurance Act. That makes sense given that federal "crop-insurance policies are not typical private insurance agreements" but reflect a pioneering, comprehensive federal regime. *Bachman*, 57 F.4th at 538 (quotation omitted).

For these reasons, we affirm the dismissal of these claims under Rules 12(b)(1) and 12(b)(6).

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-1087

NEW HEIGHTS FARM I, LLC; a Michigan limited liability company, STACY BOERSEN; NEW HEIGHTS FARM II, LLC, a Michigan limited liability company; NICHOLAS BOERSEN,

    Plaintiffs - Appellants,

v.

GREAT AMERICAN INSURANCE COMPANY; FEDERAL CROP INSURANCE CORPORATION; UNITED STATES DEPARTMENT OF AGRICULTURE,

    Defendants - Appellees.

**FILED**
Oct 15, 2024
KELLY L. STEPHENS, Clerk

Before: SUTTON, Chief Judge; READLER and BLOOMEKATZ, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the district court's dismissal is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk